# Exhibit B

LEXSEE 2002 U.S. DIST LEXIS 20307

**COMPUTECH INTERNATIONAL, INC., Plaintiff, - against - COMPAQ COMPUTER CORPORATION, Defendant.**

**02 Civ. 2628 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 20307*

**October 24, 2002, Decided
October 28, 2002, Filed**

**SUBSEQUENT HISTORY:** Complaint dismissed at, in part, Summary judgment granted, in part, summary judgment denied, in part by *Computech Int'l, Inc. v. Compaq Computer Corp., 2004 U.S. Dist. LEXIS 9120 (S.D.N.Y., May 21, 2004)*

**DISPOSITION:** Defendant's motion to dismiss complaint and plaintiff's cross-motion for leave to file amended complaint granted.

**COUNSEL:** For Computech International, Inc, PLAINTIFF: Mitchell D Goldberg, Ochs & Goldberg, LLP, New York, NY USA.

For Compaq Computer Corporation, DEFENDANT: Aaron Mark Zeisler, Brobeck, Phleger & Harrison, LLP, New York, NY USA. Kenneth J King, Brobeck, Phleger & Harrison, LLP, New York, NY USA.

**OPINION**

[*1] Sweet, D.J.,

Defendant Compaq Computer Corporation ("Compaq") has moved under *Rule 12(b)(6), Fed. R. Civ. P.*, to dismiss the complaint of plaintiff Computech International, Inc. ("CTI") which has cross-moved under *Rule 15(a), Fed. R. Civ. P.*, for leave to file an amended complaint. For the reasons set forth below, both motions are granted.

*The Parties*

Compaq, a Delaware corporation, is a manufacturer of computer hardware and systems. CTI, a New York corporation, is a reseller of computer equipment and software with particular experience in the video editing market.

*Prior Proceedings*

In April 2002, CTI filed its complaint alleging that as an inducement for CTI to assist Compaq in entering the video editing market, Compaq offered CTI special discounted pricing for sale of Compaq equipment to other resellers, (Compl.P 5), and that "Compaq represented to CTI that it would prepare an agreement with CTI which would memorialize its intention to offer special, discounted pricing to CTI across the board on sales of all Compaq product," since "heretofore, special discounted pricing, referred to by Compaq as a 'TOSS' discount was only offered by Compaq to resellers for [*2] sale to designated end-users." (Compl.P 6) . The complaint alleges further that Compaq and CTI entered into an oral agreement to permit CTI to sell Compaq products to other resellers at special, discounted pricing referred to by Compaq as the "TOSS" discount (the "Agreement") (Compl.P 15), and that "during the period from March 2000 through June 2001, CTI invested substantial time, effort and expense in, *inter alia,* integrating Pinnacle Systems hardware or Matrox hardware, Adobe software with Compaq desktop in order to create a 'turnkey' product for an end-user in the video production marketplace," (Compl.P 7), that it was "pressured by Compaq salespeople" to sell Compaq product, including storage, networks and servers, with assurances that CTI would receive "special, discounted pricing on Compaq

product" (Compl.P 9), and that it did, in fact, receive the special, discounted pricing on Compaq product it sold. (Compl.P 10).

The complaint also alleges that even though representatives of Compaq were aware that CTI was a reseller of computer products, "and therefore was not subject to any restrictions on the sale of Compaq products" (Compl.P 12), in May 2001, CTI was "advised by a **[\*3]** sales representative that Compaq was discontinuing the special discounted pricing due to Compaq's belief that CTI was competing with Compaq in the sale of Compaq product," (Compl.P 11), and that Compaq, in violation of the Agreement, discontinued the TOSS discount given to CTI and has refused to sell Compaq product to CTI, resulting in no less than $ 750,000 in damages.

