UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BUYERS AND RENTERS UNITED TO SAVE HARLEM,
et al.,

                                Plaintiffs,

      v.

PINNACLE GROUP NY LLC, et al.,

                               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 1:07-cv-06316-CM

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendants*

November 15, 2007

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ....................................................................................................... 8

I.    PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED ................................. 8

    A.    Plaintiffs Fail To Allege a Violation of the RICO Statute ...................... 8

        1.    Plaintiffs Fail To Allege "Racketeering Activity" ...................... 9

            a)    Plaintiffs Fail To Allege Mail Fraud ............................... 9

                (i)    Plaintiffs Fail To Allege any Misstatements Attributable to Defendants .................................... 9

                (ii)    Plaintiffs Do Not Adequately Plead Scienter ................... 11

                (iii)    Plaintiffs' Allegations of the Use of U.S. Mails Are Dubious at Best ................................................ 13

                (iv)    Plaintiffs Fail To Allege Detrimental Reliance ................. 13

            b)    Plaintiffs Fail To Allege Extortion ............................... 14

                (i)    Plaintiffs Fail To Plead Extortion with Particularity ........ 14

                (ii)    Plaintiffs Fail To Plead the Elements of Extortion ........... 14

            c)    Plaintiffs Fail To Allege a Violation of the National Stolen Property Act ...................................................... 16

        2.    Plaintiffs Fail To Allege a "Pattern" of Racketeering Activity ............... 17

        3.    Plaintiffs Fail To Allege an "Enterprise" ................................... 19

            a)    The So-Called "Pinnacle Enterprise" Is Not Distinct from the RICO "Persons" ............................................ 19

            b)    Plaintiffs Fail to Allege the Hierarchy and Organization of the Enterprise ........................................................ 23

    B.    Plaintiffs Fail To Allege an Injury to "Business or Property" .............................. 24

    C.    Plaintiffs Fail To Plead Causation ...................................................... 26

**TABLE OF CONTENTS**
**[Continued]**

**Page**

D.    Plaintiffs Are Not Entitled to Equitable Relief Under RICO .............................. 27

II.    PLAINTIFFS LACK STANDING ................................................................................ 28

A.    All of the Individual Plaintiffs Have Already Litigated the Facts
Alleged in the SAC ........................................................................................... 28

B.    BRUSH Does Not Have Standing To Bring Claims on Behalf of Its
"Constituents" .................................................................................................... 30

III.    PLAINTIFFS' STATE LAW CLAIM SHOULD BE DISMISSED ............................... 32

A.    Plaintiffs Fail To Plead "Consumer-Oriented" Conduct ...................... 32

B.    Plaintiffs' Claims Are Time-Barred ....................................................... 34

CONCLUSION ..................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,*
  458 F.Supp. 2d 160 (S.D.N.Y. 2006) ................................................... 31

*Agency Holding Corp. v. Malley Duff & Assocs.,*
  483 U.S. 143, 107 S. Ct. 2759 (1987).................................................... 4

*Allen v. New World Coffee, Inc.,*
  No. 00 CIV 2610, 2001 WL 293683 (S.D.N.Y. Mar. 27, 2001) ............................................. 19

*Alpert's Newspaper Delivery, Inc. v. N.Y. Times Co.,*
  876 F.2d 266 (2d Cir. 1989) ................................................... 29

*Ames Assocs. v. ABS Partners Real Estate LLC,*
  No. 06 Civ. 928 (TPG), 2007 WL 984009 (S.D.N.Y. Mar. 30, 2007) .............................. 22, 23

*Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose,* 282 F. Supp. 2d 126
  (S.D.N.Y. 2003), *vacated in part on other grounds,* 235 Fed. Appx. 776 (2d
  Cir. 2007)..................................................................................... 25

*Atl. Gypsum Co. v. Lloyds Int'l Corp.,*
  753 F. Supp. 505 (S.D.N.Y. 1990) ................................................... 12

*Att'y Gen. of Canada v. RJ Reynolds Tobacco Holdings, Inc.,*
  103 F. Supp. 2d 134 (N.D.N.Y. 2000).................................................... 27

*Baisch v. Gallina,*
  346 F.3d 366 (2d Cir. 2003) ................................................... 26

*Bank of China v. NBM LLC,*
  359 F.3d 171 (2d Cir. 2004) ................................................... 9, 13

*Bano v. Union Carbide Corp.,*
  361 F.3d 696 (2d Cir. 2004) ................................................... 30, 31

*Battle Assocs. for Women's Med., PLLC,*
  No. 05 Civ. 8373, 2006 WL 2642137 (Sept. 15, 2006)......................................... 15

*Bell Atl. Corp. v. Twombly,*
  127 S. Ct. 1955 (2007)...................................................................... 1, 8

*Black Radio Network, Inc. v. NYNEX Corp.,*
  44 F. Supp. 2d 565 (S.D.N.Y. 1999) ................................................... 28, 29

**TABLE OF AUTHORITIES**
**[Continued]**

<u>Page(s)</u>

*Caravella v. Hearthwood Homes, Inc.*,
  No. 05-CV-1529, 2007 WL 2886507 (N.D.N.Y. Sept. 27, 2007) .................................... 18, 19

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158, 121 S. Ct. 2087 (2001) .................................................................................. 19

*China Trust Bank of N.Y. v. Standard Chartered Bank, PLC*,
  981 F. Supp. 282 (S.D.N.Y. 1997) ....................................................................................... 20

*Cmty. Board 7 of Manhattan v. Schaeffer*,
  84 N.Y.2d 148, 615 N.Y.S.2d 644 (1994) ............................................................................ 32

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ................................................................................................ 17

*Concerned Citizens for Neighborhood Schs. v. Pastel*,
  No. 5:05-CV-1070, 2007 WL 1220542 (N.D.N.Y. Apr. 24, 2007) ......................................... 32

*Connolly v. Havens*,
  763 F. Supp. 6 (S.D.N.Y. 1991) ............................................................................................. 9

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
  418 F. Supp. 2d 193 (S.D.N.Y. 2006) .............................................................................. 21, 22

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996),
  *rev'd on other grounds*, 525 U.S. 128 (1998) .................................................................. 20, 21

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ................................................................................................. 9

*Dornberger v. Metro. Life Ins. Co.*,
  961 F. Supp. 506 (S.D.N.Y. 1997) .............................................................................. 24, 25, 26

*Ello v. Singh*,
  No. 05-CV-9625, 2007 WL 3084979 (S.D.N.Y. Oct. 19, 2007) .............................................. 8

*Fiore v. McDonald's Corp.*,
  No. CV-95-2708, 1996 WL 331090 (E.D.N.Y. June 12 1996) .............................................. 15

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) ......................................................................... 11, 21, 23, 24, 32

*Flowers v. Cont'l Grain Co.*,
  775 F.2d 1051 (8th Cir. 1985) .............................................................................................. 16

**TABLE OF AUTHORITIES**
**[Continued]**

**Page(s)**

*Four Star Capital Corp. v. Nynex Corp.,*
No. 93 Civ. 3706 (LMM), 1993 WL 350016 (S.D.N.Y. Sept. 9, 1993)............................ 10, 11

*Furstenberg v. Coffaro,*
697 F. Supp. 1282 (S.D.N.Y. 1988) ......................................................................... 27

*Gaidon v. Guardian Life Ins. Co. of Am.,*
96 N.Y.2d 201, 727 N.Y.S.2d 30 (2001) ................................................................. 35

*Ganino v. Citizens Utils. Co.,*
228 F.3d 154 (2d Cir. 2000) .................................................................................. 11

*Gerard v. Supreme Co.,*
277 A.D.2d 154, 717 N.Y.S.2d 106 (1st Dep`t 2000) ............................................... 29

*Gladstone Realtors v. Village of Bellwood,*
441 U.S. 91, 99 S. Ct. 1601 (1979)......................................................................... 30

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
No. 97 CIV 8779, 1998 WL 321446 (S.D.N.Y. June 18, 1998)........................................ 14, 15

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
No. 97 CIV 8779, 1998 WL 50200 (S.D.N.Y. Feb. 9, 1998)................................... 15

*Goldfine v. Sichenzia,*
118 F. Supp. 2d 392 (S.D.N.Y. 2000) ..................................................................... 32

*H.J., Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229, 109 S. Ct. 2893 (1989)...................................................................... 8

*Harary v. Allstate Ins. Co.,*
983 F. Supp. 95 (E.D.N.Y. 1997) .......................................................................... 34

*Hollander v. Flash Dancers Topless Club,*
340 F. Supp. 2d 453 (S.D.N.Y. 2004) ..................................................................... 24

*Holmes v. Sec. Inv. Prot. Corp.,*
503 U.S. 258, 122 S. Ct. 1311 (1992)...................................................................... 26

*Howe v. Reader's Digest Assocs., Inc.,*
686 F. Supp. 461 (S.D.N.Y. 1988) .................................................................. 24, 25

*Hunt v. Wash. State Apple Adver. Comm'n,*
432 U.S. 333, 97 S. Ct. 2434 (1977)................................................................. 30, 31

**TABLE OF AUTHORITIES**
[Continued]

<u>Page(s)</u>

*In re Carter-Wallace, Inc. Sec. Litig.*,
  220 F.3d 36 (2d. Cir. 2000) .................................................................................. 11

*In re Currency Conversion Fee Antitrust Litig.*,
  265 F. Supp. 385 (S.D.N.Y. 2003) .............................................................. 10, 11

*In Re Evergreen Mut. Funds Fee Litig.*,
  423 F. Supp. 2d 249 (S.D.N.Y. 2006) .................................................................. 33

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000) ................................................................................. 31

*In re Parmalat Sec. Litig.*,
  412 F. Supp. 2d 392 (S.D.N.Y. 2006) .................................................................. 11

*In re Parmalat Sec. Litig.*,
  479 F. Supp. 2d 332 (S.D.N.Y. 2007) .................................................................. 20

*Kades v. Organic, Inc.*,
  No. 00 Civ. 3671LTSRLE, 2003 WL 470331 (S.D.N.Y. Feb. 24, 2003) ............... 10, 16, 17

*Kafka v. Meadowlark Gardens Owners, Inc.*,
  34 A.D.3d 676, 826 N.Y.S.2d 83 (2d Dep't 2006) .................................................. 29

*Kahn v. Chase Manhattan Bank, N.A.*,
  760 F. Supp. 369 (S.D.N.Y. 1991) ........................................................................ 10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999) ................................................................................. 26

