UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
:
BUYERS AND RENTERS UNITED TO SAVE HARLEM; :
and :
:
MARJORIE and THEODORE CHARRON; ANTHONY :
CASANOVAS; KAREN FLANNAGAN; ANDRES :
MARES-MURO; TRACEY MOORE; RAYMOND- :
ANDREW STAHL-DAVID; RUSSELL TAYLOR; DIANE :  No. 1:07-cv-06316-CM
TRUMMER, and KIM POWELL, on behalf of themselves :
and all others similarly situated, :
:
                      Plaintiffs, :
:
v. :
:
PINNACLE GROUP NY LLC and JOEL WIENER :
:
                      Defendants. :
---------------------------------------- x

### REPLY OF RENT STABILIZATION ASSOCIATION OF NEW YORK CITY TO PLAINTIFFS' OPPOSITION TO ITS MOTION TO APPEAR AS *AMICUS CURIAE*

Vivian Shevitz, Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
Telephone: (914) 763-2122
Facsimile: (914) 763-2322
vivian@shevitzlaw.com

*Attorney for Amicus Curiae*
*Rent Stabilization Association of New York City*

December 7, 2007

# TABLE OF CONTENTS

Page

I.    The RSA Qualifies for Participation as an *Amicus* ............................................................. 1

II.   The RSA's Citation to Public Domain Statistics and to Articles Referenced by Plaintiffs Is Proper ....................................................................................... 2

III.  The Case Law Cited by Plaintiffs Is Inapposite ................................................................. 5

IV.  Conclusion .......................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amaker v. Weiner*,
179 F.3d 48 (2d Cir. 1999)..........................................................................................5

*Andresen v. Leavitt*,
03-cv-6115, 2007 WL 2343672 (E.D.N.Y. Aug. 13, 2007) ........................................1

*Carcasole-Lacal v. Am. Airlines, Inc.*,
02-cv-4359, 2003 WL 21525484 (S.D.N.Y. July 8, 2003)..........................................4

*Carter v. Safety-Kleen Corp.*,
06-cv-12949, 2007 WL 1180581 (S.D.N.Y. Mar. 14, 2007)................................3, 5, 6

*Citizens Against Casino Gambling in Erie County v. Kempthorne*,
471 F. Supp. 2d 295 (W.D.N.Y. 2007)........................................................................1

*City Bank Farmers' Trust Co. v. United States*,
5 F. Supp. 872 (S.D.N.Y. 1934)..................................................................................4

*Fadem v. Ford Motor Co.*,
352 F. Supp. 2d 501 (S.D.N.Y. 2006)......................................................................3, 5

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
848 F.2d 24 (2d Cir. 1988)..........................................................................................5

*Freidl v. City of N.Y.*,
210 F.3d 79 (2d Cir. 2000)..........................................................................................5

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)....................................................................................3, 4

*Global Network Commc'ns, Inc. v. City of N.Y.*,
458 F.3d 150 (2d Cir. 2006)........................................................................................5

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 402 (S.D.N.Y. 2005).........................................................................3

*Mangiafico v. Blumenthal*,
471 F.3d 391 (2d Cir. 2006)........................................................................................4

*Stein v. JP Morgan Chase Bank*,
279 F. Supp. 2d 286 (S.D.N.Y. 2003).........................................................................4

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Weininger v. Castro*,
　418 F. Supp. 2d 553 (S.D.N.Y. 2006) ............................................................................. 1

### Other Authorities

61A Am. Jur. 2d § 584 (1999) ........................................................................................ 2, 3

61A Am. Jur. 2d § 585 (1999) ........................................................................................... 7

The Rent Stabilization Association of New York City ("RSA") submits this brief in further support of its motion to appear as *amicus curiae* in the above-captioned matter, and in reply to Plaintiffs' Opposition to Motion of Rent Stabilization Association of New York City for Leave to Appear as Amicus Curiae and to File Proposed Memorandum of Law, dated November 30, 2007.

I.   **The RSA Qualifies for Participation as an *Amicus***

Plaintiffs argue that this Court should disregard the RSA's *amicus* brief because "Defendants have representation in this case," and because "Gibson Dunn & Crutcher [is] competent to represent them in this matter." Pl.'s Br. at 3. This argument is legally incorrect. The very case they cite establishes that an *amicus* brief "should normally be allowed" 1) "when the amicus has an interest in some other case that may be affected by the decision in the present case;" or 2) "when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007). Plaintiffs ignore the salutary principle that "court[s] may grant leave to appear as an *amicus* if the information offered is timely and useful," *Andresen v. Leavitt*, 2007 WL 2343672, at *2 (E.D.N.Y. Aug. 13, 2007), or where the underlying law and policy issues are "exceptionally complex," *Weininger v. Castro*, 418 F. Supp. 2d 553, 554-55 (S.D.N.Y. 2006).

