UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
BUYERS AND RENTERS UNITED TO SAVE HARLEM,               :
et al.,                                                 :
                                                        :      07 Civ. 6316 (CM)
                                    Plaintiffs,         :
                                                        :
            v.                                          :
                                                        :
PINNACLE GROUP NY LLC, et al.,                          :
                                                        :
                                    Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Defendants*


December 27, 2007

**TABLE OF CONTENTS**

**Page**

I.  Defendants' Inclusion of Extrinsic Evidence Is Appropriate.................................1

    A.  Extrinsic Evidence Is Appropriate on a 12(b)(1) Motion ..........................1

    B.  Extrinsic Evidence Is Appropriate on a 12(b)(6) Motion .........................3

II.  Plaintiffs Fail To Plead RICO Predicate Acts .........................................................3

    A.  Plaintiffs Fail To Plead Mail Fraud ..........................................................3

    B.  Plaintiffs Fail To Plead Extortion..............................................................7

    C.  Plaintiffs Fail To Plead Violations of the NSPA.......................................7

III.  Plaintiffs Fail To Plead a Pattern of Racketeering Activity ....................................8

IV.  Plaintiffs Fail To Plead an Enterprise .....................................................................8

V.  Plaintiffs Fail To Allege RICO Injury....................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363 (S.D.N.Y. 1984) ..............................8

*Am. Arbitration Ass'n, Inc. v. DeFonseca*, No. 93 CIV 2424 (CSH),
    1996 WL 363128 (S.D.N.Y. June 28, 1996) ..................................................4

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999) ..................................................3

*Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505 (S.D.N.Y. 1990)........................5

*B.V. Optische de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162 (S.D.N.Y. 1995)...........6

*Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) ..................................6

*Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003)............................1

*Browning Ave. Realty Corp. v. Rosenshein*, 774 F. Supp. 129 (S.D.N.Y. 1991)................5

*Byrd v. City of N.Y.*, No. 04-1396-CV, 2005 WL 1349876 (2d Cir. June 8, 2005) ............3

*Carmellino v. District 20 of N.Y. City Dep't of Educ.*, No. 03 Civ. 5942 (PKC)
    2004 WL 736988 (S.D.N.Y. Apr. 6, 2004)..............................................1, 2

*China Trust Bank of N.Y. v. Standard Chartered Bank, PLC*,
    981 F. Supp. 282 (S.D.N.Y. 1997)..............................................9

*Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193 (S.D.N.Y. 2006) ..............10

*Curatola v. Ruvolo*, 949 F. Supp. 223 (S.D.N.Y. 1997) ..................................6

*Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986) ..................................1, 2

*DeFiore v. DiLorenzo*, No. 91 CV 4209, 1997 WL 722697 (E.D.N.Y. Sept. 19, 1997)...................6

*Dickerson v. Feldman*, 426 F. Supp. 2d 130 (S.D.N.Y. 2006) ..................................8

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996) ..................................9

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ...........9

*Fisher v. Offerman & Co., Inc.*, No. 95 Civ. 2566 (JGK),
    1996 WL 563141 (S.D.N.Y. Oct. 2, 1996) ..................................................5

*Giakoumelos v. Coughlin*, 88 F.3d 56 (2d Cir. 1996) ..................................2

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 CIV. 8779 (RPP),
 1998 WL 321446 (S.D.N.Y. June 18, 1998)....................................................................7

*In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007) ........................................9

*Kirkland v. City of Peekskill*, 828 F.2d 104 (2d Cir. 1987).................................................2

*Lazaro v. Good Samaritan Hosp.,* 54 F. Supp. 2d 180 (S.D.N.Y. 1999)................................3

*Lazzarino v. Kenton Assocs., Ltd.*, No. 96 CIV. 7842 (RO), 1997 WL 214938
 (S.D.N.Y. Apr. 29, 1997) ................................................................................................7

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003)..................................................10

*Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1995).................................................................10

*Makarova v. United States,* 201 F.3d 110 (2d Cir. 2000) ...................................................1

*Mathon v. Feldstein*, 303 F. Supp. 2d 317 (E.D.N.Y. 2004)...............................................7

