IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ )<br>CHARRONS et al., )<br> )<br>     Plaintiffs, )<br> )<br>  v. )<br> )<br>PINNACLE GROUP NY LLC and )<br>JOEL WIENER, )<br> )<br>     Defendants. )<br>_____ ) | No. 1:07-cv-6316-CM<br><br>**[REDACTED VERSION FILED<br>PURSUANT TO PROTECTIVE<br>ORDER]** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR CLASS CERTIFICATION**

JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699

*Attorneys for Plaintiffs*

*Of counsel:*
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

June 30, 2009

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    I.     The Defendants' Overall Scheme. .............................................................. 2

    II.    The Impact Of The Defendants' Actions On The Proposed Class. ...................... 5

STANDARD OF REVIEW ........................................................................................... 8

ANALYSIS ...................................................................................................................... 9

    I.     All Four Requirements Of Rule 23(a) Are Met In This Case. ........................... 10

         A.    The Class Is So Numerous That Joinder Of All Members
             Is Impracticable. .......................................................................... 10

         B.    There Are Questions Of Law And Fact Common To The Class. ............. 10

         C.    The Named Plaintiffs' Claims Are Typical Of The Claims
             Of The Class. .............................................................................. 12

         D.    The Named Plaintiffs And Their Counsel Will Fairly And
             Adequately Protect The Interests Of The Class. ............................... 13

    II.    The Named Plaintiffs' Claims for Injunctive Relief and Declaratory
        Relief Should be Certified Under Rule 23(b)(2). .......................................... 14

    III.   Class Certification Is Also Proper Under Rule 23(b)(3). ................................ 15

         A.    A Class Action Is Superior To Other Methods of Adjudication. ............. 16

         B.    Common Questions Of Law And Fact Predominate Over Questions
             Affecting Only Individual Members Of The Class. ........................... 17

             1.    The RICO Claims Are Subject To Generalized Proof. ............. 18

             2.    The NYCPA Claims Also Are Subject to Generalized Proof. ....... 21

         C.    Alternatively, Issue Certification Is Appropriate. ............................. 22

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ........................................................ 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) .................... 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663 (7th Cir. 2004) (Posner, J.) ...................... 22

*Crisci v. Shalala*, 169 F.R.D. 563, 571 (S.D.N.Y. 1996) ............................................................. 10

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ........................................................ 19

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 333-34 (S.D.N.Y. 2005) .................................. 19

*Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) . 15

*In re Copley Pharm., Inc.*, 161 F.R.D. 456, 461 (D. Wyo. 1995) ................................................. 23

*In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002) .................. 11

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) .......................... 12

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)) ........................... 18

*Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 428 (S.D.N.Y. 2009) (McMahon, J.) .............. 9

*Jermyn*, 256 F.R.D. at 436-37 ...................................................................................................... 16

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1258-59 (11th Cir. 2004) ................................................. 20

*Marisol v. Giuliani*, 126 F.3d 372, 376-7 (2d Cir. 1997) ............................................................ 11

*Marisol*, 126 F.3d at 377 .............................................................................................................. 11

*Mayer v. Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996) .............................................................. 12

*McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) .......................................... 8

*Norflet v. John Hancock Life Ins. Co.*, No. 04-1099, 2007 WL 2668936, *10 (D. Conn. Sept. 6, 2007) ......................................................................................................................................... 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995) ............................................................................. 21

*Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 20 (2d Cir. 2003) ...................... 14

*Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993) ................................................ 18

*Robidoux v. Celani*, 987 F.2d 931 ....................................................................... 10

*Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 95 (D. Md. 2009) .............. 19-20

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 168 (2d Cir. 2001) .............. 22

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) ........................... 12

*See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) ............... 10

*Spencer v. Hartford Fin. Serv. Group, Inc.*, 256 F.R.D. 284, 287 (D. Conn. 2009) ........... 16

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) ............ 21

*Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994) .................................. 12

*Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 197 (S.D.N.Y. 1992) ....................... 11

*United States v. Trapilo*, 130 F.3d 547, 551 (2d Cir. 1997) .................................. 19

*United States v. Turkette*, 452 U.S. 576, 583 (1981) ......................................... 18

*Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 238 (C.D. Cal. 2003) ............. 19

*Westways*, 218 F.R.D ........................................................................ 19

*Williams v. Mohawk Indus., Inc.*, --- F.3d ---, 2009 WL 1476702, *6 (11th Cir. May 28, 2009) 11

**Statutes**

1 NEWBERG ON CLASS ACTIONS, § 3:5 .......................................................... 10

18 U.S.C. § 1341 ............................................................................ 19

18 U.S.C. § 1961(4) ...................................................................... 11, 23

18 U.S.C. § 1961(4); (2) ..................................................................... 9

18 U.S.C. § 1961(5) ......................................................................... 18

18 U.S.C. § 1962(c) ....................................................................... 2, 18

18 U.S.C. §§ 1341, 1343 ..................................................................... 22

Fed. R. Civ. P. 23(a)(2) .................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................... 12

Fed. R. Civ. P. 23(b)(2)..............................................................................................14

Fed. R. Civ. P. 23(b)(3)..........................................................................................15, 16

Fed. R. Civ. P. 23(c)(4)(A) .......................................................................................9, 22

NY Gen. Bus. § 349(a) ................................................................................................21


1 NEWBERG ON CLASS ACTIONS, § 3:5 .....................................................................10

Plaintiffs Marjorie and Theodore Charron, Anthony Casasnovas, Karen Flannagan, Andres Mares-Muro, Raymond Andrew Stahl-David, Russell Taylor, Diane Trummer, and Kim Powell (together the "Named Plaintiffs") respectfully submit this memorandum of law in support of their motion for class certification.