The complaint also alleges that Compaq committed fraud and negligent misrepresentation when it "represented to and stated to CTI that it would enter into a written agreement with CTI which would include special, discounted pricing," (Compl.PP 24, 33), even though Compaq had no intention of entering into such a written agreement and knew its representations to CTI were false. (Compl.PP 25, 26, 36) . With respect to its fraudulent misrepresentation claim, CTI alleges that Compaq's fraud "evidences a high degree of moral turpitude" and "wanton dishonesty" warranting the imposition of punitive damages, (Compl.P 30)

The complaint also alleges that "in or about June, 2001, Compaq sent a 'blast' e-mail to authorized resellers of Compaq product whereby it labeled CTI as a 'broker' of 'grey market' Compaq product and barred **[\*4]** authorized resellers from purchasing Compaq product from CTI (Compl.P 13), thus committing trade libel because recipients of the e-mail refused to purchase Compaq products from CTI, damaging it in an amount not less than $ 1,000,000, as well as an award of punitive damages. (Compl.PP 44-46)

The complaint thus alleged five causes of action, a breach of an oral agreement, of good faith and fair dealing, fraud, negligent misrepresentation and trade libel.

The amended complaint which CTI seeks leave to file adds details to the fraud cause of action, adds a sixth cause of action for *quantum meruit,* and a seventh cause of action for breach of contract.

The motions were heard and marked submitted on June 19,

2002.

*The Causes Of Action For Breach Of An Oral Contract And Good Faith And Fair Dealing Are Dismissed*

"The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to . . . . If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *166 Mamaroneck Ave. Corp. v. 151 East Post Road Corp.,* 78 N.Y.2d 88, 91, *575 N.E.2d 104, 571 N.Y.S.2d 686, 687 (1991)* **[\*5]** (internal quotations and citations omitted) . A claim for breach of contract, "must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." *Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y. 1991).*

In the oral contract set forth in the complaint, the essential terms are left open. CTI has alleged only that "Compaq and CTI entered into an oral agreement to permit CTI to sell Compaq products to other resellers at special, discounted pricing referred to by Compaq as the 'TOSS' discount. (Compl.P 15) . Quantity, the level of "discounted pricing," the duration of the agreement nor any other terms are alleged. *See Huntington Dental v. Minnesota Mining, 1998 U.S. Dist. LEXIS 1526, 1998 WL 60954*, at *3 (S.D.N.Y. Feb. 13, 1998); *Zaro Licensing, 779 F. Supp. at 286.*

CTI has also alleged that Compaq promised to enter into a written agreement with it, or in other words, that the parties "agreed to agree." Such promises are not recognized as binding obligations under New York law. *See Miller v. Tawil, 165 F. Supp. 2d 487, 492 (S.D.N.Y. 2001)* ("There is a strong **[\*6]** presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents.") (internal citations and quotations omitted); *N.F.L. Ins. Ltd. by Lines v. B & B Holdings, Inc., 874 F. Supp. 606, 614 (S.D.N.Y. 1995)* (finding that an "agreement" which is contingent on future consent of the parties is not binding but rather an unenforceable "agreement to agree."). As a result, CTI's claim that it had an agreement with Compaq should be dismissed.

Even if CTI had adequately pled the terms and conditions of the alleged contract, its breach of oral contract claim fails for lack of a writing. The Statute of Frauds was "intended to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury . . " *D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 453, 472 N.E.2d 992, 993, 483 N.Y.S.2d 164*, 165 (1984), and to "ensure the existence of a valid agreement . . . ." *Shaftel v. Dadras, 39 F. Supp. 2d 217, 228 (E.D.N.Y. 1999)*. As explained below, enforcement **[*7]** of the alleged oral agreement between CTI and Compaq is precisely the type of situation that the Statute of Frauds was intended to prevent, and the alleged agreement is barred by both the New York General Obligations Law and its Uniform Commercial Code ("U.C.C.") Statute of Frauds.

A contract for the sale of goods in excess of $ 500 falls within the ambit of the U.C.C.'s Statute of Frauds and therefore must be in writing to be enforceable. N.Y.*U.C.C. § 2-201*. A sale is broadly defined by the U.C.C. as "the passing of title from the seller to the buyer for a price." N.Y.*U.C.C. § 2-106(1)*.