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
  326 F. Supp. 2d 434 (S.D.N.Y. 2004) .................................................................. 33

*Lazzarino v. Kenton Assocs., Ltd.*,
  No. 96 CIV 7842, 1997 WL 214938 (S.D.N.Y. Apr. 29, 1997) ............................... 14

*Lerner v. Fleet Bank, N.A.*,
  318 F.3d 113 (2d Cir. 2003) ............................................................................ 26, 30

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................. 26

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir. 1995) .................................................................................. 25

## TABLE OF AUTHORITIES
### [Continued]

**Page(s)**

*Lortenzen v. Curtis,*
   19 F. Supp. 2d 322 (S.D.N.Y. 1998) ................................................................ 11

*MaGee v. Paul Revere Life Ins. Co.,*
   954 F. Supp. 582 (E.D.N.Y. 1997) ................................................................... 34

*Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.,*
   156 F. Supp. 2d 376 (S.D.N.Y. 2001) ......................................................... 21, 22

*McLaughlin v. Anderson,*
   962 F.2d 187 (2d Cir. 1992) ........................................................................... 9, 11

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,*
   418 F.3d 168 (2d Cir. 2005) ......................................................................... 31, 32

*Mills v. Polar Molecular Corp.,*
   12 F.3d 1170 (2d Cir. 1993) ................................................................................ 9

*Moore v. PaineWebber, Inc.,*
   189 F.3d 165 (2d Cir. 1999) .............................................................................. 11

*Morris v. Gilbert,*
   649 F. Supp. 1491 (E.D.N.Y. 1986) ................................................................. 33

*Moss v. Morgan Stanley, Inc.,*
   719 F.2d 5 (2d Cir. 1983) .................................................................................... 8

*Motorola Credit Corp. v. Uzan,*
   202 F. Supp. 2d 239 (S.D.N.Y. 2002) .............................................................. 27

*N.Y. Univ. v. Cont'l Ins. Co.,*
   87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ....................................................... 33

*Nw. Mut. Life Ins. Co. v. Wender,*
   940 F. Supp. 62 (S.D.N.Y. 1996) ..................................................................... 34

*NOW, Inc. v. Scheidler,*
   267 F.3d 687 (7th Cir. 2001) ............................................................................ 27

*O'Brien v. Price Waterhouse,*
   740 F. Supp. 276 (S.D.N.Y. 1990) ................................................................... 12

*O'Malley v. N.Y. City Transit Auth.,*
   896 F.2d 704 (2d Cir. 1990) .................................................................. 11, 12, 13

TABLE OF AUTHORITIES
[Continued]

Page(s)

*Oak Bevs., Inc. v. Tomra of Mass., LLC,*
　96 F. Supp. 2d 336 (S.D.N.Y. 2000) ..................................................................... 28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
　85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ............................................................... 33

*Paine Lumber Co. v. Neal,*
　244 U.S. 459, 37 S. Ct. 718 (1917) ....................................................................... 28

*Pauk v. Bd. of Trs. of City Univ. of N.Y.,*
　111 A.D.2d 17, 488 N.Y.S.2d 685 (1st Dep't 1985) ........................................ 28, 29

*Pharr v. Evergreen Garden, Inc.,*
　123 Fed. Appx. 420 (2d Cir. 2005) ....................................................................... 29

*Philan Ins. Ltd. v. Frank Hall & Co.*, Inc.,
　712 F. Supp. 339 (S.D.N.Y. 1989) ....................................................................... 14

*Plount v. Am. Home Assurance Co.,*
　668 F. Supp. 204 (S.D.N.Y. 1987) ....................................................................... 14

*Rapoli v. Village of Red Hook,*
　41 A.D.3d 456, 836 N.Y.S.2d 700 (2d Dep't 2007) .............................................. 29

*Religious Tech. Ctr. v. Wollersheim,*
　796 F.2d 1076 (9th Cir. 1986) ....................................................................... 27, 28

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
　30 F.3d 339 (2d Cir. 1994) ................................................................................... 20

*Rosendale v. Citibank, N.A.,*
　No. 94 Civ. 8491, 1996 WL 175089 (S.D.N.Y. Apr. 15, 1996) ............................ 25

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,*
　84 F.3d 629 (2d Cir. 1996) ...................................................................... 9, 13, 33

*Schmidt v. Fleet Bank,*
　16 F. Supp. 2d 340 (S.D.N.Y. 1998) ..................................................................... 23

*Sedima, S.P.R.L. v. Imrex Co.,*
　473 U.S. 479, 105 S. Ct. 3275 (1985) ................................................................... 25

*Shaw v. Rolex Watch U.S.A., Inc.,*
　726 F. Supp. 969 (S.D.N.Y. 1989) ....................................................................... 16

**TABLE OF AUTHORITIES**
[Continued]

**Page(s)**

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ................................................................. 33

*Three Crown Ltd. P'ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993) ........................................................................ 9

*Tonken v. Loving & Weintraub, Inc.*,
   22 F. Supp. 2d 86 (S.D.N.Y. 1998) ...................................................................... 28

*Torres v. Ill. Bell Tel. Co.*,
   No. 86 C 1718, 1987 WL 15389 (N.D. Ill. Aug. 3, 1987) ..................................... 16

*Trane Co. v. O'Connor Secs.*,
   718 F.2d 26 (2d Cir. 1983) ................................................................................... 27

*Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*,
   No. 94 cv 5756JBW, 1995 WL 704778 (E.D.N.Y. Nov. 16, 1995) ....................... 34

*U.S. Fire Ins. v. Limousine Serv.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004) .................................................................. 17

*United States v. Bestfoods*,
   524 U.S. 51, 118 S. Ct. 1876 (1998) .................................................................... 10

*United States v. Gole*,
   158 F.3d 166 (2d Cir. 1998) ................................................................................. 11

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987) ................................................................................... 8

*United States v. Turkette*,
   452 U.S. 576, 101 S. Ct. 2524 (1981) ............................................................. 21, 24

*USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y*,
   346 F. Supp. 2d 468 (S.D.N.Y. 2004) .................................................................. 34

*VanDenBroeck v. CommonPoint Mortgage Co.*,
   22 F. Supp. 2d 677 (W.D. Mich. 1998),
   *aff'd*, 210 F.3d 696 (6th Cir. 2001) ...................................................................... 21

*Warth v. Seldin*,
   422 U.S. 490, 95 S. Ct. 2197 (1975) .................................................................... 31

**TABLE OF AUTHORITIES**
[Continued]

<u>Page(s)</u>

*Town of W. Hartford v. Operation Rescue*,
  726 F. Supp. 371 (D. Conn. 1988),
  *rev'd on other grounds*, 915 F.2d 92 ................................................................... 27

*Westmoreland Assocs., LLC v. Kispert*,
  No. 082774/99, 2002 WL 31777885 (N.Y. City Civ. Ct. 2002) ............................. 29

*Williams v. Dow Chem. Co.*,
  255 F. Supp. 2d 219 (S.D.N.Y. 2003) ................................................................... 24

**Statutes**

15 U.S.C.A. § 15(a) (West 1997).................................................................................. 28

18 U.S.C.A. § 1951 (West 2000) .......................................................................... 14, 15

18 U.S.C.A. § 1962(c) (West 2000)........................................................................ 8, 20

18 U.S.C.A. § 1964 (West 2000) .......................................................................... 24, 28

18 U.S.C.A. § 2314 (West 2000) ................................................................................. 16

9 N.Y.C.R.R. § 2525.5 (2007) ...................................................................................... 3

9 N.Y.C.R.R. §§ 2100.1-2100.8 (2007) ....................................................................... 2

9 N.Y.C.R.R. §§ 2520.2-2531.9 (2007) ....................................................................... 2

N.Y.C. Admin. Code § 26-511 (McKinney 2007) ........................................................ 3

N.Y.C. Admin. Code § 26-516 (McKinney 2007) ........................................................ 3

N.Y.C. Admin. Code §§ 26-401 to -415 (McKinney 2007) .......................................... 2

N.Y.C. Admin. Code §§ 26-501 to -530 (McKinney 2007) .......................................... 2

N.Y. Gen. Bus. Law § 349(a) (McKinney 1996)............................................... 32, 33, 34

N.Y. Gen. Bus. Law § 352-eeee (McKinney 1996).............................................. 18, 19

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................. 1

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 8

**TABLE OF AUTHORITIES**
**[Continued]**

**Page(s)**

Fed. R. Civ. P. 9(b) ........................................................................................ 1, 9, 11, 16

**Other Authorities**

David B. Smith & Terrance G. Reed, *Civil RICO* (2006) ........................................................... 22

David Siegel, *New York Practice* (4th ed. 2005) ........................................................................ 29

H.R. 19215, 91st Congress, 2d Sess. 116 Cong. Rec. 31,914 (1970) ........................................... 28

Defendants Pinnacle Group NY LLC ("Pinnacle NY") and Joel Wiener submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint (Declaration of Mitchell A. Karlan, dated November 15, 2007 ("Karlan Decl."), Ex. A ("SAC")) pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Over one million of New York City's apartments are subject to rent controls and regulations. These laws regulate nearly every detail of the landlord-tenant relationship, from minimal standards of habitability, to the price that landlords may charge, and the ability of landlords to replace tenants at the expiration of a lease term. It is almost impossible to overstate the sweep and depth of this regulation.

The so-called "Pinnacle Enterprise" is alleged to "own[] or control" over 21,000 rental units that are subject to regulation under this regime. (SAC ¶ 156.) Plaintiffs have alleged regulatory violations and other wrongdoing with respect to a mere *nine*—or 0.04%—of these units. Indeed, assuming that an average of three tenants inhabit each of these 21,000 rental units, the ten complaining tenants represent just 0.001% of the renters in the alleged enterprise.

These numbers denote a simple truth: Defendants' alleged actions could not have been directed, as plaintiffs purport, toward "illegally emptying rent-regulated apartments in buildings that [defendants] . . . desire to convert to condominiums or co-ops." (*Id.* ¶ 2.) Nine units, spread across *seven buildings*, could not plausibly support such a scheme—and plausibility is the touchstone for surviving a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Indeed, the SAC fails to name *any* tenant (plaintiff or otherwise) who has been evicted from any of the 21,000 units that defendants are alleged to control.