The RSA's *amicus* petition is premised on precisely these policy considerations, which Plaintiffs ignore. The RSA represents over 25,000 rental housing owners throughout New York City, all of whom experience conflicts with tenants similar to those at issue in this case. Were Plaintiffs permitted to set precedent through this case by corrupting the RICO statute in the

manner they propose, each of these constituents would be vulnerable to the upheaval of settled state law and the possibility of federal receivership.

The RSA has an active interest, quite separate from and much broader than the Defendants' interests in this case, in ensuring that this does not happen. To this end, the RSA has provided statistics from the public domain to put Defendants' alleged actions in context. It has *not* done this, as Plaintiffs suggest, to provide a "personalized panegyric" to the Defendants. Pl.'s Br. at 2. Rather, the RSA has submitted an *amicus* brief to demonstrate that sustaining Plaintiffs' complaint would lead to the inundation of federal courts with landlord-tenant RICO suits and requests to place buildings under federal receivership. This perspective differs significantly from that presented by Defendants in their Motion to Dismiss Plaintiffs' Complaint.

The RSA has not, as Plaintiffs suggest, provided a "rehash" of "undisputed matters" of landlord-tenant law. Pl.'s Br. at 3. Instead, it has included descriptions of numerous state statutory and regulatory provisions that Plaintiffs conspicuously omit from their Complaint. It has done so to demonstrate that there is already a remedy in place: The state system is capable of providing all of the relief—including treble damages and receivership—that Plaintiffs request from this Court (but tellingly, have failed to request through existing channels).

## II. The RSA's Citation to Public Domain Statistics and to Articles Referenced by Plaintiffs Is Proper

There is no merit to Plaintiffs' claim that the RSA improperly raises "matters outside the pleadings." Pl.'s Br. at 4-5. In considering a 12(b)(6) motion, "the court may consider matters which are properly the subject of strict judicial notice, such as state statutes or regulations, matters of public record, and matters of common knowledge." 61A Am. Jur. 2d § 584 (1999). The court may also consider the full text of documents "referred to in the plaintiff's complaint

- 2 -

[that] are central to the claim." *Id.; see also Carter v. Safety-Kleen Corp.,* 2007 WL 1180581, at * 3 (S.D.N.Y. Mar. 14, 2007) (McMahon, J.).

Plaintiffs complain that the RSA's brief offers "computations of housing violations per unit in specific buildings" and "'current numbers' on code violations." Pl.'s Br. at 2. This objection is baseless. These data were drawn from precisely the same publicly-available HPD database upon which Plaintiffs' Complaint relies. *See* Compl. ¶¶ 55-56 . Indeed, the Complaint discusses the very same body of data that the RSA cites. *See id.* ¶ 56 ("An examination of the HPD website for the buildings in which the individual Plaintiffs reside shows scores of long uncorrected violations."). Plaintiffs therefore can have no objection to the RSA discussing these data. "In deciding a motion to dismiss, [a] court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Safety-Kleen,* 2007 WL 1180581, at * 3; *see also Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 505 (S.D.N.Y. 2006) ("[T]he full text of any document quoted or referred to in a complaint, including news articles, may be considered by the Court on a motion to dismiss.")

Moreover, the HPD statistical information at issue is unquestionably a matter of public record. The statistics in the HPD database are raw data, representing reports by tenants of violations. As Plaintiffs point out in their Complaint, the relevant search feature is available on the HPD website, *at* http://www.nyc.gov/html/hpd/html/pr/violation.shtml (2007), Compl. ¶ 55, and can be accessed by anyone with a computer. These data may therefore be considered on a 12(b)(6) motion. *See Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 167 (2d Cir. 2000) (affirming district court's dismissal of case pursuant to judicial notice of "well-publicized stock prices," particularly because such data were "integral" to plaintiffs' theory of the case); *see also In re*

*Alstom SA Sec. Litig.,* 406 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) (same); *Stein v. JP Morgan Chase Bank,* 279 F. Supp. 2d 286, 290 (S.D.N.Y. 2003) (taking judicial notice of prime interest rates published in *Wall Street Journal* on particular date); *City Bank Farmers' Trust Co. v. United States,* 5 F. Supp. 872, 873 (S.D.N.Y. 1934) (taking judicial notice of birth statistics published by Department of Commerce). For the same reasons, the RSA's citation to a scholarly article quoting city-wide rates of HPD violations, Pl.'s Br. at 2, was appropriate. More to the point, this public data *ought* to be considered to put this federal complaint in proper perspective.