*Munno v. Town of Orangetown*, 391 F. Supp. 2d 263 (S.D.N.Y. 2005)................................3

*NRB Indus., Inc. v. R.A. Taylor & Assocs., Inc.*, No. 97 Civ. 181 (JSR),
 1998 WL 3638 (S.D.N.Y. Jan. 7, 1998)............................................................................9

*Old Republic Nat'l  Title Ins. Co. v. Bank of E. Asia Ltd.*, 291 F. Supp. 2d 60 ..............2, 3

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 229 F.R.D. 456 (S.D.N.Y. 2005) ...................5

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994)..............9

*Sartini v. Portofino Sun Ctr. Columbus Ave. Corp.*, No. 96 Civ. 4550 (JFK), 1997
 WL 400209 (S.D.N.Y.  July 15, 1997) .............................................................................9

*Schottenstein v. Schottenstein,* No. 04 Civ. 5851 (SAS), 2004 WL 2534155
 (S.D.N.Y. Nov. 8, 2004)...................................................................................................1

*Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273 (S.D.N.Y. 2002) ..............3

*U.S. Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432 (S.D.N.Y. 2004) ....................4, 5

*USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319 (S.D.N.Y. 2003) ..................6

*Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449 (2d Cir. 1998) ......................2

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

**Statutes**

N.Y. Real Prop. Acts Law § 770 (McKinney Supp. 2007)................................................................2

N.Y.C. Admin. Code § 26-511 (2007)...........................................................................................2

**Other Authorities**

4 Eugene J. Morris et al., *New York Practice Guide:  Real Estate* § 26.02[1][a] (2007) ....................2

**Rules**

9 N.Y.C.R.R. § 2522.6 (2007) .......................................................................................................2

9 N.Y.C.R.R. § 2526.1 (2007) .......................................................................................................2

9 N.Y.C.R.R. § 2526.1(a) (2007) ..................................................................................................1

I.    **Defendants' Inclusion of Extrinsic Evidence Is Appropriate**

A.    **Extrinsic Evidence Is Appropriate on a 12(b)(1) Motion**

On a Rule 12(b)(1) motion, "in resolving the question of jurisdiction, the [] court can refer to evidence outside the pleadings . . . .  The consideration of materials extrinsic to the pleadings does not convert the motion into one for summary judgment." *Schottenstein v. Schottenstein,* 2004 WL 2534155, at * 3 (S.D.N.Y. Nov. 8, 2004); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

The extrinsic evidence offered by defendants consists overwhelmingly of court documents that reflect verdicts rendered or settlements reached on precisely the same issues raised in the present action.  These documents demonstrate that the present action is barred by *res judicata*.  Because *res judicata* divests a district court of subject matter jurisdiction, it is entirely appropriate that defendants have offered extrinsic evidence on this issue.  *See Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27, 29 (2d Cir. 2003) (upholding dismissal pursuant to 12(b)(1) where claims were barred by *res judicata*); *Carmellino v. District 20 of N.Y. City Dep't of Educ.,* 2004 WL 736988, at * 2 (S.D.N.Y. Apr. 6, 2004) ("[C]ourts may take judicial notice of court documents for the purpose of evaluating the *res judicata* effect of previous legal actions without converting the motion into one for summary judgment.").

Plaintiffs incorrectly argue that *res judicata* should not apply in this matter, citing *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir. 1986), because the DHCR and the Housing Court, which rendered some of the prior verdicts, have limited jurisdiction.  (Pl.'s Opp. at 31.)  But, unlike the court in *Davidson,* the DHCR and the Housing Court are capable of providing all of the substantive relief plaintiffs request in the instant action.  Tenants may seek treble damages in actions before the DHCR and in Housing Court.  9 N.Y.C.R.R. § 2526.1(a) (2007) .  Tenants may seek reductions in rent, as well as attorney's fees, through DHCR and Housing Court actions.  4 Eugene J. Morris et

al., *New York Practice Guide:  Real Estate* § 26.04[1][a] (2007); 9 N.Y.C.R.R. §§ 2526.1, 2522.6.