## INTRODUCTION

The purpose of this class action is to compel Defendant Pinnacle Group NY LLC and Defendant Joel Wiener (together the "Defendants" or with their affiliates, partners, and associates the "Pinnacle Enterprise" or "Pinnacle") to desist from their scheme of turning rent-controlled and rent-stabilized apartments into more profitable market-rate units and condominiums via fraud, extortion, and harassment against the tenants of more the than 400 apartment buildings the Pinnacle Enterprise owns in New York.  Among other offenses, the Defendants have wrongfully inflated rents offered for rent-stabilized and rent-controlled apartments, misrepresented the status and cost of renovations, refused to acknowledge tenants' lawful succession rights, wrongly inflated rents beyond the amount permitted by law, attempted to extort tenants to pay unlawful rents, provided false information to government agencies, and engaged in harassment against its tenants, including blacklisting, eavesdropping and surveillance.

The Pinnacle Enterprise's fraudulent scheme has had widespread impact.  In 2005 and 2006 alone, the Pinnacle Enterprise instituted eviction actions against *at least* 5,000 of its 20,000 tenants.  (Ex. J, at 1.)  Furthermore, an investigation by the New York Office of the Attorney General (hereafter the "OAG") into only one aspect of the Pinnacle Enterprise's racketeering ███

████████████████████████████████████████████████████████████████████████████

███████████████████.  (Exs. B-C.)

By undertaking this fraudulent scheme, the Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO") and the New York Consumer Practices Act ("NYCPA").   The Named Plaintiffs are tenants in buildings owned by the Defendants who have been injured as a result of the scheme.   Seeking both damages and injunctive relief, the Named Plaintiffs move to certify a damages class and injunctive class, composed of persons aggrieved by the same scheme and set of practices pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2).   In the alternative, the Named Plaintiffs propose that this Court defer consideration of issues relating to injury and remedy, and certify a liability-only issues class pursuant to Federal Rule of Civil Procedure 23(c)(4)(A) to address the core and predominate questions in this case – whether the Defendants' conduct has violated RICO and the NYCPA.

## STATEMENT OF FACTS

### I.     The Defendants' Scheme.

The Pinnacle Enterprise[1] acquired hundreds of apartments throughout New York City during the real estate boom between 1999 and 2006.   (Ex. A, Kaplan Tr. at 106-108.)   After acquiring the apartments, the Pinnacle Enterprise engaged in a scheme to convert the rent-regulated apartments into condominiums and market-rate apartments.   Their scheme was and continues to be multi-faceted, involving misrepresenting the legally chargeable rent; misrepresenting the status and cost of renovations; misrepresenting and refusing to acknowledge

---

[1] As described in additional detail in the Second Amended Complaint, the Pinnacle Enterprise is a complex web of companies and persons.  At a minimum, the Enterprise consists of: (1) several companies directly controlled by Wiener and his family, including Pinnacle Group NY LLC, Pinnacle Management Co., LLC, and SecureWatch 24; (2) the Praedium Group LLC, a real-estate investment firm whose self-described strategy is increasing the value of its investments by "aggressively manag[ing] the current tenant/leasing base;" and (3) numerous LLCs, each of which holds title to a particular apartment building and is jointly owned by intermediate such LLCs or partnerships among Wiener and various Praedium principals. (Comp. ¶¶ 43-50, 174.)

tenants' succession rights under their leases; misrepresenting tenants' rent payment status; filing meritless eviction suits and undertaking other harassing conduct in order to extort unlawful payments from tenants; and providing false information to government agencies. All of these actions have been taken to discourage tenants from challenging the Defendants' actions, all in a calculated attempt to circumvent the carefully balanced New York rent regulations.

The limited discovery that has taken place related to class certification demonstrates Defendants' motivation for engaging in this unlawful scheme. Aside from earning more money from higher rents, the Pinnacle Enterprise would benefit from inducing current tenants residing in rent-controlled or rent-regulated apartments to move out. For example, Defendants issued "offering memoranda" for several of its buildings in order to convert the buildings into condominiums starting in 2005. (Ex. H.) Under these memoranda, ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ (Ex. A, Kaplan Tr., at 143-44.) As the Defendant's own sources confirm, ████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* at 160**.**)

In addition, the existence of this fraudulent scheme is demonstrated by its wide-ranging impact on tenants. By May 2006, the Pinnacle Enterprise had initiated dispossession actions against *at least* 5,000 of its 20,000 tenants -- a number that has never been disputed by Pinnacle. (Ex. J.) Furthermore, an outside audit prompted by an OAG investigation into _some_ of the Pinnacle Enterprise's fraudulent actions found ████████████████████████████████████

███████████████████████████████████████████████████████████████████[2]

(Exs. B, C.)

 Although merits discovery has not begun (and class-certification discovery is still ongoing), based on their own knowledge and on preliminary class discovery, Named Plaintiffs will substantiate the existence of this fraudulent scheme through evidence common to all members of the class, including: (1) ████████████████████████████████ ████████████████████████████████ (*see infra*); (2) ███████████████ ████████████████████████████████ ████████ (*see* Exs. D-F); (3) ████████████████████ ████████████████████████████████ (*e.g.,* Ex. A, Kaplan Tr., at 66-69); (3) ██████████ ████████████████████████████████ ████████████████████████████████ ████████████████ (Ex. I; ████████████████); (4) the Pinnacle Enterprise's practice of filing baseless eviction suits and notices of termination against its tenants (*see* Section II, *infra*); (5) its pattern and practice of failing to comply with DHCR orders requiring members of the Pinnacle Enterprise to pay monetary awards to tenants for rent overcharges; (*see, e.g.,* M. Charron Decl. ¶¶ 15-18); (6) its retaliation against parties who attempted to mobilize against it (*see, e.g.,* Powell Decl. ¶¶ 12-24); and (7) ████████████ ████████████████████████████████ ████████████████████████████████ ████████████████ (Ex. G; Ex. A, Kaplan Tr., at 243-53.)  Whether directed at the entire

---

[2] The OAG investigation and subsequent Assurance of Discontinuance agreements did not in any way limit the Pinnacle Enterprise's future civil liability.  (Ex. B at 7.)

class or at a particular Named Plaintiff, each of these specific actions is probative of a common, class-wide scheme to defraud.