Under New York law, *U.C.C. § 2-201* applies to distribution agreements which necessarily involve the purchase of more than $ 500 of goods, and courts have dismissed plaintiffs' claims for breach of oral contracts when not evidenced by a writing. *See Huntington Dental, 1998 U.S. Dist. LEXIS 1526, 1998 WL 60954*, at *4 (barring enforcement of an oral contract under *U.C.C. § 2-201* where a defendant was to supply its dental and medical products to plaintiff because the complaint necessarily involved more than $ 500 in goods); *Wallach Marine Corp. v. Donzi Marine Corp., 675 F. Supp. 838, 840 (S.D.N.Y. 1987)* **[*8]** (dismissing cause of action for breach of alleged oral dealership agreement under *U.C.C. § 2-201* where the complaint indicated that products to be purchased by plaintiff were in excess of $ 500); *United Beer Distributing Co. v. Hiram Walker, Inc., 163 A.D.2d 79, 80, 557 N.Y.S.2d 336, 337* (1st Dep't 1990) (finding plaintiff beer distributor's claim for breach of oral contract barred by the U.C.C. Statute of Frauds because the alleged agreement involved the sale of more than $ 500 of beer)

Under the Statute of Frauds, an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing. *N.Y.Gen.Oblig.Law § 5-701 (a) (1)* (McKinney 1993) . Under New York law, contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds. *See Huntington Dental, 1998 U.S. Dist. LEXIS 1526, 1998 WL 60954*, at *3-4 (finding that General Obligations Law *§ 5-701* barred an alleged oral agreement for defendant to supply its dental and medical products to plaintiff because the complaint "contains no allegations of . . the contract's duration and scope" and a contract **[*9]** of indefinite duration cannot be performed within a year); *United Beer Distributing, 163 A.D.2d at 81, 557 N.Y.S.2d at 338* (finding plaintiff beverage distributor's claim for breach of oral contract to be barred because the alleged agreement "called for performance of an indefinite duration and could only be terminated within one year by its breach during that period, [and was thus] not one which by its terms could be performed within one year."); *D & N Boening, Inc., 63 N.Y.2d at 457, 472 N.E.2d at 995, 483 N.Y.S.2d at 167* (oral agreement that plaintiff alleged was to continue for as long as plaintiff distributed Yoo-Hoo chocolate beverage satisfactorily was of indefinite duration, and as such, void under the Statute of Frauds)

New York law does not recognize a cause of action for breach of an implied covenant independent of a claim for breach of the underlying contract. "Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992)* **[*10]** *(quoting Geler v. National Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)* )

Since a claim for breach of the implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim, it must be dismissed as a matter of law as redundant. *See Alter v. Bogoricin, 1997 U.S. Dist. LEXIS 17369*, No. 97 Civ. 0662, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) (dismissing breach of implied covenant of good faith and fair dealing claim because the covenant of good faith and fair dealing is not distinct from the underlying contract, and therefore, as a general rule, the cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract") (citations and internal quotation marks omitted); *Village on Canon v. Bankers Trust Co., 920 F. Supp. 520, 534 (S.D.N.Y. 1996)* ("The implied covenant . . . does not create any new contractual

rights, nor does it provide an independent basis for recovery.") (citations and internal quotation marks omitted); *Frutico S.A.. de C.V. v. Bankers Trust Co., 833 F. Supp. 288, 300 (S.D.N.Y. 1993)* (finding that plaintiffs' breach [*11] of the implied covenant of. good faith and fair dealing claim "necessarily fails because it is derivative of the Plaintiffs' cause of action for breach of contract."); *O'Hearn v. Bodyonics, Ltd., 22 F. Supp. 2d 7, 11-12 (E.D.N.Y. 1998)* (dismissing breach of implied covenant of good faith-claims as a matter of law because they are duplicative of breach of contract claims); *Canstar v. J.A. Jones Constr. Co., 212 A.D.2d 452, 453, 622 N.Y.S.2d 730, 731* (1st Dep't 1995) (finding a claim for a breach of an implied covenant of good faith and fair dealing to be "redundant" since it "is intrinsically tied to the damages allegedly resulting from a breach of the contract.")

CTI in its opposition to Compaq's motion does not seriously challenge the propositions of law referred to above and the first and second causes of action are dismissed.

*The Fraud And Negligent Misrepresentation Causes Of Action Are Dismissed*

The initial attack launched by Compaq against the complaint was based on *Rule 9(b), Fed. R. Civ. P.*, and the failure of CTI to provide sufficient particulars of the alleged fraud claim. In opposition, CTI has inappropriately submitted an affidavit [*12] of Eli Zvi (the "Zvi Affidavit"), the director of sales and marketing of CTI, to supply the missing details which are also incorporated in the amended complaint.