Furthermore, many of the units at issue were previously inhabited at some point by rent-regulated tenants who paid legal rents significantly lower than the legal stabilized rents currently

paid by the plaintiffs. The SAC contains no allegations that defendants harassed these previous tenants in order to make way for condos or to raise rents. Plaintiffs ask the court to accept that defendants allowed prior rent-regulated tenants to live completely undisturbed, then moved, after vacancy, to overcharge and harass (SAC ¶ 2) the new plaintiff tenants, all of whom pay significantly higher legal rents. This is nonsense.

To the extent that any regulatory violations were committed (and defendants vigorously dispute most that are alleged), these violations, viewed in the context of the massive numbers of buildings allegedly administered and the intricacies of the governing regulations, can only be viewed as human errors—not, as plaintiffs glibly allege, as RICO predicate acts.

Nothing about this case supports a RICO cause of action. The disputes at issue, without exception, are landlord-tenant housing disputes, for which comprehensive state statutory remedies are readily available. *See* N.Y.C. Rent and Rehab. Law, N.Y.C. Admin. Code §§ 26-401 to -415 (McKinney 2007); N.Y.C. Rent Stab. Law of 1969, *id.* §§ 26-501 to -530; N.Y.C. Rent and Eviction Regs., 9 N.Y.C.R.R. §§ 2100.1-2100.8 (2007); N.Y.C. Rent Stab. Code, *id.* §§ 2520.2-2531.9.

Indeed, *all of the individual plaintiffs in this case have already availed themselves of precisely these remedies*, and have received verdicts or entered into court-approved settlements in resolution of the issues raised in the SAC. Thus, most of the plaintiffs' claims are barred by *res judicata*, and could not support a RICO cause of action even if otherwise appropriate.

## STATEMENT OF FACTS

### Regulation of Residential Real Estate in New York

Tenants bringing an action for overcharge may choose between two forums with concurrent jurisdiction. They may either initiate an administrative proceeding, through the New York State Division of Housing and Community Renewal ("DHCR"), or a court proceeding,

2

through the New York City Civil Court, Housing Part ("Housing Court"). Landlords seeking redress on grounds of holdover or nonpayment must bring suit in Housing Court. Settlement is strongly encouraged in both forums as a matter of public policy.

DHCR rulings may be appealed through a Petition for Administrative Review ("PAR"), which stays enforcement of any penalties awarded by a DHCR order until the appeal is decided. Further appeals from DHCR orders can be made to the New York Supreme Court through Article 78 petitions. Housing Court verdicts may be appealed to the Appellate Term of the Supreme Court.

The DHCR also provides a forum specifically tailored to address "harassment" by landlords, which is defined as "any course of conduct (including but not limited to interruption or discontinuance of required services, or unwarranted or baseless court proceedings) which . . . is intended to cause the tenant to vacate such housing accommodation or waive any right afforded under this Code." (9 N.Y.C.R.R. § 2525.5.) The penalties for harassment are significant. A landlord found to have harassed a tenant may not collect statutory increases of rent on that tenant's apartment (N.Y.C. Admin. Code § 26-511), and civil penalties of up to $1,000 for a first violation or $5,000 for a subsequent violation may be assessed (N.Y.C. Admin. Code § 26-516). Tellingly, *not one of the plaintiffs in this action has ever brought a DHCR harassment action against defendants or defendants' alleged affiliates.* (Declaration of Niles Welikson, dated November 15, 2007 ("Welikson Decl.") ¶ 3.) Nor is there a single harassment determination against defendants on record. (*Id.* ¶ 4.)

Tenants with grievances relating to an apartment's habitability (e.g., necessary repairs, heat and hot water, building hazards, etc.) may file a complaint with the New York City Department of Housing Preservation and Development ("HPD"). Landlords are obliged to address these complaints (called "HPD violations") in a timely fashion. Complaining tenants,

3

for obvious reasons, are required to permit the landlord's agents to enter their units to make the necessary repairs. *Only one plaintiff*, Kim Powell, has alleged any repair problems, and these allegedly occurred and were resolved in 1998-99, (SAC ¶ 140), well outside the four-year RICO statute of limitations. *See Agency Holding Corp. v. Malley Duff & Assocs.*, 483 U.S. 143, 153, 107 S. Ct 2759, 2766-67 (1987). *No other HPD violations, time-barred or otherwise, are alleged by the plaintiffs.*

**The Defendants and Related Parties**

Defendants are not landlords, but the SAC treats them as if they were. Defendant Pinnacle NY is alleged to "hold[] title to property, manage[], operate[], and do[] business" through "separate LLCs" that are incorporated under names relating to individual residential apartment buildings. (SAC ¶ 45.) Pinnacle NY and "its various affiliates" are alleged to "own[], operate[], and manage[]" 21,000 rental units in New York City. (*Id.* ¶ 156.) Defendant Joel Wiener is alleged to be the "founder, Chief Executive Officer, and an investor in, and owner of," Pinnacle NY. (*Id.* ¶ 22.)

It is clear from both the public record and the face of the SAC that neither defendant actually owns any of the apartment buildings at issue here. Defendants have no contractual or legal relationships with plaintiffs. Thus, although the SAC alleges that "Defendants" charged certain rents or failed to make certain repairs, those allegations must be read in context.

The SAC also discusses certain non-parties. The SAC alleges that Pinnacle NY has some undefined financial relationship with the Praedium Group ("Praedium"), whose money defendants allegedly use. (*Id.* ¶ 5.) SecureWatch 24, in which the SAC alleges Mr. Wiener "has an interest," is alleged to provide security cameras for apartment buildings. (*Id.* ¶ 4.)

**The Plaintiffs**

*Marjorie and Theodore Charron.* The SAC alleges that defendants overcharged the Charrons for rent to the tune of $24,000. (*Id.* ¶ 94.) The Charrons lost two DHCR proceedings and subsequent appeals on this issue (Welikson Decl. ¶¶ 5-6, Exs. A-B) before the DHCR reversed itself in a third opinion after a regulatory policy change. (*Id.* ¶ 7, Ex. C.) Defendants offered them compensation pursuant to this third order. (SAC ¶ 80; Welikson Decl. ¶ 8, Ex. D.) The Charrons rejected that compensation, deciding instead to continue to pursue their case in New York Supreme Court and in federal court, through the instant RICO action. (SAC ¶ 80; Welikson Decl. ¶ 8.)

*Anthony Casasnovas.* The SAC alleges that defendants overcharged Mr. Casasnovas for rent (SAC ¶ 97), and brought improper eviction proceedings against him for non-payment of this allegedly overcharged rent (*id.* ¶ 100). Mr. Casasnovas withheld rent during this time. (*Id.* ¶ 99.) Mr. Casasnovas settled these disputes in Housing Court in July 2007. (*Id.* ¶ 102; Welikson Decl. ¶ 9, Exs. E-F.)

*Karen Flannagan.* The SAC alleges that Ms. Flannagan was required to produce "excessive and unduly burdensome" proof of her succession rights to an apartment. (SAC ¶¶ 104-105.) A holdover proceeding was commenced against her in February 2005 after she failed to provide sufficient documentation establishing her occupancy in the apartment for the requisite time period. (SAC ¶ 107; Welikson Decl. ¶ 10) Ms. Flannagan settled these issues in April 2006, receiving succession rights to the apartment in exchange for her payment of $1,477.60, which represented rent due through April 2006. (SAC ¶ 108; Welikson Decl. ¶ 11, Ex. G.)

*Tracey Moore.* The SAC alleges that Ms. Moore's rent was too high. (SAC ¶ 109.) The SAC concedes that Ms. Moore stopped paying rent on her unit prior to May 2006, before she

5

believed she was being overcharged. (*Id.* ¶ 110.) Ms. Moore filed an overcharge complaint with

the DHCR in the summer of 2006. (*Id.* ¶ 112.) On January 6, 2007, she received a credit of over

$5,000. (*Id.* ¶ 113; Welikson Decl. ¶ 12, Ex. H.) She signed a renewal lease in March 2007 that

reflected the monthly rent amount set by the DHCR order. (Welikson Decl. ¶ 13, Ex. I.)

    *Raymond Andrew Stahl-David.* The SAC alleges that Mr. Stahl-David's rent was too

high. (SAC ¶ 116.) This rent was set at the signing of his initial lease with the building's prior

landlord, an entity unrelated to defendants or to the building's current landlord. (Welikson Decl.

¶ 14.) The SAC alleges that the previous tenant's monthly rent was $976 (SAC ¶ 119), but in

fact, that rent was $1750. (Welikson Decl. ¶ 15, Ex. J.). Mr. Stahl-David challenged his rent in

August 2006, after the building had changed hands. (SAC ¶¶ 116, 119.) His roommates,

Zachary Roberts and Hadley Hoyte, did not join the challenge. (*Id.* ¶ 181.) The DHCR entered a

default order in his favor on July 20, 2007, after the landlord failed to respond to the complaint

because it was unable to obtain records from a prior owner. (Welikson Decl. ¶ 16, Ex. K)

Mr. Stahl-David and his landlord have reached an agreement in principle in settlement of this

dispute. (*Id.* ¶ 18, Exs. L-M.)

    *Russell Taylor.* The SAC alleges that Mr. Taylor has resided since 2000 in an apartment

for which he concedes he was not initially the tenant of record. The SAC alleges that the

building's prior owner "promised" him that he could become the tenant of record. (SAC ¶ 124.)

At no time, however, did the prior owner add his name to the lease. (Welikson Decl. ¶ 19.)

Defendants allegedly commenced, but subsequently discontinued, a summary proceeding against

the tenant of record, Saidah Nash, for nonpayment of rent, and because she did not reside in the

apartment as her primary residence. (SAC ¶¶ 125-126, 181; Welikson Decl. ¶ 20, Exs. N-O.)

Mr. Taylor alleges that he has not received compensation for his time spent defending these

proceedings. (SAC ¶ 127.)

*Diane Trummer.*  The SAC alleges that Ms. Trummer's rent was too high.  (*Id.* ¶ 128.)  It concedes that she lost a DHCR proceeding on that issue.  (*Id.* ¶ 129; Welikson Decl. ¶ 21, Ex. P.) It also alleges that Ms. Trummer was unable to live in her apartment after a fire in a neighboring unit.  (SAC ¶ 130.)  Ms. Trummer claims that she was not able to move back into her apartment until November 2005.  (*Id.* ¶ 132.)  In May 2005, however, Ms. Trummer filed a complaint regarding noise from a neighboring apartment, which indicates that she resumed residence well before November 2005.  (Welikson Decl. ¶ 22, Ex. Q.)  By DHCR order, Ms. Trummer paid $1 per month in rent from the time of the fire until November 2005, when she concedes the repairs were completed.  (SAC ¶ 132; Welikson Decl. ¶ 22, Ex. R.)