The same goes for "data on lawsuits by landlords," also objected to by Plaintiffs. *Id.* Again, this data was drawn from the public record. Data regarding the number of suits filed in Housing Court are noted in, and were drawn from, the Housing Court's own 2006 Docket Report. RSA Proposed Memorandum of Law ("RSA Memo.") at 13. There is no question that this type of public record may be introduced on a 12(b)(6) motion. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006) (upholding dismissal, finding no error in district court's reliance on docket sheet because "docket sheets are public records of which the court could take judicial notice"); *Safety-Kleen,* 2007 WL 1180581, at *3 ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."). Similarly, data regarding the number of suits filed by the NYCHA were drawn from a newspaper article citing directly to Housing Court statistics. RSA Memo. at 13. This data, too, is part of the public record and may properly be considered as part of a 12(b)(6) motion. *See Ganino,* 228 F.3d at 167; *Stein,* 279 F. Supp. 2d at 290; *Carcasole-Lacal v. Am. Airlines, Inc.,* 2003 WL 21525484, at *1, n. 1 (S.D.N.Y. July 8, 2003) ("Judicial notice can be taken of facts from newspaper articles that are widely reported in the media.").

Similarly without merit are Plaintiffs' objections to data regarding the number of suits against Defendants, as these data were drawn from a newspaper article *referenced by the Plaintiffs* in their Complaint. *See* Compl. ¶ 54. A "court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit" when deciding a motion to dismiss. *Safety-Kleen,* 2007 WL 1180581, at * 3; *see also Fadem,* 352 F. Supp. 2d at 505. The RSA's use of these data was therefore entirely proper.

### III. The Case Law Cited by Plaintiffs Is Inapposite

The cases cited by Plaintiffs are not to the contrary. In *Freidl v. City of N.Y.,* 210 F.3d 79, 83-84 (2d Cir. 2000), the court vacated dismissal where the district court had made a relatively complex finding of fact based upon an unsupported factual declaration by the defendant. In *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988), it was the *plaintiff* who introduced improper factual allegations in response to a motion to dismiss. The new factual allegations included vague, unquantifiable statements such as "[w]hite children in similar circumstances were not removed from the lobby [of the condominium]." *Id.* In *Global Network Communications, Inc. v. City of N.Y.,* 458 F.3d 150, 156-57 (2d Cir. 2006), none of the materials considered by the district court had involved facts or statistics in the public domain. And in *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir. 1999), the court actually *upheld* the district court's reliance on a factual affidavit in dismissing the complaint, adding that "[a]ttachment of an affidavit or exhibit to a Rule 12(b)(6) motion . . . does not without more establish that conversion is required." *Id.*

In contrast to all of these cases, the RSA has made no factual declarations that are not part of the public record. What the RSA offers, instead, is a glimpse of the public record—

factual information organized to put this federal complaint in proper perspective. The RSA makes its submission not to contradict Plaintiffs' specific numeric assertions, but rather to place Plaintiffs' allegations in context. Indeed, the RSA's proposed Memorandum of Law presents its analysis within a framework that assumes those allegations to be true. RSA Memo. at 1.

Although the RSA *does* challenge Plaintiffs' misinterpretation of a newspaper article, RSA Memo. at 12, this challenge is entirely appropriate. Plaintiffs referred to and specifically relied on this article in their Complaint, Compl. ¶ 54, but their interpretation of that article is clearly erroneous. Consequently, the Court should consider the RSA's submission. *See Safety-Kleen Corp.*, 2007 WL 1180581, at * 3; 61A Am. Jur. 2d § 585 ("Nor will the court accept as true facts which are legally impossible, facts which the court can take judicial notice of as being other than as alleged by the plaintiff, or facts which by the record or by a document attached to the complaint appear to be unfounded").

## IV. Conclusion

For all the reasons set forth above, the Rent Stabilization Association respectfully requests that this Court reject Plaintiffs' Opposition and permit it to appear as *amicus curiae* in the above-captioned action.

Dated:    New York, New York
          December 7, 2007

                                          VIVIAN SHEVITZ

                                          By:   /s Vivian Shevitz
                                          Vivian Shevitz (VS 6943)
                                          Attorney at Law

                                          46 Truesdale Lake Drive
                                          South Salem, New York 10590
                                          (914) 763-2122
                                          Fax:  (914) 763-2322
                                          vivian@shevitzlaw.com
                                          *Attorney for Amicus Curiae Rent*
                                          *Stabilization Association of New York City*

Of Counsel:

    Mitchell Posilkin
    THE RENT STABILIZATION
    ASSOCIATION OF NEW YORK
    CITY