Tenants may seek building monitorship through proceedings in Housing Court.  N.Y. Real Prop.

Acts Law § 770 (McKinney Supp. 2007).  And tenants may obtain punitive and incidental damages

through harassment proceedings before the DHCR.  N.Y.C. Admin. Code § 26-511 (2007).

　　　Where the state court in a prior action was capable of providing all of the substantive relief

sought in a subsequent federal action on the same issue, the federal action is barred by *res judicata*.

*See Kirkland v. City of Peekskill,* 828 F.2d 104, 109 (2d Cir. 1987) (holding *Davidson* line of cases

inapposite where plaintiff had previously raised same issue in state court proceeding that had

"power to award both [the] back pay and compensatory damages" that were sought in subsequent

federal action).  That the DHCR and Housing Court cannot specifically hear RICO actions is of no

moment.  *See Carmellino,* 2004 WL 736988, at *10  (dismissing federal action because "res

judicata[] teach[es] that a second action cannot stand solely because it is based on a different legal

theory," where prior state court action was capable of granting all types of damages sought by

plaintiffs in subsequent federal action).

　　　Even if *Davidson* were applicable, it is clear that the details of the prior court proceedings

merit inclusion because the findings of fact made in those proceedings are preclusive.  *See*

*Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir. 1996) (concluding that plaintiff could seek

remedy unavailable in prior state court action, but that "the correct application of collateral estoppel

requires that the issues raised in the subsequent action be decided by reference to the previous state

court judgment").  Those who lost or settled prior actions are not permitted to raise the same issues

again.  Those who obtained a verdict are not permitted to sue for the amount of that verdict again

under the "general principle that precludes double recovery."  *Vermont Microsystems, Inc. v.*

*Autodesk, Inc.,* 138 F.3d 449, 452 (2d Cir. 1998); *see also Old Republic Nat'l  Title Ins. Co. v. Bank*

*of E. Asia Ltd.,* 291 F. Supp. 2d 60, 64-65 ("*[R]es judicata* principles protect against the possibility of double recovery.").

### B.    Extrinsic Evidence Is Appropriate on a 12(b)(6) Motion

As plaintiffs acknowledge, extrinsic evidence "that (1) the plaintiffs have seen and (2) [is] integral to the claims alleged in the complaint and on which the complaint heavily relies" may be included on a 12(b)(6) motion.  (Pl.'s Opp. at 11.)  Matters of public record, such as court verdicts and settlement documents, are also appropriate.  *Byrd v. City of N.Y.,* 2005 WL 1349876, at *1 (2d Cir. June 8, 2005); *Munno v. Town of Orangetown,* 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005); *Thomas v. Westchester County Health Care Corp.,* 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002).

All of the extrinsic evidence defendants have offered falls into at least one of these categories.  The vast majority of the documents attached as exhibits are court documents reflecting verdicts or settlements.  The remaining documents meet the test plaintiffs put forth:  Plaintiffs have seen them, and they are integral to the claims alleged in the SAC.

To the extent this Court finds any discrete items of extrinsic evidence improper, this Court may disregard them.  *See Amaker v. Weiner,* 179 F.3d 48, 50-51 (2d Cir. 1999).

## II.    Plaintiffs Fail To Plead RICO Predicate Acts

### A.    Plaintiffs Fail To Plead Mail Fraud

Plaintiffs have not adequately pled mail fraud.  Their puzzling new claim—that "the mailings themselves are not alleged to contain fraudulent misrepresentations" (Pl.'s Opp. at 14)[1]—

---

[1]  This argument runs directly counter to the SAC, which on numerous occasions refers to fraudulent misrepresentations in mailings.  (*See* SAC ¶ 178 (describing "numerous mailings misrepresenting tenants' rent obligations").)  Plaintiffs' failure to assert one coherent theory prejudices defendants' ability to craft their response, and further emphasizes the lack of merit of plaintiffs' claims.  It also runs afoul of this Court's ruling that no further amendments would be allowed.  *Lazaro v. Good Samaritan Hosp.,* 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) ("[I]t is axiomatic that the Complaint cannot be amended by a brief in opposition to a motion to dismiss.").