## II.   The Impact Of The Defendants' Scheme On The Proposed Class.

Hundreds if not thousands of others have been injured by Pinnacle's fraudulent scheme, and all of the injured tenants fall within several common categories.  The Named Plaintiffs accordingly seek the certification of the following Class: "[a]ll persons who, at any time from July 11, 2004 to the date of certification, leased an apartment in the City of New York directly or indirectly owned in whole or in part by the Pinnacle Enterprises."  (Comp., ¶ 150.)  The Named Plaintiffs further propose that the Court subdivide the Class into four different sub-classes, based on the common injuries suffered by the putative members of each sub-class:

**Subclass #1:   Tenants who have received notices from the Pinnacle Enterprise misrepresenting the legal rent by overinflating the cost or value of renovations/capital improvements made to the apartment**.

The Pinnacle Group employed a common scheme to raise rents of tenants, by claiming that "improvements" had been made to apartments, when (in actuality) no such renovations had been made.  For example, Defendants caused Marjorie and Theodore Charron's landlord, 706 Realty Co., LLC, to overcharge the Charrons by more than $10,000 for their rent-stabilized, two-bedroom apartment between 2001 and 2003 based on purported "renovations" to the apartment. (M. Charron Decl. ¶¶ 7-14; T. Charron Decl. ¶¶ 7-14.)  When the Charrons investigated these alleged renovations, they discovered that Defendants had submitted fraudulent receipts to DHCR for "renovations" to unlawfully justify increasing the rent.  (*Id.*)  These receipts included, among other things, 160 light bulbs, 75 pounds of grout, 130 gallons of paint, a $198 nail gun, a $424 drain cleaning device, and various other items listed as installed but not used.  (*Id*. ¶ 9.)  Based

on this evidence, the DHCR found that the Charrons had been overcharged by $10,000 in rent. (*Id.*)  When the Charrons lawfully attempted to withhold rent based on the credit they should have received as a result of past overcharges (*see id.* ¶ 6), the Defendants refused to abide by the DHCR order and instead caused the landlord to send notices demanding payment of the unpaid rent.  (Ex. D to M. Charron Decl.; Ex. D to T. Charron Decl.)  The aforementioned notices were false because they were based on unlawfully inflated rent amounts, and failed to take into account the Charrons' lawful basis to withhold their rent.  Only in May 2008, after logging more than 3,500 hours of their time, the Charrons finally received what they were owed from the outset – a fairly calculated rent.  (M. Charron Decl.  ¶¶ 15-19.)

**Subclass #2: Tenants who have received notices from the Pinnacle Enterprise misrepresenting that the legal rent is higher than permitted by the prior rental history of the apartment.**

The Pinnacle Group also employed the same basic plan to egregiously over-inflate the rents of the Named Plaintiffs, including Andrew Casasnovas, Diane Trummer, Andrew Mares-Muro, and others – by setting the rents without regard for the prior rental history of the building. (Casasnovas Decl. ¶¶ 5-9; Trummer Decl. ¶¶ 8-9; Mares-Muro Decl. ¶¶ 5-12; Taylor Decl. ¶ 6-13.).  For example, Named Plaintiff Anthony Casasnovas learned after leasing his apartment for the preferential rate of $1,800/month, that two years previously the same apartment had rent for only $683.  (Casasnovas Decl. ¶¶ 5-9.)  When Mr. Casasnovas informed the Defendants that he would withhold rent until they justified the rent, the Defendants undertook various escalating efforts designed to extort Mr. Casasnovas into paying the rent, including (1) causing the landlord to send Mr. Casasnovas multiple notices demanding $4,400 in back rent, (*see* Ex. C to

Casasnovas Decl.) and (2) causing their lawyers to serve Mr. Casasnovas with an action in Housing Court seeking to evict him for non-payment of rent (*see* Casasnovas Decl., ¶¶ 10-19).

**Subclass #3:  Tenants who have received notices wrongly asserting that the tenants lacks succession rights and therefore are not a lawful tenant.**

Pinnacle also engaged in a common course of conduct against many tenants, including Named Plaintiff Karen Flannagan, to challenge their succession rights – or the right to take over the lease of a rent-controlled or rent-stabilized tenant and continue to rent the apartment at the rent-controlled or rent-stabilized rates.  For example, Karen Flannagan has been repeatedly harassed by Defendants' demands to prove and re-prove her succession rights to the apartment. (Flannagan Decl. ¶¶ 7-16.)  On January 10, 2005, "Pinnacle Group" sent her a letter (addressed to her late father, Stanley Flannagan) returning six personal checks she had sent them for the rent, stating that they would not accept her checks for rent because she was not the "primary tenant" on the lease.  (Ex. B to Flannagan Decl.)  Then, on January 19, 2005, the Defendants caused the landlord to serve Ms. Flannagan with a "Ten Days Notice to Quit Licensee," which fraudulently alleged that she was not a lawful successor tenant to her parents.  (Ex. D to Flannagan Decl.)  On February 17, 2005, Defendants caused their lawyers to commence a baseless holdover proceeding against Ms. Flannagan.  (Flannagan Decl. ¶¶ 15-17.)  Ms. Flannagan was required to waste her time and efforts defending against this action for over a year – until April 26, 2006, when Defendants abruptly dropped their case with no explanation or compensation for harassing her and wasting her time.  (*Id*. ¶ 18.)