For the reasons set forth by Compaq, the fraud cause of action and the claim of negligent misrepresentation as set forth in the complaint are dismissed as failing to provide the necessary particulars. These are, however, supplied in the proposed amended complaint.

New York law provides that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987)* (citation omitted); *Fort Ann Central School Dist. v. Hogan, 206 A.D.2d 723, 725, 614 N.Y.S.2d 803, 805* (3d Dep't 1994) (the "lack of [a] separate relationship distinct from the contract precludes a claim of negligent misrepresentation"

"Under New York law, there is no action for negligent misrepresentation of a promise of future conduct unless there is a special relationship between the parties." *Village on Canon, 920 F. Supp. at 531* [*13] *(citing American Protein Corp. v. AB Volvo, 844 F.2d 56, 63-64* (2d Cir.), *cert. denied, 488 U.S. 852, 109 S. Ct. 136, 102 L. Ed. 2d 109 (1988))* . As previously stated by this Court:

> In order to state a claim for negligent misrepresentation, [defendant] must have misrepresented a fact. Because a negligent promissory misrepresentation is not a misrepresentation of a fact, a special relationship must exist between the parties in order for promissory misrepresentation to give rise to a justiciable claim.

*Frutico, 833 F. Supp. at 300* (internal citations omitted) . No such special relationship is set forth in the complaint and nor is one apparent. *See Bell Sports, Inc. v. System Software Associates, Inc., 45 F. Supp. 2d 220, 229 (E.D.N.Y. 1999)* (no "special relationship exists between a software purchaser and the reseller"; it "cannot be said that the technical nature of computers and computer software imposes a special relationship and/or duty upon the software vendor who enters into a contract with a large, highly skilled company") (citations omitted)

*Leave To File An Amended Complaint Is Granted* [*14]

However, leave is granted to file an amended complaint with its restated fraud cause of action.

Federal *Rule 15(a)* provides that leave to amend a complaint shall be ". . . freely given when justice so requires." "In the absence of 'undue delay, bad faith, or dilatory motive on the part of the movant, ' permission to amend should be granted unless it would unduly prejudice the opposing party." *Communication Workers of America, AFL-CIO v. NYNEX Corp., 1998 U.S. Dist. LEXIS 2043, 1998 WL 85323, at 1* (S.D.N.Y. February 26, 1998); *citing Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*. CTI has moved for leave to serve an amended complaint at the early stages of this litigation, no discovery has been had, and it is appropriate to grant leave file an amended complaint.

*The Motion To Dismiss The Libel Claim Is Denied*

CTI has alleged a libel arising out of the e-mail sent by Compaq to other resellers. Compaq has noted the failure of the complaint to allege special damages, a required element for trade libel.

Under New York law, "the tort of trade libel or injurious falsehood consists of the knowing publication of false matter derogatory to the plaintiff's **[*15]** business or property." *Nevin v. Citibank, N.A., 107 F. Supp. 2d 333 (S.D.N.Y. 2000)* (internal quotation and citation omitted) . "The phrase 'produce disparagement' refers to words or conduct which tend to disparage or reflect negatively on the quality, condition or value of product or property." *Kirby v. Wildenstein, 784 F. Supp. 1112, 1115 (S.D.N.Y. 1992)*. CTI must establish therefore "four essential elements to prevail on its claim of disparagement of goods: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 75 F. Supp. 2d 235, 239 (S.D.N.Y. 1999)*

However, CTI has only pled three of the four elements required to state a claim for trade libel. While CTI has alleged that the e-mail was false, that it was sent to other resellers and that it-was done with malice (Compl.PP 43-43, 46), CTI has failed to plead the fourth requirement -- special damages -- and thus a claim for trade libel is dismissable. "The requirement of pleading and ultimately proving special damages 'goes to the cause of an action itself and not **[*16]** merely to the recovery.' . . . Courts considering product disparagement claims have therefore applied this requirement strictly, granting motions to dismiss or for summary judgment for failure to allege special damages with the requisite specificity." *Kirby, 784 F. Supp. at 1116*. "If the special damage was a loss of customers . . . the persons who ceased to be customers, or who refused to purchase, must be named . . [I]f they are not named, no cause of action is stated." *Drug Research Corp. v. Curtis Publ'g Co., 7 N.Y.2d 435, 441, 166 N.E.2d 319, 322, 199 N.Y.S.2d 33, 37 (1960)* (internal citation and quotation omitted)