*Andres Mares-Muro.*  The SAC alleges that Mr. Mares-Muro lives in a building that defendants bought years after he moved in.  (SAC ¶ 133.)  Mr. Mares-Muro complained to the DHCR after the building changed hands, seeking reimbursement of rent overcharges dating from an allegedly improper increase in rents that he concedes occurred before defendants had any relationship to his building.  (*Id.* ¶¶ 134-135.)  He lost this proceeding.  (*Id.* ¶ 135.)

*Kim Powell.*  The SAC does not allege that Ms. Powell is a signatory to any lease.  It asserts that defendants have asked Ms. Powell to acknowledge that their acceptance of rent checks from her for her mother Margaret Powell's apartment is not an admission that she possesses succession rights to that apartment.  (*Id.* ¶ 139.)  The SAC also alleges that in July 2007, defendants installed a security camera in the common hallway near the apartment that Ms. Powell shares with her mother, Margaret Powell.  (*Id.* ¶ 141.)  Margaret Powell admitted in a September 12, 2007 court stipulation that she had vandalized the elevator in their building with marker, nail polish, and spray paint on at least six occasions since October 2006.  (Welikson Decl. ¶ 24, Exs. S-T.)

*BRUSH.* The SAC does not allege that BRUSH is a corporation, but rather describes it as an unincorporated association. (SAC ¶ 11; *see also* Plaintiffs' Rule 7.1 Statement (Karlan Decl. Ex. C).) It does not identify BRUSH's members (or even allege that it has members). It alleges that BRUSH has been harmed because defendants' acts "have required BRUSH to divert its activities away from its core activities and to focus on helping tenants who are being harmed by the Defendants." (SAC ¶ 91.)

## ARGUMENT

### I.    PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED

**A.    Plaintiffs Fail To Allege a Violation of the RICO Statute**

Dismissal is required pursuant to Federal Rule 12(b)(6) where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Ello v. Singh*, 2007 WL 3084979, at \*\*11-12 (S.D.N.Y. Oct. 19, 2007) (citing *Twombly*, 127 S. Ct. at 1974). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1974. "[P]laintiffs must nudge their claims across the line from conceivable to plausible." *Id.*

To plead a claim under 18 U.S.C.A. § 1962(c), a plaintiff must allege facts showing: (1) the existence of an "enterprise," (2) the affairs of which the defendant knowingly and willfully conducted (3) through a pattern (4) of racketeering activity. *See* 18 U.S.C.A. § 1962(c); *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232, 109 S. Ct. 2893, 2897 (1989). The elements of section 1962(c) must be established as to each individual defendant. *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987). Failure to plead any of these elements requires dismissal. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 42 (2d Cir. 1983).

1.     **Plaintiffs Fail To Allege "Racketeering Activity"**

      a)     **Plaintiffs Fail To Allege Mail Fraud**

To establish mail fraud as a RICO predicate act, a plaintiff must demonstrate that

1) defendants 2) knowingly or intentionally participated in a "scheme to defraud" 3) using the

U.S. mails "in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84

F.3d 629, 633 (2d Cir. 1996). Plaintiffs must also demonstrate detrimental reliance. *Bank of*

*China v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004). All of these elements must be pled with

the particularity required by Fed. R. Civ. P. 9(b). *McLaughlin v. Anderson*, 962 F.2d 187, 191

(2d Cir. 1992).

      (i)     **Plaintiffs Fail To Allege any Misstatements Attributable**
             **to Defendants**

The SAC runs afoul of Rule 9(b) by failing to specify which defendants committed which

alleged bad acts. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged

fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d

Cir. 1993). Rather, in cases involving multiple defendants, "the complaint should inform each

defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne*

*Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Connolly v. Havens*, 763 F.

Supp. 6, 13 (S.D.N.Y. 1991) ("[W]here there are multiple defendants . . . connections [must] be

made between the various defendants and the alleged acts of mail fraud.").

The SAC attributes acts to "Defendants" without specifying who among the Defendants

performed such acts. (*See, e.g.*, SAC ¶¶ 93-149.) This type of "wide-scale clumping" of

allegations against multiple defendants is inadequate. *Three Crown Ltd. P'ship v. Caxton Corp.*,

817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) (dismissing mail fraud claim where "defendants

[we]re clumped together in vague allegations regarding 'some or all of the defendants'").

Not a single act or statement is alleged to have been made by Mr. Wiener. Indeed, plaintiffs acknowledge that *none* of the alleged communications were actually made by either defendant, but rather were made by the landlord LLCs. Plaintiffs' attempts to cure this deficiency through nonspecific allegations that defendants "caused" the LLCs to make these communications (*see, e.g.,* SAC ¶¶ 93, 94, 98, 100, 106, 110, 113) are wholly conclusory, and thus insufficient. *See Kades v. Organic, Inc.*, 2003 WL 470331, at *9 (S.D.N.Y. Feb. 24, 2003) (dismissing mail fraud claims on 9(b) grounds where plaintiffs made conclusory assertions that defendants caused mailings, but failed to provide "specific factual allegations").

Plaintiffs do not articulate any theory of *respondeat superior* or vicarious liability, but even if one were argued, it would be similarly unavailing. "The weight of authority in this district and in other circuits is against" the application of "respondeat superior [a]s an appropriate basis for imposing civil liability under RICO." *Kahn v. Chase Manhattan Bank, N.A.*, 760 F. Supp. 369, 373 (S.D.N.Y. 1991). *Respondeat superior* is particularly inappropriate where, as here, plaintiffs offer only an "unadorned invocation of dominion and control." *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).

The SAC alleges only that Mr. Wiener is an investor, owner, and CEO of Pinnacle NY (SAC ¶ 44) and "directs and manages the Pinnacle Group's affairs" (*id.* ¶ 22), and that Pinnacle NY "holds title to property, manages, operates, and does business as" the LLCs (*id.* ¶ 45). Such bare allegations of ownership are patently insufficient to establish defendants' control over the LLCs. *See United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1886 (1998) (noting "deeply ingrained" principle "that a parent corporation . . . is not liable for the acts of its subsidiaries"); *Currency Conversion Fee*, 265 F. Supp. 2d at 426 (rejecting attempt to hold parent responsible for acts of wholly-owned subsidiary where complaint contained "no allegation

as to how or why the [parent] holding companies have dominion and control over the subsidiaries").

Indeed, even if the SAC offered more detail regarding control by defendants, a *respondeat superior* theory would still fail. "The mere assertion that a corporate parent is or was involved in the decision-making process of its subsidiary, or that it controlled the legitimate policies of its subsidiary, will not shift liabilities among distinct corporate entities." *Four Star Capital Corp. v. Nynex Corp.,* 1993 WL 350016, at *6 (S.D.N.Y. Sept. 9, 1993).

#### (ii)    Plaintiffs Do Not Adequately Plead Scienter

Plaintiffs have further failed to allege the requisite "specific intent to defraud." *United States v. Gole*, 158 F.3d 166, 167 (2d Cir. 1998); *In re Parmalat Sec. Litig.,* 412 F. Supp. 2d 392, 401 (S.D.N.Y. 2006). It is insufficient to rest, as plaintiffs do, on allegations that the mailings merely contain inaccuracies. To the extent the lease renewal forms, eviction notices, and rent reimbursements allegedly sent by defendants were merely inaccurate, they cannot serve as a basis for a fraud claim. Rather, plaintiffs must also demonstrate "some element of deception," *McLaughlin*, 962 F.2d. at 192—*i.e.*, that defendants intended these inaccuracies to mislead plaintiffs. *See Lortenzen v. Curtis,* 19 F. Supp. 2d 322, 330 (S.D.N.Y. 1998) (dismissing claims where complaint alleged mailings were "false" but did not specify how "they were fraudulent").

To satisfy Rule 9(b), then, "plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (emphasis in original) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). "[S]peculation or conclusory allegations," *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000), and "[g]eneral allegations that the defendants acted in their economic self-interest are not enough," *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000). "Acts done inadvertently, mistakenly, or in good faith without an intent to defraud do not

satisfy the requirements of the statute." *O'Malley v. N.Y. City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990); *O'Brien v. Price Waterhouse,* 740 F. Supp. 276, 281, 284 (S.D.N.Y. 1990) (allegations of negligence insufficient to satisfy RICO mail fraud scienter requirement).

Plaintiffs have not alleged facts establishing a strong inference of fraudulent intent. In fact, the nature of the defendants' alleged business—the management of 21,000 apartments located in over 400 buildings in four boroughs (SAC ¶ 156) under a complex regulatory regime—gives rise to a strong inference that any misstatements defendants may have made were innocent errors. In operating any endeavor of this magnitude, mistakes are bound to happen. Clerks may print rent notices for the wrong amount, names may be misspelled on checks, nonpayment proceedings may automatically be started for failure to pay rent. Such errors are inadequate to plead fraudulent intent. Plaintiffs cannot "garnish this recitation [of documents and other communications] with conclusory allegations that defendants' conduct was fraudulent . . . and then whip this bland mixture into a froth of RICO claims." *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 508 (S.D.N.Y. 1990).

Indeed, the communications at issue here resemble the type of "[r]outine business communications that show only a dispute between the parties," and "do not lead to a reasonable inference of fraudulent intent." *Atl. Gypsum*, 753 F. Supp. at 513. The mailings alleged are simply "standard form letters used regularly by defendants" in their routine operations, and do not provide a basis for a RICO claim. *O'Malley*, 896 F.2d at 707. Courts are quick to dismiss, on scienter grounds, cases where the alleged predicate acts are at base simply conflicting views by the parties as to their rights and entitlements. *See, e.g., Atl. Gypsum,* 753 F. Supp. at 513 (alleged predicate acts were simply "communications which show[ed] only the existence of a dispute over the propriety of continued payments" during ongoing dispute over one party's performance); *O'Malley*, 896 F.2d at 707 (alleged predicate acts simply evidenced dispute over

12

the employee's entitlement to certain benefits for allegedly service-related injuries in connection with denial of medical benefits and termination of employment).