does not cure this deficiency.  For a mail fraud claim to stand, the fraudulent scheme allegedly underlying the mailings must be described with Rule 9(b) particularity.  *Am. Arbitration Ass'n, Inc. v. DeFonseca,* 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996) (time, place, and manner of the alleged scheme must be pled).  Other than a listing of "mailings" alleged in the SAC—which plaintiffs now concede were not fraudulent—plaintiffs have done nothing to establish a fraudulent mailing scheme with any particularity, much less the particularity demanded by 9(b).  Put simply, because plaintiffs' purported scheme is predicated solely on a few alleged mailings, plaintiffs' recent revelation that the mailings were not fraudulent is fatal to their mail fraud claim.[2]

Plaintiffs' pleadings with respect to defendants' alleged role in the scheme are particularly sparse, especially in light of plaintiffs' affirmative disavowal of *respondeat superior* liability (Pl.'s Opp. at 13).  The sole allegations in the SAC that do not improperly clump the defendants together state that Mr. Wiener signed an allegedly inflated rent calculation for a non-plaintiff (SAC ¶ 86), and that Mr. Wiener directed the provision of false information to the Attorney General's auditor (*id.* ¶ 148).  Neither of these allegations refers to actions taken against plaintiffs, or indicates that plaintiffs were in any way injured by these alleged misrepresentations.  And neither these, nor any other allegations against defendants, are pled with the requisite time/place/manner specificity.  *See U.S. Fire Ins. Co. v. United Limousine Serv.,* 303 F. Supp. 2d 432, 446 (S.D.N.Y. 2004) (rejecting as conclusory statement that defendants "produced forged documents in order to deceive and mislead [plaintiff] into affording coverage").

---

[2]  Plaintiffs suggest that their mail fraud allegations "need not be pleaded with particularity" because the details of the alleged mailings "are presently in the sole knowledge of Defendants." (Pl.'s Opp. at 14.)  Details regarding correspondence allegedly mailed to plaintiffs are surely within plaintiffs' knowledge, and their failure to specify the same in the SAC is fatal.

Similarly deficient are plaintiffs' scienter claims. "[A]llegations of scienter must be supported by facts giving rise to a *strong inference* that the defendant *knew* the statements to be false and *intended* to defraud the plaintiff at the time they were made." *Id.* at 444-45 (emphasis added). No such strong inference has been demonstrated here. Plaintiffs' motive and opportunity claims fail because they allege only that defendants stood to benefit financially from increased rents and vacancies, and were in a position to bring them about. Such claims are insufficient. Motive and opportunity are not established where, as here, the motive identified would hold equally true for all members of a given industry.[3] Plaintiffs' conscious misbehavior claims likewise fail because, even drawing all reasonable inferences in favor of plaintiffs, it remains the case that plaintiffs have not pled anything more than "[r]outine business communications that show only a dispute between the parties." *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 513 (S.D.N.Y. 1990) (such communications "do not lead to a reasonable inference of fraudulent intent," even at pleading stage).[4]

---

[3]  *See OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 229 F.R.D. 456, 459 (S.D.N.Y. 2005) (economic benefit is a "generalized motive [that] could be imputed to any bank and therefore is insufficient to plead scienter"); *Fisher v. Offerman & Co., Inc.,* 1996 WL 563141, at * 7 (S.D.N.Y. Oct. 2, 1996) ("[A]n underwriter's alleged motive to earn its underwriting fees is not alone sufficient to sustain a strong inference of fraudulent intent. If it were, every underwriter, law firm, accountant, and investment advisor whose compensation or commission depended on the completion of an initial public offering would have a motive to commit fraud, which would make Rule 9(b) wholly meaningless.").