**Subclass #4**:  **Tenants not falling into Subclasses #1-3 above who have received notices from the Pinnacle Enterprise wrongly claiming that the tenant has failed to pay rent that is due and owing.**

Finally, Pinnacle engaged in a common scheme of sending demands for payment to numerous tenants, including Named Plaintiffs Kim Powell and Raymond Andrew Stahl-David, in order to extort unlawful payments against them.  For example, Ms. Powell has lived at 706 Riverside Drive since the 1970s.  After the Defendants took over the building, Ms. Powell was forced to file an action in housing court to force them to make necessary repairs to the apartment.  (Powell Decl. ¶¶ 5-11.)  After she won that action, even though the rent was paid in full, the Defendants commenced an eviction proceeding against Ms. Powell, falsely claiming that unpaid rent was due.  Ms. Powell was forced expend time and resources combating that improper suit. (*Id.*)

Similarly, when Mr. Stahl-David learned that his rent had been unlawfully inflated, he commenced an overpayment proceeding and told Pinnacle that he would lawfully withhold rent as a result.  (Stahl-David Decl. ¶¶ 11-13.)  In response, the Defendants sent Mr. Stahl-David two notices demanding payment of $4350 in back rent based on the $1850 inflated rent amount, and then initiated an eviction action against him.  (Ex. C to Stahl-David Decl.)  Even after the DHCR ordered Pinnacle to lower the rental rate for the apartment by more than $1300 each month, Pinnacle continued its harassing conduct.  (Stahl-David Decl. ¶¶ 13-16.)  Most notably, Pinnacle continued to send Mr. Stahl-David forms listing the old and wrongly inflated rent and refused to deposit his rent payments, putting him in fear of further eviction proceedings.  (*Id.* ¶¶ 17-19.)

## STANDARD OF REVIEW

A case may proceed as a class action if all of the prerequisites of Federal Rule of Civil Procedure 23(a) and all of the requirements of at least one of the subsections of Rule 23(b) are satisfied.  *McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).  The relevant inquiry at the class certification stage is not whether Plaintiffs are likely to prevail on the merits of their claims, but rather, whether the requirements of Rule 23 are met.  *See id.*  The district

court therefore "has ample discretion" to "assure that a class certification motion does not become a pretext for a partial trial on the merits." *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 428 (S.D.N.Y. 2009) (McMahon, J.).   The district court "is not permitted to conduct a preliminary inquiry into the merits of plaintiff's case at the class certification stage." *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 444 (S.D.N.Y. 2007).   Furthermore, as the case is still in its early stages, it is proper to view the class action liberally, since the class can always be modified or subdivided as issues are refined for trial.  *Id.*

## ANALYSIS

Here, certification of the four-subclasses above seeking both damages and injunctive relief is appropriate under both of the subsections of Rule 23(b) of the Federal Rules of Civil Procedure.  The class raises numerous common issues under RICO and the NYCPA, including (1) whether the Pinnacle Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961(4); (2) whether the Defendants conducted the Pinnacle Enterprise; and (3) whether the Defendants engaged in a pattern of racketeering activity, by committing two predicate acts of mail fraud, extortion, or violation of the National Property Act.  Given the complex nature of a RICO class action, the best and most efficient way to resolve these common issues is to use common evidence in a single proceeding.

In the alternative, the Named Plaintiffs propose that the Court certify a liability-only issues class pursuant to Fed. R. Civ. P. 23(c)(4)(A) to determine whether the Defendants violated RICO and the NYCPA, leaving aside for now the questions of injury to each individual plaintiff. Such partial certification would allow the Court to address particular issues of liability that are identical as to each and every class member, as set forth below.[3]

---

[3]  Liability-only issue certification would obviate the need to proceed through subclasses, as the subclass divisions address the particular manner in which class members have been injured.

I.      **All Four Requirements Of Rule 23(a) Are Met In This Case.**

The four requirements for maintaining a class under Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  All four prerequisites are satisfied here.

A.      **The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

Rule 23(a)(1) provides that a class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed if the class has more than forty members.  *Consol. Rail*, 47 F.3d at 483.  Evidence concerning the exact class size or identity of class members is not necessary to satisfy this requirement.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Rather, a "class action may proceed upon estimates as to the size of the proposed class."  *Crisci v. Shalala*, 169 F.R.D. 563, 571 (S.D.N.Y. 1996) (internal citation omitted); *see also* 1 NEWBERG ON CLASS ACTIONS, § 3:5 (stating that the prevailing view is that "the plaintiff need not allege the exact number or identity of class members").

Here, although the exact number of Class members has not yet been determined, the Class is sufficiently numerous for numerosity to be presumed.  Defendants control more than 400 multi-tenant buildings containing more than 19,000 units, many of which are rent-stabilized.  (Ex. A, Kaplan Tr., at 238-39.)    And the Defendants have sent 5,000 notices demanding payment from its tenants in these buildings from 2004 through 2006.  (Ex. J.)  Joinder of all these persons is impracticable due to the large number of class members, and the limited resources of many of the class members.  Accordingly, this case satisfies the numerosity requirement of Rule 23(a)(1).

B.      **There Are Questions Of Law And Fact Common To The Class.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is to be liberally construed and judged by a

flexible standard. *Marisol v. Giuliani*, 126 F.3d 372, 376-7 (2d Cir. 1997). The claims of the putative class members need not be identical to establish commonality. *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002). Rather, commonality can be met even when defendants cause a variety of harms and legal injuries to plaintiffs if the harms allegedly "derive from a unitary course of conduct by a single system." *Marisol*, 126 F.3d at 377. Moreover, no standardized wrong is necessary to satisfy commonality, as commonality may exist where plaintiffs are injured in a similar manner by various acts of the defendant. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 197 (S.D.N.Y. 1992).