CTI has replied to this failure by recharacterizing its complaint, stating:

> Although the Fifth Cause of Action uses the phrase "trade libel," a review of the claim reveals that it is, in reality, a claim for reputational injury to Plaintiff's business. "Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties." *Van-Go Transp. Co. v. New York City Bd. of Educ., 971 F. Supp. 90, 98*. **[*17]** Because statements impugning a business reputation constitute libel *per* se, special damages need not be pled. *See, e.g., Ruder & Finn, Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981)*

Plaintiff's Memo, p. 13.

The complaint alleged in paragraphs 13, 42 and 43 that the Compaq e-mail labelled CTI as a broker of grey market for Compaq products, a statement alleged to be false. Although Compaq does not abandon its position that the e-mail as pled disparaged product and thereby constituted trade libel requiring an allegation of special damages, a fair reading shows that it was CTI's status as a grey market broker that was the subject of the e-mail. Because it is a claim for reputational injury, special damages need not be alleged. *See Proctor & Gamble Co. v. Quality King Distributors, Inc., 974 F. Supp. 190, 196 (E.D.N.Y. 1999)* ("Because statement impugning a business reputation is libel *per se,* special damages need not be pled"); *Drug Research Corp. v. Curtis Publishing Co., 7 N.Y.2d 435, 166 N.E.2d 319, 199 N.Y.S.2d 33 (1960)*

The motion to dismiss the libel claim is denied.

### [*18] *The Quantum Meruit Claim Is Dismissed*

In its proposed amended complaint, CTI has added two additional causes of action, the sixth claim for *guantum meruit* arising out of the work performed by Compaq's benefit and the seventh cause of action alleging a breach of the reseller agreement entered into by the parties on March 2, 2000.

"Although *Rule 15* provides that leave to amend shall be granted freely, leave need not be granted to permit an amendment embodying plainly defective claims." *Valdan Sportswear v. Montgomery Ward & Co., 591 F. Supp. 1188, 1190 (S.D.N.Y. 1984)*. "Denial of amendment may be proper where the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient

on its face." *Schare v. Six Flags Theme Park, 1998 U.S. Dist. LEXIS 592, 1998 WL 24361*, *4 (Jan. 23, 1998 S.D.N.Y.) (internal citation and quotation marks omitted)

The written contract which forms the basis of the seventh cause of action precludes CTI's *guantum meruit* claim. CTI states that it signed a Compaq-authorized reseller agreement (the "Reseller Agreement") on March 2, 2002, pursuant to which "CTI became an authorized reseller of Compaq products. **[*19]** " (Am.Compl.P 67) . This Reseller Agreement concerned the purchase and sale of Compaq products. In addition, the final sentence of Section 3 of the Reseller Agreement, entitled "Terms and Conditions," requires that the Compaq Authorized Reseller, CTI, will "exert best efforts to market, advertise, promote, sell and service (if applicable) Compaq products." "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987)*; *see also Aviv Const., Inc. v. Antiquarium, Ltd., 259 A.D.2d 445, 687 N.Y.S.2d 344, 345* (1st Dep't 1999) ("The existence of a valid and enforceable written contract precludes a quantum meruit claim.") . Moreover, it is a valid written contract, regardless of whether or not it was the operative agreement, that forecloses a *guantum meruit* claim.

*Aniero Concrete Co. v. New York City Constr. Auth., 2000 U.S. Dist. LEXIS 8833*, No. 94 Civ. 3506, 2000 WL 863208, at *2 (S.D.N.Y. June 27, 2000)

Although **[*20]** Compaq has resisted the breach of the Reseller Agreement by maintaining it was not terminated, breach has been appropriately alleged, and CTI is granted leave to file its amended complaint alleging breach of contract but not *guantum meruit.*

*Conclusion*

In accordance with the determinations above, CTI is granted leave to file an amended complaint alleging fraud, libel, and breach of contract. The motion of Compaq to dismiss the causes of action based on oral contract, the breach of good faith and fair dealing, fraud and negligent misrepresentation in the initial complaint is granted.

It is so ordered.

**New York, NY**

**October 24, 2002**

**ROBERT W. SWEET**

    **U.S.D.J**