### (iii) Plaintiffs' Allegations of the Use of U.S. Mails Are Dubious at Best

Mail fraud as an alleged predicate act may not be sustained unless it is established that the U.S. mails were used in the commission of that act. *S.Q.K.F.C.,* 84 F.3d at 633 (holding that mail fraud cause of action fundamentally requires "use of interstate mails or transmission facilities in furtherance of the scheme"). Plaintiffs' claims that mailings occurred are especially dubious. In their September 28, 2007 RICO Statement (Karlan Decl., Ex. B ("RICO Stmt.")) plaintiffs referred to a chart of communications they attributed to defendants as "correspondence" (RICO Stmt. at 19) and conceded that "Plaintiffs expect through discovery to confirm the circumstances surrounding the mailing *or other transmission* of these communications" (*id.* at 21) (emphasis added). In the SAC, which was filed a mere two weeks later without the benefit of any discovery, plaintiffs describe the very same chart of communications simply as "mailings." (SAC ¶ 181.)

### (iv) Plaintiffs Fail To Allege Detrimental Reliance

"[T]o prevail in a civil RICO claim predicated on any type of fraud . . . plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions." *Bank of China,* 359 F.3d at 178.

Here, no reliance, reasonable or otherwise, is alleged. To the contrary, the SAC repeatedly emphasizes that plaintiffs were not duped or misled by the representations contained in the alleged mailings. (*See, e.g.,* SAC ¶ 80 ("Because the amount of the new check was less than the amount the Charrons are owed and the damages they have suffered, they have rejected it."); ¶ 94 ("Charrons attempted to withhold rent based on the credit they should have received as a result of past overcharges."); ¶ 119 ("Stahl-David filed a rent overcharge claim" prior to the

13

receipt of the alleged mailing); ¶ 126 (when served with notices stating he was not the tenant of

record, "Mr. Taylor sent copies of his rent checks to Defendants" to show that he was).)

      **b)**    **Plaintiffs Fail To Allege Extortion**

      **(i)**    **Plaintiffs Fail To Plead Extortion with Particularity**

      Plaintiffs contend that defendants "threatened" some of the individual plaintiffs—the

Charrons, Stahl-David, Casasnovas, and Moore—with eviction proceedings in order to extort

higher rent payments than permitted by law. (*Id.* ¶ 182.) Other than referencing eviction notices

sent to these plaintiffs and eviction proceedings brought against some of them, the SAC offers no

particulars whatsoever regarding these supposed "threats." (*Id.* ¶¶ 94-95, 98-100, 110-111, 118-

120, 182.) This is patently insufficient to plead extortion. *See Lazzarino v. Kenton Assocs., Ltd.,*

1997 WL 214938, at *3, n.4 (S.D.N.Y. Apr. 29, 1997) (dismissing allegations of extortion

against landlord that included "rent gouging" and "spurious eviction proceedings"); *see also*

*Philan Ins. Ltd. v. Frank Hall & Co.*, Inc., 712 F. Supp. 339, 344 (S.D.N.Y. 1989) (indicating

that extortion in RICO context should be pled in accordance with Rule 9(b)); *Plount v. Am.*

*Home Assurance Co.*, 668 F. Supp. 204, 206-07 (S.D.N.Y. 1987) (same).

      **(ii)**    **Plaintiffs Fail To Plead the Elements of Extortion**

      The SAC also fails to establish the necessary elements of an extortion claim. Extortion

under the Hobbs Act, 18 U.S.C.A. § 1951, requires 1) "the obtaining of property from another,"

2) "with his consent," 3) "induced by wrongful use of actual or threatened force, violence, or

fear." *Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1998 WL 321446, at *4

(S.D.N.Y. June 18, 1998) (quoting 18 U.S.C.A. § 1951(b)(2)).

      Plaintiffs do not sufficiently allege consent. The SAC details numerous instances of

plaintiffs withholding payments and defending litigation proceedings instead of consenting to

pay what they purport to be rent overcharges. (*See, e.g.,* SAC ¶ 99 ("Mr. Casasnovas finally sent

them a letter informing them that he would withhold rent . . . and filed a complaint with DHCR

based on the overcharge in rent.").)  Where plaintiffs do not acquiesce, but rather oppose

defendants' alleged efforts, there is no consent. *See Goldberg v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.*, 1998 WL 50200, at \*5 (S.D.N.Y. Feb. 9, 1998) (no extortion where "[p]laintiff did

not consent, but [rather] opposed" legal action at issue).

The SAC's few claims of plaintiffs being duped into making certain overpayments are

similarly unavailing.  (*See, e.g.,* SAC ¶ 110 (eviction notices sent to Moore "were false . . .

because they were based on unlawfully inflated rent amounts, *which Ms. Moore did not realize*

*at the time*") (emphasis added).)  Consent does not exist where a party is allegedly defrauded, as

"misrepresentation . . . falls under the rubric of fraud—not extortion." *Battle Assocs. for*

*Women's Med., PLLC*, 2006 WL 2642137, at \*7 (S.D.N.Y. Sept. 15, 2006) (dismissing RICO

extortion claim premised on intentional misrepresentation).

The SAC also fails to establish the element of "wrongful use of actual or threatened

force, violence, or fear." 18 U.S.C.A. § 1951 (b)(2).  "Plaintiff[s] nowhere allege[] that

defendants threatened [them] with the use of physical force [or] violence." *Torres v. Ill. Bell Tel.*

*Co.,* 1987 WL 15389, at \*18 (N.D. Ill. Aug. 3, 1987).  Although fear of "economic harm" is

cognizable under the Hobbs Act, *see Merrill Lynch,* 1998 WL 321446, at \*4, the concept has

limits.  "The word 'fear' as used in the Hobbs Act does not include every economic injury which

might be tortious under state law." *Fiore v. McDonald's Corp.,* 1996 WL 331090, at \*8

(E.D.N.Y. June 12 1996).  In particular, a "complaint based on nothing more than a party's filing

of an unjustified suit" "do[es] not constitute wrongful use of fear and thus extortion." *Merrill*

*Lynch*, 1998 WL 321446, at \*5.

The "threats" alleged here—legal actions to enforce leases—are not legally sufficient.

The payments allegedly sought were for the amount of rent that each plaintiff had *voluntarily*

agreed to pay at the initial lease signing. It is an abuse of language to assert that plaintiffs "feared" losing their apartments if they did not meet financial obligations they had at one point voluntarily incurred and readily expected to pay. The deprivation of "perhaps legitimate expectations" of financial benefit, even if "unjustified under state law," does not constitute extortion. *Flowers v. Cont'l Grain Co.,* 775 F.2d 1051, 1053 (8th Cir. 1985); *see also Torres,* 1987 U.S. Dist. LEXIS 7157, at *17 (no cognizable "fear" where defendants threatened to cancel contract if plaintiff continued nonpayment, although defendants were allegedly "sabotag[ing]" switchboards that they were required to maintain under terms of contract).

<strong>c)   Plaintiffs Fail To Allege a Violation of The National Stolen Property Act</strong>

The SAC also fails to plead a violation of the National Stolen Property Act ("NSPA"), which prohibits 1) "transport[ing] in interstate or foreign commerce" 2) "any goods, wares, merchandise, securities or money" 3) "of the value of $5,000 or more," 4) "knowing the same to have been stolen, converted or taken by fraud." 18 U.S.C.A. § 2314. NSPA predicate acts must be pled with the specificity required by Rule 9(b). *See Kades,* 2003 WL 470331, at *9.

Plaintiffs' NSPA claims consist of a single paragraph alleging that unspecified amounts of "wrongfully obtained funds" have been transmitted to banks for payment of mortgages on defendants' apartment buildings. (SAC ¶ 183.) Plaintiffs plead no detail, offering only conclusory statements that such transport occurred, that the transport constituted interstate commerce, that defendants had some role in the transport, and that such money was taken by fraud.

These allegations are insufficient. *See Shaw v. Rolex Watch U.S.A., Inc.,* 726 F. Supp. 969, 973 (S.D.N.Y. 1989) (dismissing RICO claims based on violation of NSPA where plaintiff failed to allege interstate transport). No dollar value is assigned to the alleged transfer or

transfers. Plaintiffs have entirely failed to allege that any transfer was made knowing that the money had "been stolen, converted or taken by fraud." *Kades,* 2003 WL 470331, at *9. And plaintiffs have not demonstrated—nor can they—any injury to their "business or property" directly or proximately caused by the alleged NSPA violations.

### 2.   Plaintiffs Fail To Allege a "Pattern" of Racketeering Activity

"A plaintiff seeking to demonstrate a pattern of racketeering activity under § 1962 must allege . . . that the predicate acts amount to or pose a threat of continued criminal activity." *U.S. Fire Ins. v. Limousine Serv.*, 303 F. Supp. 2d 432, 448 (S.D.N.Y. 2004) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). "A plaintiff may satisfy the continuity requirement by alleging either a close-ended pattern—that is, criminal conduct extending over a substantial period of time—or an open-ended pattern, i.e., past criminal conduct coupled with a threat of future criminal activity." *U.S. Fire Ins.*, 303 F. Supp. 2d at 448.

Plaintiffs allege open-ended continuity. (SAC ¶¶ 184-185 ("Defendants' fraudulent scheme and pattern of racketeering activity is ongoing, and . . . Plaintiffs have suffered and will continue to suffer damages.").) The test for assessing whether open-ended continuity exists depends on the nature of the enterprise. *Cofacredit*, 187 F.3d at 242-43. If the enterprise is primarily engaged in legitimate business, as is alleged in this case (SAC ¶ 47 (Pinnacle enterprise exists "for the purpose of acquiring New York City apartment buildings")), the plaintiff must show either that the predicate acts were the "regular way of operating th[e] business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 243. Here, plaintiffs do not adequately allege either possibility.

Plaintiffs do not plead facts from which it may be inferred that defendants' regular way of operating their business is through the fraudulent use of the mails and extortion, or that there is a real threat of continued mail fraud, extortion, or violations of the NSPA. Indeed, the facts as

17

pleaded are thoroughly to the contrary. Plaintiffs fail to explain how the actions complained of could plausibly have been directed at "emptying rent-regulated apartments" in order "to convert to condominiums or co-ops" (SAC ¶ 2) where only nine of 21,000 units, spread across seven different buildings, are specifically alleged to have been affected. Indeed, of these seven buildings, only two are actually alleged to be the subject of a conversion plan, (*id.* ¶ 178(e)), and no evictions of any tenants, plaintiffs or otherwise, are alleged. Furthermore, there is no threat of continued illegal activity with respect to these conversions, as all condominium conversion plans in New York City are subject to the continued supervision of New York's Attorney General. N.Y. Gen. Bus. Law § 352-eeee(f)(4).