[4]  Plaintiffs suggest that defendants' provision of allegedly false information to the Attorney General is evidence of defendants' conscious misbehavior and "leaves no room for giving [defendants] the benefit of the doubt." (Pl.'s Opp. at 16.) This Court should not give plaintiffs' argument a second thought. To the extent that plaintiffs allege that Mr. Wiener or Pinnacle "knew" that the information provided to the Attorney General was inaccurate, the Court should reject such conclusory pleading of fraudulent intent. *See Browning Ave. Realty Corp. v. Rosenshein*, 774 F. Supp. 129, 143 (S.D.N.Y. 1991) (dismissing RICO claim premised on mail and wire fraud, holding "allegations that [defendant] 'knew or should have known' and 'could not have been unaware' are insufficient to show [defendant's] specific intent to defraud plaintiffs"). Furthermore, these

[Footnote continued on next page]

Lastly, the law in this Circuit is clear that "in order to prevail in a civil RICO action predicated on any type of fraud . . . the plaintiff must establish 'reasonable reliance' on the defendants' purported misrepresentations or omissions." *Bank of China v. NBM LLC,* 359 F.3d 171, 178 (2d Cir. 2004).[5]   Plaintiffs must have relied on the racketeering activity which is alleged to have caused injury to the them, not—as plaintiffs now argue for the first time—on some prior act of fraud. *See USA Certified Merchs., LLC v. Koebel,* 262 F. Supp. 2d 319, 334 (S.D.N.Y. 2003) ("[I]n order to prove a fraudulent scheme of any type, for both common law fraud or RICO fraud schemes, it is necessary to show a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.") (internal quotations and citation omitted).  Nor do plaintiffs cite any authority for their argument that reliance can occur prior to the alleged racketeering activity.  Though they now claim otherwise in opposition to defendants' motion, nowhere in the SAC have plaintiffs pleaded reliance—whether on any alleged racketeering activity or on any alleged prior acts of fraud.[6]  Furthermore, this new claim—that

---

[Footnote continued from previous page]

allegations have nothing whatsoever to do with the alleged racketeering activity, and are not alleged to have been directed toward, or to have resulted in any harm to, plaintiffs.

[5] *See also DeFiore v. DiLorenzo,* 1997 WL 722697, at *6 (E.D.N.Y. Sept. 19, 1997); *Curatola v. Ruvolo,* 949 F. Supp. 223, 225 (S.D.N.Y. 1997); *B.V. Optische de Oude Delft v. Hologic, Inc.,* 909 F. Supp. 162, 170 (S.D.N.Y. 1995).

[6]  Plaintiffs cite to two allegations in the SAC that they claim constitute pleadings of reliance.  First, they claim that "Ms. Moore received letters demanding inflated rent amounts, and she paid those amounts, not realizing they were fraudulent.  (Compl. ¶ 110)."  (Pl's Opp. at 18.)  However, the SAC goes on to allege that defendants "extorted" Ms. Moore by threatening to evict her in order to obtain inflated rent amounts, a claim which presupposes that Ms. Moore was aware of the allegedly inflated rental amounts, and therefore was not "duped."  Plaintiffs cannot have it both ways.  Likewise, plaintiffs claim that "Mr. Stahl-David paid inflated rent amounts in response to invoices requesting such payments, and only later did he learn of the fraud.  (Compl. ¶ 116)."  (Pl's Opp. at 18.)  The SAC says no such thing:  Plaintiffs' pleadings make clear that defendants did not own the building when Mr. Stahl-David signed his lease (SAC ¶ 116), and that he filed a rent overcharge claim prior to his receipt of any mailings from defendants (*id.* ¶ 119); in fact, plaintiffs allege that

[Footnote continued on next page]

reliance occurred on some prior act of fraud, before any of the alleged acts of racketeering activity even took place—should be rejected because it constitutes an effective amendment of plaintiffs' pleadings.

### B.    Plaintiffs Fail To Plead Extortion

Pleadings of extortion must at a minimum include "the date the alleged 'extortion' occurred, the nature of the alleged threats and coercion, an effect on interstate commerce, and the purpose of the defendants' alleged actions." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 324 (E.D.N.Y. 2004). Plaintiffs have not provided these details, as they must, to prevail on an extortion claim. "[E]ven [under Rule 8(a)], there must be some good faith specificity of conduct, time and actor." *Lazzarino v. Kenton Assocs., Ltd.,* 1997 WL 214938, at *3, n.4 (S.D.N.Y. Apr. 29, 1997).