The core factual and legal issues in this RICO and NYCPA case are common to all class members and well-suited to class treatment because they can be resolved once, on a uniform class-wide basis. Under RICO, all class members would be required to prove *first*, that the Pinnacle Enterprise identified in the Second Amended Complaint ("Complaint") is an enterprise within the meaning of 18 U.S.C. § 1961(4); *second*, that the Defendants conducted the Pinnacle Enterprise; and *third*, that the Defendants engaged in a pattern of racketeering activity, by committing two predicate acts of mail fraud, extortion, or violation of the National Property Act. As the Eleventh Circuit recently explained:

> RICO claims are not simply individual allegations of underpayments lumped together, and the allegation of an official corporate policy or conspiracy is not simply a piece of circumstantial evidence being used to support such individual underpayment claims. Instead, the very gravamen of the RICO claims is the "pattern of racketeering activities" and the existence of a national conspiracy . . . . These are not facts from which jurors will be asked to infer the commission of wrongful acts against individual plaintiffs; these very facts constitute essential elements of each plaintiff's RICO claims.

*Williams v. Mohawk Indus., Inc.*, --- F.3d ---, 2009 WL 1476702, *6 (11th Cir. May 28, 2009) (internal citations omitted) (overturning ruling that refused to certify a RICO class action). Likewise, under the NYCPA, all class members would seek to prove that the Defendants

engaged in a misleading or deceptive scheme that targeted consumers.  Accordingly, this case satisfies Rule 23(a)(2)'s commonality requirement.

### C.       The Named Plaintiffs' Claims Are Typical Of The Claims Of The Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also Mayer v. Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996).

As with commonality, the typicality requirement "is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux,* 987 F.2d at 936-37.  For the claims to be typical, the harms to the class members may occur in a number of different ways as long as the wrong is alleged to have occurred in the same general fashion.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (typicality was satisfied where alleged wrong was employment discrimination and harm to class members occurred through denials of transfers, fewer training opportunities, or lack of promotions); *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994) (holding in a RICO class action case that typicality was not defeated despite the varying degrees of injury between the class members or the constitutional tort claims that some individuals had, necessitating separate damages calculations).

In this case, the putative class members all have been subjected to Defendants' practice of fraudulently attempting to convert rent-regulated housing into market rate apartments and condominiums and their claims are premised on the same legal arguments.  Their claims are therefore sufficiently similar to establish typicality.

12

**D.     The Named Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Class.**

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  To establish adequacy, the moving party must show that "1) plaintiff's interests are [not] antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 60 (2d Cir. 2000).

Here, the Named Plaintiffs will adequately represent the class.  The Named Plaintiffs have no conflicts of interests or interests that are antagonistic to the remainder of the class.  (M. Charrons Decl. ¶¶ 4-6; T. Charrons Decl. ¶¶ 4-6; Powell Decl. ¶ 3;  Casasnovas Decl. ¶ 4; Flannagan Decl. ¶5; Mares-Muro Decl. ¶ 4; Stahl-David Decl. ¶¶ 5-6; Taylor Decl. ¶ 5; Trummer Decl. ¶¶ 5-6.)  Moreover, the Named Plaintiffs are prepared to vigorously pursue the case on their own behalf and on the behalf of other class plaintiffs.  (*Id.*)

Counsel for the Named Plaintiffs have sufficient experience, credentials, and resources to adequately and fully represent the class and to litigate this case as a class action.  In fact, proposed Class Counsel have already vigorously prosecuted this case, by (among other things) successfully opposing Defendants' motion to dismiss the Complaint.

Counsel for Plaintiffs includes Richard F. Levy, of Jenner & Block, who has been practicing law for over fifty years.  (Levy Decl. ¶ 2.)  Mr. Levy has practiced law in Illinois, New York, the United States Supreme Court, and numerous federal appellate, district, and bankruptcy courts throughout the United States.  (*Id*.)  Mr. Levy also has served as lead counsel in a wide variety of matters, including corporate reorganization, debt restructuring, bankruptcy litigation, bank regulation, and corporate transactions and governance.  (*Id*. ¶¶ 4-5.)  Moreover, throughout

his career, he has demonstrated a commitment to providing pro bono legal services to individuals without access to adequate resources to pay for legal services.  (*Id.* ¶ 5.)

Also representing the Named Plaintiffs is Ross B. Bricker of Jenner & Block, who has been practicing law for over twenty-five years and is admitted to practice in Illinois, Florida, the District of Columbia, the United States Supreme Court and a number of federal district and appellate courts.  (Bricker Decl. ¶ 2.)  Mr. Bricker has served as lead counsel in a variety of substantive legal areas, including intellectual property, mass torts, fiduciary duty, antitrust and corporate governance matters.  (*Id.* ¶¶ 3-4.)  Additionally, throughout his career, Mr. Bricker has devoted substantial effort to representing those without access or the ability to afford legal services.  (*Id.* ¶ 5.)  His work on these cases has been recognized by the Trial Lawyers for Public Justice Foundation and the Lawyers Committee for Civil Rights Under Law.  (*Id.*)

## II.     The Named Plaintiffs' Claims for Injunctive Relief and Declaratory Relief Should be Certified Under Rule 23(b)(2).

In addition to satisfying all requirements under Rule 23(a), each proposed subclass meets all the requirements of Rule 23(b)(2).  Under this Rule, a class action may be maintained if the party opposing the class action has acted on grounds generally applicable to the class, making final injunctive relief or declaratory relief appropriate for the class as a whole.  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) certification is appropriate here because "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring [this] suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought [is] both reasonably necessary and appropriate [should] the plaintiffs [ ] succeed on the merits."  *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 20 (2d Cir. 2003).