Plaintiffs also fail to allege that "illegally raising the rent on rent-regulated apartments" (SAC ¶ 2) constitutes defendants' regular way of doing business. The SAC concedes that plaintiffs Charrons, Casasnovas, and Moore each occupy units once occupied by rent-regulated tenants at significantly lower rates. (*See Id.* ¶ 99 (Casasnovas' predecessor in 2002 paid $683); ¶ 112 (Moore's predecessor in 2004 paid $464).) Conspicuously absent is any allegation that previous tenants in these apartments were subject to harassment of any kind. It defies logic to suggest that defendants allowed the prior tenants, who paid lower rents, to live completely undisturbed, but switched tactics after vacancy to harass the new occupants, who pay significantly higher legal rents for the same units.

Moreover, the SAC concedes that defendants *did not even own* the buildings in which plaintiffs Stahl-David and Mares-Muro live when the rent on their units was set. (*Id.* ¶¶ 116, 133.) These units cannot be part of any "pattern" by defendants.

The SAC does not allege a single instance in which a tenant was harassed into vacating their apartment, following which that apartment was sold as a condominium or rented at a higher rate. Plaintiffs' conclusory allegations to the contrary do not overcome this fundamental

deficiency. *See Caravella v. Hearthwood Homes, Inc.*, 2007 WL 2886507, at *11 (N.D.N.Y. Sept. 27, 2007) (allegation that conduct was defendants' "regular way of conducting business" was "wholly conclusory and unsupported by any specific factual allegations"); *Allen v. New World Coffee, Inc.*, 2001 WL 293683, at *6 (S.D.N.Y. Mar. 27, 2001) ("[P]laintiffs' allegations that defendants' conduct [toward one investor] was defendants' 'regular way of doing business . . . are merely conclusory."). And indeed, defendants would have little incentive to harass tenants in condominium conversions into eviction. If defendants desired eviction, New York law provides that they could lawfully evict non-purchasing tenants pursuant to an "eviction-plan." N.Y. Gen. Bus. Law § 352-eeee(b).

### 3.    Plaintiffs Fail To Allege an "Enterprise"

The Pinnacle Enterprise, as alleged in the SAC, consists of Pinnacle NY, Mr. Wiener, SecureWatch 24, Praedium, three principals of Praedium, and "at least the LLCs" alleged to own the buildings in which the individual plaintiffs reside. (SAC ¶ 47.) In one portion of their RICO Statement, plaintiffs string together another seven entities as part of the Pinnacle Enterprise. (RICO Stmt. at 24.) These seven entities are not mentioned anywhere else in the SAC or the RICO Statement, and plaintiffs make no effort to explain what these entities are, how they are related to Pinnacle NY or Mr. Wiener, or their relation to or role in the alleged Pinnacle Enterprise.

### a)    The So-Called "Pinnacle Enterprise" Is Not Distinct from the RICO "Persons"

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person' [*i.e.*, the defendant]; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S. Ct 2087, 2090 (2001).

Despite plaintiffs' efforts to depict an extended, multi-party association-in-fact, they have succeeded in naming, *at most*, three distinct entities in the alleged Pinnacle Enterprise: Pinnacle NY, Mr. Wiener, and Praedium. Because as defendants, Pinnacle NY and Joel Wiener are persons under RICO, without Praedium, plaintiffs' RICO claim would automatically fail because there would be identity between the "enterprise" and the "persons." Praedium, however, is not properly part of the alleged Pinnacle Enterprise.

Pinnacle NY and all of its allegedly affiliated corporations (as well as Joel Wiener) are considered one entity for RICO "enterprise" purposes. "[W]here the alleged conspirators are separate legal entities but operate within the same corporate structure guided by a single corporate consciousness, a RICO person may not be subject to liability simply because he is separately incorporated from the RICO enterprise." *China Trust Bank of N.Y. v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 286 (S.D.N.Y. 1997) (dismissing RICO claim on distinctness grounds where enterprise alleged was defendant and defendant's foreign branch, a legally separate entity). Because Joel Wiener is alleged to be an officer of Pinnacle (SAC ¶ 22), he is considered part of the alleged Pinnacle entity for purposes of assessing the enterprise. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (corporation and officers "carrying on the regular affairs" of the corporation should be treated as single entity in assessment of enterprise).

A corporation plus its "affiliates and subsidiaries," "culpable employees, directors and officers," and third-party "dummy" entities controlled by the corporation are all considered to be the same entity when assessing distinctness under § 1962(c). *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346-47 (S.D.N.Y. 2007); *see also Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998) (plaintiff may not evade distinctness requirement by naming "separately incorporated" entities that "act[] within the scope

20

of a single corporate structure, guided by a single corporate consciousness"). Indeed, the SAC emphasizes this organizational identity, repeatedly alleging that the non-Praedium members of the alleged enterprise—Pinnacle NY, Joel Wiener, SecureWatch 24, and the building management LLCs—constitute a single corporate consciousness guided by the defendants. (SAC ¶¶ 44-45, 176.) Likewise, Praedium and its three principals constitute a single entity for RICO enterprise purposes.

Praedium may not be deemed part of the alleged Pinnacle enterprise. Praedium's alleged relationship with the Pinnacle entities is as an investment backer for certain buildings—nothing more. (*Id.* ¶¶ 5-6.) Praedium allegedly has this same relationship with many other companies that it funds through its "over $6 billion in nationwide real estate investments." (*Id.* ¶ 5.) This sort of relationship, standing alone, cannot support an entity's inclusion in an enterprise. *See Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.,* 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001) (defendants were "no more united in an enterprise than any vendor and its customers"); *VanDenBroeck v. CommonPoint Mortgage Co.,* 22 F. Supp. 2d 677, 682 (W.D. Mich. 1998), *aff'd,* 210 F.3d 696 (6th Cir. 2001) (no enterprise between mortgage broker and lenders because "[w]hat Plaintiffs allege is a typical business relationship in which two or more parties rely upon each other to achieve separate, but dependent, economic benefits").

Moreover, there is no "nexus" between Praedium's funding and the alleged racketeering activity, as is required to show Praedium's membership in the alleged enterprise. *See Satinwood,* 385 F.3d at 174. To plead an entity's membership in an enterprise, the entity's "role in the alleged course of fraudulent or illegal conduct" must be explained. *Id.* at 175. It must be shown that the enterprise "function[ed] as a continuing unit," *United States v. Turkette,* 452 U.S. 576, 583, 101 S. Ct. 2524, 2528-29 (1981), and that the entity was "involved with the operation, management, or internal affairs" of the enterprise alleged, *Crab House of Douglaston, Inc. v.*

21

*Newsday, Inc.,* 418 F. Supp. 2d 193, 205 (S.D.N.Y. 2006). No such showing has been made here. Plaintiffs' pleadings provide no indication that Praedium controlled, touched, or was at all involved in *any* of the operations—receivables, collections, housing court hearings, etc.— through which any of the alleged "racketeering activities" were conducted.

Plaintiffs' tactic of including Praedium in an attempt to circumvent the distinctness requirement is not unique. *See, e.g., Manhattan Telecomms.,* 156 F. Supp. 2d at 383 ("[T]he alleged purpose of the enterprise underscores that it is a fiction created by plaintiff to circumvent the distinctness requirement."). Judge Griesa recently dismissed, on distinctness grounds, a RICO claim where the enterprise alleged consisted of a defendant property management corporation and non-defendant Murray Hill Properties, another property management corporation that paid the defendant to use its trade name and administer certain of its properties. *See Ames Assocs. v. ABS Partners Real Estate LLC,* 2007 WL 984009, at *5 (S.D.N.Y. Mar. 30, 2007). The plaintiff accused the defendant of infiltrating the "legitimate" building management enterprise comprised of the defendant and Murray Hill, and using that enterprise to conduct a scheme of fraudulently charging tenants for various repair and renovation projects. *Id.* at *4.

Judge Griesa rejected Murray Hill's inclusion in the enterprise, finding that Murray Hill had performed "no function in the alleged enterprise," and that "[t]he complaint [wa]s devoid of any alleged ongoing conduct in the enterprise on Murray Hill's part." *Id.* The court concluded that defendants had simply engaged in "artful pleading": "When the above factual allegations are viewed in the context of the entirety of the complaint it becomes clear that the inclusion of Murray Hill as a constituent of the . . . [e]nterprise is an attempt to circumvent the distinctness requirement." *Id.* at *5. Indeed, as Judge Griesa noted, "this type of artful pleading is common":

> Typically, the defendant corporation is alleged to be part of an association in fact enterprise including the corporate employees and agents who have engaged in wrongdoing. Legal entities affiliated with the corporation, such as a subsidiary or holding

22

> company, are sometimes thrown into the fact stew as well. Finally,
> there may be outside legal entities, such as an advertising agency
> or law firm, which are also named as defendants and as part of the
> association in fact enterprise.

*Id.* (quoting David B. Smith & Terrance G. Reed, *Civil RICO* ¶ 3.07 at 3-83 (2006)).

        b)     **Plaintiffs Fail To Allege the Hierarchy and Organization of the Enterprise**

A plaintiff must allege "solid information regarding the hierarchy, organization, and activities of th[e] alleged association-in-fact enterprise, from which [the court] could fairly conclude that its members functioned as a unit." *Satinwood*, 385 F.3d at 174 (internal quotations and citation omitted).

Other than vague allegations that Praedium has provided "much of its funding" (SAC ¶ 178), the SAC is silent regarding the relationship between Praedium and either the defendants or the enterprise. There are no allegations of "any kind of chain of command or functional integration." *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 350 (S.D.N.Y. 1998). For example, the SAC does not specify whether Praedium is a lender to the LLCs, whether its relationship is directly with Mr. Wiener, whether Mr. Wiener is an equity holder of Praedium, or even whether Praedium is involved in each of the buildings in any capacity.

To plead an entity's membership in an enterprise, the entity's "role in the alleged course of fraudulent or illegal conduct" must be explained. *Satinwood*, 385 F.3d at 175. Plaintiffs do not allege how each (or any) alleged member of this supposed enterprise worked to further the racketeering goals of the enterprise. For example, plaintiffs have failed to connect SecureWatch 24 to any alleged predicate act.

"Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* (internal quotations and citation omitted). Because there is nothing in the SAC from which it could be inferred that the members of the alleged enterprise "functioned as a unit,"

"there is no basis to support the conclusion that the supposed constituent entities of the [enterprise] were 'associated together for a common purpose of engaging in a course of conduct.'" *Id.* (quoting *Turkette*, 452 U.S. at 583, 101 S. Ct. at 2528).

**B.    Plaintiffs Fail To Allege an Injury to "Business or Property"**

A civil RICO plaintiff must allege that he or she was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C.A. § 1964(c). This requires a showing of some "actual, out-of-pocket loss." *Dornberger v. Metro. Life Ins. Co.,* 961 F. Supp. 506, 521 (S.D.N.Y. 1997). Emotional distress does not constitute injury to business or property under § 1964(c). *Williams v. Dow Chem. Co.,* 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003); *Hollander v. Flash Dancers Topless Club,* 340 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2004). *De minimis* pecuniary injuries are also not cognizable. *See Howe v. Reader's Digest Assocs., Inc.*, 686 F. Supp. 461, 465-66 (S.D.N.Y. 1988) (expense of long-distance phone calls made defending against alleged racketeering acts insufficient to fulfill RICO injury requirement).

None of the individual plaintiffs can plead injury to "business or property" because any injury they may have incurred as a result of the defendants' activities has already been remedied through proceedings in New York State courts and the DHCR, or through settlements. (SAC ¶¶ 94, 102, 108, 115, 121, 127, 129, 132, 135, 140; Welikson Decl. ¶¶ 7, 9, 11, 12, 16, 18, 20, 21, 23, Exs. C, E-H, K-P, R.)

None of the plaintiffs claim to have lost their apartments. Many do not even claim to have overpaid rent or spent money defending against defendants' alleged activity. To the extent that these plaintiffs sustained *any* pecuniary loss as a result of defendants' actions—and none is alleged in the SAC that has not been remedied in Housing Court, by the DHCR, or through settlement—such loss would not extend beyond incidental costs such as postage fees, local transportation, and perhaps limited lost work time. (*See, e.g.,* SAC ¶ 127 (Taylor has not

24

received "any compensation" for being required to defend housing court proceedings); ¶ 132 (Trummer was "forced to spend time and resources" challenging assessment of back rent).) Such incidental costs, especially when not specifically pled, are considered *de minimis*, and do not constitute a cognizable RICO injury. *See Howe*, 686 F. Supp. at 465-66; *Dornberger*, 961 F. Supp. at 521.

Plaintiffs' claims of emotional distress are similarly insufficient under RICO. (*See, e.g.*, SAC ¶¶ 140-141 (Powell was forced to spend "time and resources" pursuing actions against defendants and was "targeted . . . for harassment and intimidation" through a surveillance camera installed outside her mother's apartment); ¶ 108 (Flannagan received no "explanation or compensation for harassing her and wasting her time").)

BRUSH's RICO claim fails because the SAC contains no allegations of harm to the "business or property" of BRUSH. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985) (plaintiff only has RICO standing "to the extent that, he has been injured in *his* business or property") (emphasis added); *Rosendale v. Citibank, N.A.*, 1996 WL 175089, at *4 (S.D.N.Y. Apr. 15, 1996) (RICO plaintiff "may only recover for injuries that are personal to him"). BRUSH's complaint that it has had to reallocate resources to serve the affected tenants (SAC ¶ 91) does not allege a cognizable injury. *See Libertad v. Welch*, 53 F.3d 428, 437 (1st Cir. 1995) ("While the conduct of the [defendant], lawful and unlawful, certainly conflicts with the group's mission and renders their objectives more difficult to achieve, this by itself does not give rise to an injury to the group's business or property interests."). Furthermore, such alleged "injury" is insufficient under RICO because it is not an "actual proven out-of-pocket financial loss," *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126, 133 (S.D.N.Y. 2003), *vacated in part on other grounds*, 235 Fed. Appx. 776 (2d Cir. 2007), and because it is speculative, indefinite and unquantifiable in both nature and amount, *see Dornberger*, 961 F.

Supp. at 521 ("Injuries that are speculative or unprovable in nature or amount are not recoverable [under RICO.]").

In addition, any injury BRUSH is alleged to have suffered to its "business or property" is wholly derivative of the harm claimed to have been suffered by the individual plaintiffs and BRUSH's "constituents." "[W]here a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery" under RICO. *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 1319 (1992) (no RICO standing for "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts"); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003) ("[The Second Circuit] ha[s] repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise.").

## C.    Plaintiffs Fail To Plead Causation

Plaintiffs must allege that their "injuries were . . . proximately caused by the defendants' *racketeering activity*, not that their injuries [were] proximately caused by the defendants' conduct." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 285 (2d Cir. 2006) (emphasis in original). In other words, "a plaintiff does not have [RICO] standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, *even though the injury was proximately caused by some non-RICO violations committed by the defendants*." *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003) (emphasis added).

The SAC does not plead causation. None of the plaintiffs allege reasonable reliance on the alleged mail fraud. *See supra* Section I(A)(1)(a). None allege the requisite elements of

consent and fear for extortion. *See supra* Section I(A)(1)(b). Moreover, it is inconceivable how plaintiffs could have sustained any injury proximately caused by defendants' alleged interstate transport of funds in violation of the NSPA. *See supra* Section I(A)(1)(c).

Plaintiff Mares-Muro's claims fail for the additional reason that none of Mares-Muro's complaints are actionable against defendants. *All* of the transactions of which Mares-Muro complains, from the setting of the allegedly inflated rent in September 2003, to the dismissal of his complaint in July 2005, occurred while Mares-Muro's unit was owned by a landlord unrelated to any of the defendants. (SAC ¶¶ 133-135.) Defendants are not alleged to have acquired this building until August 2005. (SAC ¶ 133.) Defendants could not have caused Mares-Muro's alleged injury.

**D.    Plaintiffs Are Not Entitled to Equitable Relief Under RICO**

The Second Circuit has expressed serious doubt regarding the availability of injunctive relief for private RICO plaintiffs. *Trane Co. v. O'Connor Secs.*, 718 F.2d 26, 28-29 (2d Cir. 1983). Only the Ninth and the Seventh Circuits have definitively ruled on the issue, and are divided on the result. *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986) (denying equitable relief); *NOW, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001) (granting equitable relief). We submit that this Court should follow the Ninth Circuit's decision in *Wollersheim*, as well as the decisions of District Courts in this Circuit—the majority of which have followed *Wollersheim*—in holding such remedies to be inappropriate. *See Att'y Gen. of Canada v. RJ Reynolds Tobacco Holdings, Inc.*, 103 F. Supp. 2d 134, 155 (N.D.N.Y. 2000); *Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1294 (S.D.N.Y. 1988); *Town of W. Hartford v. Operation Rescue*, 726 F. Supp. 371, 377-78 (D. Conn. 1988), *rev'd on other grounds*, 915 F.2d 92 (2d Cir. 1990); *but see Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 244 (S.D.N.Y. 2002) (permitting injunctive relief).

27

The Ninth Circuit's rejection of equitable remedies is based on three rationales. First, the express inclusion of an *injunctive* remedy available to the government in § 1964(b) and a *damage* remedy available to private parties in § 1964(c) implies the exclusion of a *private injunctive* remedy. *Wollersheim*, 796 F.2d at 1082. Second, Congress rejected an express authorization of private injunctive relief. *Id.* at 1084-86; H.R. 19215, 91st Congress, 2d Sess. 116 Cong. Rec. 31, 914 (1970). Third, § 1964(c) is analogous to Section 4 of the Clayton Act, 15 U.S.C.A. § 15(a), which authorizes a private treble damage remedy in antitrust violations in substantially identical language. *Wollersheim,* 796 F.2d at 1086-87. Section 4 of the Clayton Act does not provide for private injunctive relief. *Paine Lumber Co. v. Neal*, 244 U.S. 459, 471, 37 S. Ct. 718, 719-20 (1917). This "strongly suggests that Congress did not intend to give private civil RICO plaintiffs access to equitable remedies." *Wollersheim*, 796 F.2d at 1087.

## II.    PLAINTIFFS LACK STANDING

### A.    All of the Individual Plaintiffs Have Already Litigated the Facts Alleged in the SAC

"A federal court is bound to give the same preclusive effect to a state court decision that a state court would give it." *Oak Bevs., Inc. v. Tomra of Mass., LLC,* 96 F. Supp. 2d 336, 351 (S.D.N.Y. 2000) (citing *Tonken v. Loving & Weintraub, Inc.*, 22 F. Supp. 2d 86, 90 (S.D.N.Y. 1998)). "[New York] has adopted the transactional analysis approach in deciding *res judicata* issues. Under this address, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, *even if based upon different theories or if seeking a different remedy*." *Pauk v. Bd. of Trs. of City Univ. of N.Y.,* 111 A.D.2d 17, 19, 488 N.Y.S.2d 685, 687 (1st Dep't 1985) (emphasis added). *See Oak Bevs.,* 96 F. Supp. 2d at 351 (dismissing RICO claim where facts at issue had already been addressed in stipulation); *Black Radio Network, Inc. v. NYNEX Corp.,* 44 F. Supp. 2d 565, 587 (S.D.N.Y.

1999) (dismissing RICO action where plaintiff had lost an Article 78 proceeding on related issues).

It is of no concern that the state court and DHCR proceedings involved the actual landlords, and not defendants, because the parties need not be identical "where the party against whom claim preclusion is sought has, in essence, already received his or her day in court." *Pharr v. Evergreen Garden, Inc.*, 123 Fed. Appx. 420, 424 (2d Cir. 2005); *see also Alpert's Newspaper Delivery, Inc. v. N.Y. Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) (noting that the Second Circuit has "expressly held" that literal privity is not required).