Plaintiffs attempt to salvage their extortion claims by distinguishing *Goldberg v. Merrill Lynch*, *Pierce, Fenner & Smith, Inc.,* 1998 WL 321446, at *4 (S.D.N.Y. June 18, 1998), and suggest that here, unlike in *Goldberg*, defendants had "no legal right" to the property in question. (Pl's Opp. at 19.) This is nonsense. Defendants own the units in question, and have a legal right to collect rent from the inhabitants of those units. As in *Goldberg*, the dispute here centers around the full extent of defendants' legal property rights. Such disputes do not constitute extortion.

### C.    Plaintiffs Fail To Plead Violations of the NSPA

Plaintiffs' argument that Rule 9(b) does not apply to the elements of the NSPA fails because plaintiffs rely on two cases from the Northern District of Illinois, while ignoring two directly contradictory cases from the Southern District of New York cited in defendants' opening brief.

---

[Footnote continued from previous page]
Mr. Stahl-David was "extorted" into paying inflated rent amounts (*id.* ¶ 182(b)). Again, plaintiffs cannot have it both ways.

### III.    Plaintiffs Fail To Plead a Pattern of Racketeering Activity

Plaintiffs now claim to have alleged both open-ended and closed-ended continuity (Pl.'s Opp. at 20), but the language of the SAC indicates open-ended continuity only.  (*See* SAC ¶¶ 184-185 ("Defendants' fraudulent scheme and pattern of racketeering activity is ongoing, and . . . Plaintiffs have suffered and will continue to suffer damages.").)  Plaintiffs attempt to bolster their deficient open-ended continuity pleading by suggesting that other non-plaintiffs "have been affected by Defendants' acts." (Pl.'s Opp. at 21.)   This is wholly improper.  "[A] predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right.  What he may not achieve himself, he may not accomplish as a representative of a class." *Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 375 (S.D.N.Y. 1984) (internal quotations and citation omitted).  No class has yet been certified; indeed, no motion for certification has even been made.  The instant motion tests the pleadings of the eleven named plaintiffs *only*.  If these pleadings are dismissed, the claims of the unnamed class members must be dismissed without consideration on the merits.  *See Dickerson v. Feldman,* 426 F. Supp. 2d 130, 137 (S.D.N.Y. 2006).

### IV.    Plaintiffs Fail To Plead an Enterprise

Plaintiffs' new claim that SecureWatch 24 and the LLCs are not affiliates of defendants (Pl.'s Opp. at 22-23) is belied by the SAC, which plainly depicts these entities as affiliates or agents guided by a single corporate consciousness.[7]  Plaintiffs' suggestion that affiliates such as these are

---

[7]  *See* SAC ¶ 21 ("Pinnacle holds interests in *affiliated* LLCs . . . that own some 400 apartment buildings in New York City.  Pinnacle operates its business under the d/b/a umbrella name "The Pinnacle Group.") (emphasis added); *id.* ¶ 4 (Wiener has an "interest" in Secure Watch 24, which "shares the Pinnacle Group's office suite.  It operates digital video and audio surveillance devices in buildings owned by LLCs and other entities within the enterprise. . . .  Though some of SecureWatch 24's activities serve legitimate purposes, it is used by the Defendants to conduct improper surveillance and to intimidate tenants."); *id.* ¶ 71 (SecureWatch 24 is "a security company owned or controlled by Pinnacle or Wiener.").

not part of Pinnacle for purposes of enterprise pleading (Pl.'s Opp. at 22-23) is overwhelmingly contradicted by case law, all of which post-dates the cases cited by plaintiffs.[8]

Also wrong is plaintiffs' suggestion that Joel Wiener is not part of Pinnacle for purposes of enterprise pleading. Mr. Wiener is part of Pinnacle by virtue of the fact that he is a CEO operating within the scope of his employment at Pinnacle. (SAC ¶ 22.) *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994); *Parmalat*, 479 F. Supp. 2d at 346-47. But even if Mr. Wiener were not part of Pinnacle for enterprise purposes, this would not solve plaintiffs' identity problem, as there would still be complete overlap between defendants and the enterprise: Mr. Wiener and Pinnacle are the defendants, and are also the two entities allegedly associated as an enterprise. Where, as here, overlap is complete, an enterprise claim under § 1964(c) fails. *See Riverwoods,* 30 F.3d at 344.