In this case, the putative class is seeking to enjoin the Defendants from continuing their pattern of harassing conduct, racketeering, and other unlawful conduct designed to generate

14

higher revenue, which affects all tenants through widespread rent overcharges, failures to address housing maintenance code violations, and other harassing conduct.  (Comp., at 69-70.)  The Named Plaintiffs all seek to stop the Defendants from subjecting other tenants to this harassment, frustration, financial loss, and insecurity that they have experienced as a result of Defendants' conduct.  (*See, e.g.* Stahl-David Decl. ¶ 5.)

Given the widespread effects of Defendants' misconduct, as well as Defendants' attempts to frustrate those processes through continued fraudulent conduct, injunctive relief is necessary, appropriate, and to the benefit of the entire class.  *See Finch v. N.Y. State Office of Children & Family Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008) (granting class certification motion where the class plaintiffs sought declaratory relief, even in the absence of monetary damages); *Marisol*, 126 F.3d at 378 (certifying injunctive class despite factual differences, as the differences all stemmed from the same "central and systematic failures").  Accordingly, the Court should grant the Named Plaintiffs' motion for class certification and certify a Rule 23(b)(2) class here.

## III.    Class Certification Is Also Proper Under Rule 23(b)(3).

Additionally, the putative class should be certified under Federal Rule of Civil Procedure 23(b)(3).  Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Both the superiority and predominance requirements are met here.  Class treatment based on the four subclasses is superior to any other methods of adjudication because it is the most efficient manner of resolving the putative class's RICO and NYCPA claims.  Moreover, given that the Defendants' liability for both claims will be established through class-wide proof, the predominance requirement is also satisfied.

Alternatively, the Court may instead choose to certify the class pursuant to Rule 23(c)(4)(A) solely to decide whether the Defendants' conduct violated RICO and the NYCPA – without addressing the right of any individual class members to relief.  Such an approach promotes judicial efficiency by ensuring that the common legal and factual issues best addressed on a class-wide basis only must be resolved once – and not through multiple litigations.

### A.      A Class Action Is Superior To Other Methods of Adjudication.

A class action is the superior way to resolve this dispute.  To satisfy the requirement under Rule 23(b)(3), the Named Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Factors relevant to the superiority analysis include the class members' interest in bringing separate actions, the nature and extent of existing litigation, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in management of the class action.  *Id.*; *see also Jermyn*, 256 F.R.D. at 436-37.  Each of these factors shows class certification is proper in this case.

*First*, superiority is shown, where as here, "individual litigation would be impractical because each class member's claim is too small to make litigation cost-effective."  *Spencer v. Hartford Fin. Serv. Group, Inc.*, 256 F.R.D. 284, 287 (D. Conn. 2009).  Given the relatively limited damages suffered by certain plaintiffs, it is strongly in the Named Plaintiffs' interest to litigate this action as a class, and not as separate actions.

*Second*, concentrating the litigation into a single dispute is the most efficient method to resolve the putative class members' claims.  *Jermyn*, 256 F.R.D. at 436-37.  Requiring each plaintiff to separately and repeatedly litigate the multitude of common issues for their RICO and NYCPA claims would unnecessarily tax the resources of the federal courts and lead to conflicting results.

*Third*, class certification presents no serious management difficulties given the Named Plaintiffs' willingness to proceed through subclasses or issue certification.  Any remedial questions regarding the amount of damages that may eventually develop will not outweigh the efficiencies gained from allowing hundreds of putative class members to establish liability in this single proceeding through common proof.

*Fourth*, the nature and extent of existing litigation also demonstrates the superiority of the class action.  This lawsuit challenges the Pinnacle Enterprise's pattern and practice of systematically evading the requirements of New York's Rent Stabilization Code.  Litigation before this Court represents the Named Plaintiffs' best chance of ensuring that Defendants comply with their existing legal obligations under New York's rent stabilization laws on an on-going basis.

*Finally*, "a class action is considered a superior mode of adjudication where it would increase the public's awareness of the suit and thereby increase[] the number of individuals able to vindicate their rights."  *Norflet v. John Hancock Life Ins. Co.*, No. 04-1099, 2007 WL 2668936, *10 (D. Conn. Sept. 6, 2007).  This class action is crucial to bringing awareness to the tenants of their lawful rights under New York's rent stabilization laws.  The filing of this class action has already led to newspaper articles and other press alerting vulnerable members of the New York community to their rights as renters of rent-stabilized apartments.  (Ex. J.) Certification of a class will further raise awareness of these efforts.

### B.   Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  To satisfy this requirement, plaintiffs "must establish that the issues in the class

action that are subject to generalized proof, and thus applicable to the class as a whole. . . ., predominate over those issues that are subject only to individualized proof." *Jermyn*, 256 F.R.D. at 435 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)). The presence of some individualized issues regarding damages or causation need not defeat predominance. *Id.* As demonstrated below, common legal and factual questions predominate for each putative subclass as to their claims under RICO and the NYCPA.

### 1.   The RICO Claims Are Subject To Generalized Proof.

Common questions of law and fact clearly predominate over any individualized issues raised as to the putative class members' RICO claims. The elements of this claim are the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." 18 U.S.C. § 1962(c). Here, the core questions underlying this claim are common to all putative class members and can be established by the same, identical proof.

*First*, common proof will establish that the association-in-fact enterprise alleged in the complaint, the Pinnacle Enterprise, exists as an ongoing organization with a decision-making structure such that it is "an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

*Second,* the putative class members will rely on uniform proof to establish that the Defendants conducted the Pinnacle Enterprise, or that Defendants participated, "directly or indirectly, in the conduct of [the] enterprise's affairs," such that they meet the threshold for liability of having played "some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993).