New York law gives preclusive effect to final judgments on the merits from Article 78 proceedings, *see Pauk*, 111 A.D.2d at 20, 488 N.Y.S.2d at 688-9; *Rapoli v. Village of Red Hook*, 41 A.D.3d 456, 456-57, 836 N.Y.S.2d 700-01 (2d Dep't 2007); to final judgments on the merits from Housing Court proceedings, *see Kafka v. Meadowlark Gardens Owners, Inc.*, 34 A.D.3d 676, 677, 826 N.Y.S.2d 83, 85 (2d Dep't 2006); to final judgment on the merits from DHCR proceedings, *see Gerard v. Supreme Co.*, 277 A.D.2d 154, 155, 717 N.Y.S.2d 106, 107 (1st Dep't 2000); *Westmoreland Assocs., LLC v. Kispert*, 2002 WL 31777885, at * 2 (N.Y. City Civ. Ct. 2002); and to settlements, *see Kafka*, 34 A.D.3d at 677, 826 N.Y.S.2d at 85; David Siegel, *N.Y. Practice* § 451 (4th ed. 2005).

All of the ten individual plaintiffs have already litigated or resolved the very claims they now bring before this Court:

- The Charrons have obtained a DHCR order reducing their rent, and have been offered $24,000 in rent credits pursuant to that order. (SAC ¶¶ 92, 94.)
- Casasnovas settled a Housing Court proceeding, obtaining a stipulation reducing his rent. (*Id.* ¶ 102.)
- Flannagan settled her claims through a stipulation that awarded her succession rights to the unit in question. (*Id.* ¶ 108; Welikson Decl. ¶ 11, Ex. G.)
- Moore settled a DHCR proceeding, obtaining a $5,000 rent credit and a stipulation reducing her rent. (SAC ¶ 115.)

- Stahl-David prevailed in a DHCR proceeding, obtaining a DHCR order reducing his rent. (*Id.* ¶ 121.)
- Taylor's landlord gave him a lease in his own name for the unit in question. (Welikson Decl. ¶ 20, Ex. N-O.)
- Trummer lost a DHCR fair market rent appeal (SAC ¶ 129), and settled a dispute about repairs to her apartment after a fire in a neighboring unit (*id.* ¶¶ 131-32).
- Mares-Muro lost a DHCR fair market rent appeal. (*Id.* ¶ 135.)
- The Powells obtained a Housing Court verdict in 1998-99 that entitled them to their desired repairs. (*Id.* ¶ 140.)

## B.    BRUSH Does Not Have Standing To Bring Claims on Behalf of Its "Constituents"

BRUSH has no standing, as its claimed injuries are based almost entirely on injuries to those individuals, including the individual plaintiffs, who are within BRUSH's "constituency," rather than on injuries suffered by BRUSH itself. *See supra* Section I(B).

Nor can BRUSH save its claim by invoking "associational standing." Organizations bringing claims under that doctrine must satisfy precise requirements outlined by the Supreme Court, and strictly followed in this Circuit:

> In determining whether an association has standing to maintain a suit to redress its members' injuries, rather than an injury to itself, we apply a three-pronged test. Under this test, the association has standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2442 (1977) (internal citations omitted)). Indeed, "[e]ven when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100, 99 S. Ct. 1601, 1608 (1979).

BRUSH fails on numerous grounds to satisfy the requirements for associational standing. First, courts consistently deny standing to associational plaintiffs when, as here, the claims asserted are identical to those of the individual plaintiffs in the case. *See, e.g., Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 172-73 (S.D.N.Y. 2006).

Second, BRUSH fails the third prong of the *Hunt* test. An association is not entitled to injunctive relief on behalf of its members "where 'the fact and extent' of the injury . . . 'would require individualized proof,' or where 'the relief requested [would] require[] the participation of individual members in the lawsuit.'" *Bano*, 361 F.3d at 714 (internal citation omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16, 95 S. Ct. 2197, 2212 (1975); *Hunt,* 421 U.S. at 343, 97 S. Ct. at 2442).

Finally, BRUSH lacks standing to bring this action on behalf of its "constituents" because it is not a membership organization. *Hunt*, 432 U.S. at 344, 97 S. Ct. at 2442 (requiring for standing "indicia of membership in an organization," such as electing, and serving as, members of the association, and financing the association's activities). This case is much like *In re Holocaust Victim Assets Litigation*, in which the plaintiff organization was a "self-proclaimed . . . representative of the Polish community" which sought to bring suit on behalf of the members of the Polish community. 225 F.3d 191, 196 (2d Cir. 2000). In holding that the plaintiff organization did not meet the *Hunt* requirements, the Second Circuit noted there that "the record reveals nothing about [the organization's] size, membership, or activities. We do not even know whether [the organization] has any members other than the individual intervenors." *Id.*

The doctrine of "third party standing" is similarly unavailing. In the Second Circuit, "[i]n addition to meeting 'the constitutional prerequisites of standing' . . . a plaintiff seeking third-party standing in federal court must also satisfy the prudential prerequisites of standing by demonstrating a close relation to the injured third party and a hindrance to that party's ability to

31

protect its own interests." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 174 (2d Cir. 2005). Whatever BRUSH is, it has demonstrated no relationship—let alone a close one—to the tens of thousands of persons alleged to live in defendants' buildings. Furthermore, the individual plaintiffs are clearly not hindered in their ability to protect their interests, as they have sued for their injuries directly.

Furthermore, BRUSH lacks the capacity to bring this action because, as alleged in the SAC, BRUSH "is a non-profit association formed under the laws of the State of New York." (SAC ¶ 22; *see also* Plaintiffs' Rule 7.1 Statement, (Karlan Decl. Ex. C).) Nowhere in the pleadings does BRUSH allege that it is incorporated under New York law. Unincorporated associations do not have the capacity to bring suit except through their presidents or treasurers. *Cmty. Board 7 of Manhattan v. Schaeffer,* 84 N.Y.2d 148, 154, 615 N.Y.S.2d 644, 646-47 (1994). Failure to do so—as in the instant action—"is fatal to that cause of action." *Concerned Citizens for Neighborhood Schs. v. Pastel,* 2007 WL 1220542, at *4 (N.D.N.Y. Apr. 24, 2007) ("[A]n unincorporated association has no life separate and apart from its members.").

### III.    PLAINTIFFS' STATE LAW CLAIM SHOULD BE DISMISSED

If this Court determines that plaintiffs have failed to plead a RICO claim, it should decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claim. *See Satinwood,* 385 F.3d at 182-83; *Goldfine v. Sichenzia,* 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000). Even if this court decides to exercise supplemental jurisdiction over plaintiffs' state law claim, however, the claim should still fail.

### A.    Plaintiffs Fail To Plead "Consumer-Oriented" Conduct

A plaintiff cannot state a cause of action under the New York Consumer Protection Act (the "NYCPA"), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. Law § 349(a), unless it can demonstrate that the alleged

deceptive practice is "consumer-oriented," *In Re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006).

To plead "consumer oriented" conduct, "[p]laintiffs must allege facts sufficient to show that the challenged conduct has a 'broader impact on consumers at large,' *i.e.* it 'potentially affects similarly situated consumers' in New York." *Id.* (quoting *S.Q.K.F.C.,* 84 F.3d at 636). The NYCPA protects "consumer[s] who fall[] victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 620 (1999). It typically applies to consumable items such as "automobile[s], [] television set[s], or a myriad of consumer goods found in supermarkets." *Evergreen*, 423 F. Supp. 2d at 264 (quoting *Morris v. Gilbert,* 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986)).

The NYPCA does not apply to items falling outside this traditional ambit. *See, e.g., Evergreen*, 423 F. Supp. 2d at 264 (declining to apply Section 349 to securities-related claim because "people do not generally buy securities in the same way that they buy . . . consumer goods" since "securities are purchased as investments, not as goods to be 'consumed' or 'used'") (quoting *Morris,* 649 F. Supp. at 1497). In particular, Section 349 does not apply to "[p]rivate contract disputes, unique to the parties." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995); *see also N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321, 639 N.Y.S.2d 283, 290-91 (1995) (dismissing Section 349 claim which the court held to be "essentially a 'private' contract dispute . . . not conduct which affects the consuming public at large"); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 439 (S.D.N.Y. 2004) ("[D]isputes between policy holders and insurance companies concerning scope of coverage . . . are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349."); *but see*

33

*Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 2007 WL 1220542, at *7 (E.D.N.Y. Nov. 16, 1995) (applying Section 349 in landlord-tenant action).

The alleged wrongdoing in this case arises from a set of nine unrelated contractual disputes. The SAC fails to state a Section 349 claim because these isolated instances have no "broader impact" on consumers generally. And even if such broader impact could be shown, plaintiffs' claims would still fail, as the subject matter—private contract—falls clearly outside Section 349's proper application to consumer goods.

Plaintiffs' vague and conclusory allegations of "deceptive consumer-oriented acts and practices" (SAC ¶ 166) do not salvage their claim. Where "there are no specific allegations of impact on consumers at large," a Section 349 claim must be dismissed. *Nw. Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 65 (S.D.N.Y. 1996). Conclusory allegations that a defendant's conduct "is part of a pattern of conduct that is aimed at the public generally" or that the conduct "has and will continue to have a broad negative impact on consumers-at-large" are insufficient to state a claim. *USAlliance Fed. Credit Union v. CUMIS Ins. Soc'y*, 346 F. Supp. 468, 472 (S.D.N.Y. 2004); *see also MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) (unsupported allegation that defendant's conduct was part of "a national policy to terminate unprofitable disability insurance policies" was insufficient); *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 99 (E.D.N.Y. 1997) ("The conclusory assertion . . . that these acts have injured the public at large is insufficient to demonstrate that this dispute is anything other than one between the parties."). Plaintiffs' Section 349 claim must be dismissed.

## B.    Plaintiffs' Claims Are Time-Barred

Many of plaintiffs' allegations involve acts alleged to have occurred in 2004 or earlier, (*see, e.g.,* SAC ¶¶ 94, 105, 128-130, 139), and as such are barred by the three-year statute of

limitations applicable to Section 349 actions. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 96

N.Y.2d 201, 208, 210, 727 N.Y.S.2d 30, 33, 35 (2001).

## CONCLUSION

Defendants ask this Court to dismiss the SAC and each cause of action with prejudice.

Dated:    New York, New York
          November 15, 2007

GIBSON, DUNN & CRUTCHER LLP

By:    s/ Mitchell A. Karlan
       Mitchell A. Karlan (MK-4413)
       200 Park Avenue, 47th Floor
       New York, New York  10166-0193
       Telephone:  (212) 351-4000
       Facsimile:  (212) 351-4035
       *Attorneys for Defendants*

Of Counsel:

Ladan F. Stewart
Deepa Janakiraman
Kathleen Kaufmann Shih

100298905

35