Praedium cannot properly be considered part of the so-called Pinnacle Enterprise. Plaintiffs suggest that the Praedium entities are more than mere investors because they "benefit in the same way from the Enterprise's successes and they suffer in the same way from the Enterprise's failures." (Pl.'s Opp. at 24.) This is a nonsensical distinction. Every investor enjoys economic benefits and risks, and most investors maintain some ownership interest in the subject property (*e.g.*, a mortgage). Plaintiffs ignore the requirement that there be a "nexus" between each purported member of the enterprise and the alleged racketeering activity. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 174 (2d Cir. 2004). This is not a requirement that each alleged member have participated in the wrongdoing, but rather that each was a real part of the "operation,

---

[8] *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996); *In re Parmalat Sec. Litig.,* 479 F. Supp. 2d 332, 346-47 (S.D.N.Y. 2007); *NRB Indus., Inc. v. R.A. Taylor & Assocs., Inc.,* 1998 WL 3638, at *2 (S.D.N.Y. Jan. 7, 1998); *China Trust Bank of N.Y. v. Standard Chartered Bank, PLC,* 981 F. Supp. 282, 286 (S.D.N.Y. 1997); *Sartini v. Portofino Sun Ctr. Columbus Ave. Corp.,* 1997 WL 400209, at *3 (S.D.N.Y. July 15, 1997).

management, or internal affairs" of the enterprise that was allegedly corrupted by the defendants to conduct their racketeering activities. *Crab House of Douglaston, Inc. v. Newsday, Inc.,* 418 F. Supp. 2d 193, 205 (S.D.N.Y. 2006). Absent such "nexus," any entity that provided support to an enterprise (*e.g.*, advertisers, real estate brokers, accountants, etc.) could be considered part of the enterprise. The distinctness requirement cannot be obviated by obscuring this element.

## V.    Plaintiffs Fail To Allege RICO Injury

Plaintiffs concede that BRUSH does not seek standing on behalf of its constituents under the doctrine of associational standing, and argue instead that "BRUSH has standing to bring claims on its own behalf because it has been directly injured by Defendants' actions." (Pl.'s Opp. at 32.) The cases plaintiffs cite in support of their argument that BRUSH can claim injury from the alleged RICO violations do not address injury for purposes of RICO, but rather injury for purposes of constitutional standing. The two concepts are not coextensive; the former poses a much higher threshold. *See Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 126 (2d Cir. 2003) (holding that failure to plead RICO injury does not necessarily constitute failure to plead injury for constitutional standing purposes). Defendants' citation to *Libertad v. Welch,* 53 F.3d 428, 437 (1st Cir. 1995), is directly on point: RICO injury, which requires injury to "business or property," does not encompass activity that merely "conflicts with the group's mission and renders their objectives more difficult to achieve." *Id.* Given plaintiffs' rejection of associational standing, BRUSH fails to establish RICO injury, and therefore does not have standing in the instant action.

## CONCLUSION

Defendants ask this Court to dismiss the SAC in its entirety, and to dismiss the RICO cause of action with prejudice.

Dated:    New York, New York
          December 27, 2007

                              GIBSON, DUNN & CRUTCHER LLP

                         By:    s/ Mitchell A. Karlan
                                Mitchell A. Karlan (MK-4413)
                                200 Park Avenue, 47th Floor
                                New York, New York  10166-0193
                                Telephone:  (212) 351-4000
                                Facsimile:  (212) 351-4035
                                *Attorneys for Defendants*

Of Counsel:

Ladan F. Stewart
Deepa Janakiraman
Kathleen Kaufmann Shih

100360614

11