*Third*, the putative class members also will rely on the same centralized evidence to establish that the defendants engaged in a pattern of racketeering activity – the commission of at least two predicate acts within a ten-year time period. 18 U.S.C. § 1961(5). For example, the

predicate act of mail fraud in violation of 18 U.S.C. § 1341 raises questions common to all class members.  The elements of mail fraud are: (1) the existence of a scheme to defraud involving money or property; and (2) the use of the mails in furtherance of the scheme.  *See United States v. Trapilo*, 130 F.3d 547, 551 (2d Cir. 1997).  The same proof of each element will be introduced by all putative class members.  With this predicate act (and with the other relevant predicate acts of extortion and violation of the National Stolen Property Act), the court's inquiry remains focused on the Defendants' common fraudulent scheme against all class members.  *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 238 (C.D. Cal. 2003) (concluding that where plaintiffs alleged "a common fraudulent scheme against all class members," predominance is met as to the predicate act of extortion).  Accordingly, this element will be established through generalized proof here

*Fourth*, common issues arise as to the injury to the Named Plaintiffs.  Several courts have certified classes in RICO actions involving "common course of conduct of misrepresentations, omissions and other wrongdoing that allegedly affected all the [sub]class members in the same manner."  *Westways*, 218 F.R.D. at 239; *see also Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 333-34 (S.D.N.Y. 2005), *vacated in part on other grounds by Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (granting class certification where despite differences in the form of representations "the basic pitch was always the same").  For example, in *Westways*, the court certified the class action because liability turned not so much on the individual content of each notice submitted to plaintiffs but on "an inquiry into [the defendants] alleged conduct of using [such notices] to extort monies from class members."  218 F.R.D. at 237-38.  Similarly, class certification has been granted where the plaintiffs relied "on the scheme, not necessarily on any particular fraudulent mailing or misrepresentation."  *Robinson v. Fountainhead Title Grp. Corp.*,

257 F.R.D. 92, 95 (D. Md. 2009) (granting certification of class bringing RICO claims for being charged unlawful fees through a kickback scheme).

Here, the Named Plaintiffs have divided their proposed class into subclasses, each of which contains substantially similar patterns of misrepresentations and extortion made in furtherance of the Defendants' fraudulent scheme.  The putative class members in each of the subclasses were subjected to substantially similar patterns of conduct from the Defendants. Moreover, like in *Westways*, the Defendants' liability depends less on the falsity of the various notices they sent to each individual class member, then whether the Defendants attempted to use the notices to extort additional payment from the putative class members.

Moreover, even if individualized issues later arise in the lawsuit, through the Defendants' conduct towards particular members of a subclass, the common liability issues shared by the putative class predominate over any individualized issues.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258-59 (11th Cir. 2004).  In *Klay*, the class raised numerous common issues under RICO, including "the existence of a national conspiracy, a pattern of racketeering activity, and a Managed Care Enterprise."  *Id.*  While the defendants in *Klay* argued that class certification was not appropriate due to individual issues concerning reliance and damages, the Eleventh Circuit disagreed and granted class certification, because the common issues concluded were "quite substantial" and would tend "to predominate over all but the most complex individualized issues."  *Id.*; *see also Spencer*, 256 F.R.D. at 297 (granting class certification where "the resolution of factual and legal questions can be largely achieved through generalized proof, and those questions predominate over the handful of issues subject only to individualized proof").[4]

---

[4] Notably, as the Supreme Court has recognized, "[r]eliance is not a necessary element of RICO claim based on pattern of mail fraud."  *See Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct.

Similarly, as discussed above, this RICO class action involves numerous and substantial common issues concerning essential elements that can best be resolved on a class-wide basis, notwithstanding any individualized issues.  Class certification under Rule 23(b)(3) is therefore appropriate.

### 2.    The NYCPA Claims Also Are Subject to Generalized Proof.

NYCPA § 349 bans "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  NY Gen. Bus. § 349(a).  "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).  Predominance is satisfied for the NYCPA claim as the putative class members will use the same common evidence as described above, *see supra* at 10-12, to prove that the challenged scheme here – Defendants' policy and practice of fraudulently evading New York's rent stabilization laws and seeking to eviction unlawful funds from its tenants – is both consumer-oriented and deceptive.  Predominance is also satisfied as to the injury element, because individualized reliance on defendants' misrepresentations is not necessary to succeed as to the claim, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995), and the factual similarity of the injuries suffered by members of each subclass undercuts any argument that such factual differences should defeat certification here.

---

2131, 2137-38 (2008).  While in some cases reliance may continue to be necessary to the action, this is not such a case.  *Spencer*, 256 F.R.D. at 297.

### C.        Alternatively, Issue Certification Is Appropriate.

Moreover, even if the Court were to conclude that predominance is not met as to the action as a whole due to questions regarding damages or causation, the Court should certify a class pursuant to Federal Rule of Civil Procedure 23(c)(4) solely to address the issues common to the class -- or whether the Defendants' scheme violated RICO or the NYCPA.

Under Rule 23(c)(4)(A), "when appropriate . . . an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4)(A).  "[A] court may employ Rule 23(c)(4) to certify a class as to common issues that do exist, 'regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement.'"  *See McLaughlin*, 522 F.3d at 234.   Indeed, the Second Circuit has encouraged district courts to "take full advantage of [Rule 23(c)(4)(A)] in order to reduce the range of disputed issues in complex litigation[.]"  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 168 (2d Cir. 2001).

Issue certification is especially appropriate in a RICO case such as this one where Defendants' liability can be determined through recourse to common proof, without any individualized inquiry into the issue of injury to specific class members.  This is so because of the nature of the RICO predicate acts:  the statute prohibiting mail fraud, one of the central predicate acts in this case is "violated by a 'scheme or artifice to defraud,' 18 U.S.C. §§ 1341, 1343, whether or not the scheme succeeds and therefore causes injury."  *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663 (7th Cir. 2004) (Posner, J.).  Thus, in *Carnegie*, the Seventh Circuit granted issue certification in a RICO class action, because "the question whether RICO was violated can be separated from the question whether particular intended victims were injured, and thus can . . . be resolved in a single proceeding with the issue of injury parceled out to satellite proceedings, as is frequently done in class action tort litigation."  *Id.*

By certifying an issue class as to Defendants' liability, the Court may address the following core questions, as to which predominance is clearly met:

- For the putative class's RICO claim, these core issues include (1) whether the Pinnacle Enterprise identified in the Complaint is an enterprise within the meaning of 18 U.S.C. § 1961(4); (2) whether the Defendants conducted the Pinnacle Enterprise; and (3) whether the Defendants engaged in a pattern of racketeering activity, by committing two predicate acts of mail fraud, extortion, or violation of the National Property Act.

- For the NYCPA claim, for each putative class member, liability can be established through issues common to the class, or whether the defendants engaged in a misleading or deceptive scheme targeting consumers.

In this context, certifying a liability class would have the beneficial effects both of preserving judicial economy and promoting the rights of the parties. *See In re Copley Pharm., Inc.*, 161 F.R.D. 456, 461 (D. Wyo. 1995). By first addressing liability, the court maintains considerable discretion to adopt an appropriate case management strategy as the case progresses. Options that the Second Circuit has endorsed to deal with issues regarding individual damages include "appointing a magistrate judge or special master to preside over individual damages proceedings; [] decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; [] creating subclasses; or [] altering or amending the class." *In re Visa Check*, 280 F.3d at 141.

In sum, given the large number of class members, the harm suffered by each member, and the numerous key issues that may be resolved on proof common to the entire class, regardless of whether the Court certifies the class on the merits or solely on the key issue, class certification is appropriate. Accordingly, the Named Plaintiffs request that, at a minimum, this Court grant issue certification as to Defendants' liability for violation of RICO and the NYCPA, leaving aside for now the question of injury to each plaintiff.

23

## CONCLUSION

For the foregoing reasons, the Named Plaintiffs request that the Court grant their motion for class certification and certify the proposed plaintiff class, appoint the Named Plaintiffs as class representatives, appoint counsel for the Named Plaintiffs as class counsel, and direct that notice and opt-out rights be provided to members of the class.

Dated:  June 30, 2009                      Respectfully submitted,


                                           By: /s/ Richard F. Levy

                                                Richard F. Levy
                                                Luke McLoughlin
                                                JENNER & BLOCK LLP
                                                919 Third Avenue, 37th Floor
                                                New York, NY  10022-3908
                                                (212) 891-1600
                                                (212) 891-1699 facsimile
                                                *Counsel for Plaintiffs*

Of Counsel:
Ross B. Bricker
Melissa L. Dickey
Stephen Kang Kinslow
Shelley Dufford
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
Telephone:      (312) 222-9350
Facsimile:      (312) 527-0484

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
CHARRONS et al.,                          )
                                          )       No. 1:07-cv-6316-CM
                        Plaintiffs,       )
                                          )
        v.                                )
                                          )
PINNACLE GROUP NY LLC and                 )
JOEL WIENER,                              )
                                          )
                        Defendants.       )
_____)


## EXHIBITS TO MEMORANDUM IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION


                                    JENNER & BLOCK LLP
                                    919 Third Avenue
                                    37th Floor
                                    New York, New York 10022-3908
                                    Telephone:     (212) 891-1600
                                    Facsimile:     (212) 891-1699

                                    *Attorneys for Plaintiffs*

*Of counsel:*
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Telephone:     (312) 222-9350
Facsimile:     (312) 527-0484

June 30, 2009

**Description**                                                                                                              **No.**

Majorie Charron Declaration & Supporting Exhibits .................................................................1

Theodore Charron Declaration & Supporting Exhibits ............................................................2

Anthony Casanovas Declaration & Supporting Exhibits..........................................................3

Karen Flannagan Declaration & Supporting Exhibits ..............................................................4

Andrews Mares-Muro Declaration & Supporting Exhibits ......................................................5

Raymond Andrew Stahl-David Declaration & Supporting Exhibits.........................................6

Russell Taylor Declaration & Supporting Exhibits .................................................................7

Diane Trummer Declaration & Supporting Exhibits ...............................................................8

Kim Powell Declaration.............................................................................................................9

Richard Levy Declaration ........................................................................................................10

Ross Bricker Declaration .........................................................................................................11

Luke McLoughlin Declaration.................................................................................................12

    06.09.09 A. Kaplan Deposition Transcript ...........................................................12A

    Assurance of Discontinuance...................................................................................12B

    04.17.2008 Pinnacle Group Supplemental Report..................................................12C

    09.07.2007 DHCR Letter re Rent Stabilization ....................................................12D

    09.22.2007 Email From J. Satiah To J. Wiener & M. Weinberger .......................12E

    06.06.07 Email From J. Wiener to K. Fisher.........................................................12F

    04.18.007 Worker Order Re Placement Of A "Covert" Camera .........................12G

    Relevant Pages from the 706 Riverside Drive Offering Plan ................................12H

    09.18.2007 Manager Declaration (PNNC0122008) .............................................12I

    09.03.06 NY Times Article....................................................................................12J

Joyetta Satiah Declaration................................................................................................................13

3