**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| CHARRONS et al., | ) | |
| | ) | No. 1:07-cv-6316-CM |
| Plaintiffs, | ) | (CM) (RLE) |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PINNACLE GROUP NY LLC and | ) | |
| JOEL WIENER, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

Richard F. Levy
Kenyanna M. Scott
Brian J. Fischer
John J. Molenda
Luke P. McLoughlin
Eddie A. Jauregui
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY  10022-3908
(212) 891-1600
(212) 891-1699 facsimile

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Introduction.................................................................................................................1

Background ................................................................................................................3

The Litigation............................................................................................................3

Settlement Discussions .............................................................................................5

The Settlement Agreement ........................................................................................6

    1.  Satisfaction by Defendants of Class Member Claims.......................................6

    2.  Agreement by Defendants to Pay Legal All Costs in the Claims Process..........7

    3.  Agreement by Defendants to Pay For Tenant Assistance...................................7

    4.  Agreement by Defendants to Pay and Staff a Tenant Hotline. .........................7

    5.  Agreement by Defendants to Conduct Lease Audit. ........................................7

    6.  Agreement by Defendants to Eliminate Blacklisting........................................8

    7.  Agreement by Defendants to Protocols Governing Future Relations With Tenants. ..........8

    8.  Agreement by Defendants to Pay Judicially Approved Legal Fees. ..................9

    9.  Agreement by Defendants to Two-Year Injunction..........................................9

Argument ..................................................................................................................9

Preliminary Approval Is Appropriate Because the Settlement Agreement is Fair, Reasonable, and Adequate. ................................................................................................9

    1.  Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1). .....11

    2.  The Reaction of the Class (*Grinnell* Factor 2)................................................13

    3.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3). ................................................16

    4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 And 5).......17

    5.  Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6).....................18

    6.  Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7). ....................18

7.   The Settlement is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)...........................................................................18

CONCLUSION.......................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Banyai v. Mazur*,
No. 00 Civ. 9806, 2004 U.S. Dist. LEXIS 17572 (S.D.N.Y. Sept. 1, 2004) ..........................16

*Buyers & Renters United to Save Harlem v. Pinnacle Group NY LLC*,
575 F. Supp. 2d 499 (S.D.N.Y., 2008)......................................................................................4

*Cagan v. Anchor Sav. Bank FSB*,
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ...............................................19

*Charrons v. Pinnacle Group NY LLC*,
269 F.R.D. 221 (S.D.N.Y. 2010) ...........................................................................................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).............................................................................................11, 19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)......................................................................................................11

*Danieli v. IBM Corp.*,
No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ..........................................20

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).....................................................................................18, 19

*Gilliam v. Addicts Rehab. Center Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. March 24, 2008)..........................................19

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)...........................................................................11, 16, 17

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................................9, 10

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................17

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980)....................................................................................................10

*Johnson v. Brennan*,
No. 10-CV-4712, 2011 U.S. Dist. LEXIS 52713 (S.D.N.Y. May 17, 2011) ........................10

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)....................................................................................................13

iii

*Saylor v. Lindsley,*
    456 F.2d 896 (2d Cir. 1972)....................................................................................13

*Wal-Mart Stores, Inc. v.Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)................................................................................9, 11

*Wilson v. Car Land Diagnostics Ctr., Inc.,*
    No. 99 Civ. 9570, 2001 U.S. Dist. LEXIS 19760 (S.D.N.Y. 2001) ..................20, 21

## STATUTES

18 U.S.C. § 1962(c) ("RICO")..........................................................................................3

New York's Consumer Protection Act, N.Y. Gen. Bus. L. § 349 ("NYCPA") ............................3

NYCPA ...........................................................................................................................4, 17

RICO ..............................................................................................................................4, 17

## OTHER AUTHORITIES

Alba Conte & Herbert Newberg, 4 *Newberg on Class Actions* (4th ed. 2002) ..............................9

Fed. R. Civ. P. 12(b)(6).................................................................................................18

Fed. R. Civ. P. 23(e)(2)................................................................................................10

Fed. R. Civ. P. 23(f)...................................................................................................5, 18

Rule 23(e) of the Federal Rules of Civil Procedure........................................................9

## INTRODUCTION

On August 8, 2011, Court-appointed Class Counsel, Jenner & Block, LLP, by its Partner, Richard F. Levy, acting on behalf of the members of the Liability Class and Injunctive Class certified by this Court in its April 27, 2010 Order[1] ("Plaintiffs"), and Defendants, the Pinnacle Group NY LLC and Joel Wiener, entered into a Proposed Settlement Agreement ("Settlement" or "Settlement Agreement") to resolve all issues raised by the Second Amended Complaint filed in *Charrons et al. v. Pinnacle Group NY LLC, et al.,* 07-6316 ("the Action") and to conclude this long-running case.  Plaintiffs submit this Memorandum of Law in support of their Motion for Preliminary Approval of the Settlement.  The Settlement is attached as Exhibit A.

Class Counsel believes that the Settlement is in the best interests of the class members, and provides a remedy that is likely far superior to the best results that could be obtained after litigation.  Andrew Scherer, a noted New York expert on New York Landlord-Tenant law has provided an affirmation, attached as Exhibit B, in which he opines that the Settlement is in the best interests of the members of the classes.

The Settlement establishes a comprehensive, multi-faceted claims-administration process (with no aggregate cap on Defendants' overall liability for damages, nor on their liability for damages to any individual class member) that provides prompt relief to the two certified tenant classes.  Class members will receive redress for (1) past rent overcharges, (2) harassment and meritless evictions, (3) meritless billings and eviction proceedings related to alleged nonpayment of rent, and (4) interference with occupancy rights through meritless and unduly burdensome queries regarding matters such as succession rights, primary residence, roommates and

---

[1] At the date of this filing, the five Class Representatives appointed in this Court's April 27, 2010 Order have declined to support the Settlement.  A detailed description of efforts to obtain their agreement, and the legal basis for proceeding without their joinder, is set forth at pages 13-16, below.

subletting.  In addition, the Settlement provides agreed-upon protocols that will govern

Defendants' relations with its tenants for two years and provides relief for violations of those

protocols, should they occur.

Further, Defendants have agreed to pay $2.5 million to legal aid and community groups

for tenant assistance and outreach, and Defendants will pay all costs incurred in the claims

process.

In addition to this substantial relief, the Settlement provides significant equitable and

systemic relief designed to ensure that current tenants living in Defendants' 20,000 units enjoy

habitable premises and receive fair treatment from their landlord, consistent and in accordance

with applicable New York State and New York City Rent Control and Rent Stabilization laws, as

well as other New York housing laws. Defendants will pay costs necessary to staff a helpline,

establish modern communication systems with tenants, and maintain electronic records of

compliance with protocols that are required by the Settlement Agreement.  Defendants will also

conduct a lease audit whereby an independent Certified Public Accountant will determine

whether rents set by Defendants between January 1, 2008 and April 27, 2010 are in compliance

with applicable rent stabilization and rent control laws.  Defendants will pay for all costs

associated with the audit of select leases held by Defendants' tenants.

Further, Defendants agree to follow detailed protocols and procedures regarding (a)

setting and implementing initial rents and rent increases, (b) evaluating potential nonpayment

and holdover proceedings, (c) recording and responding to requests for repairs and services, (d)

providing a tenant helpline, and (e) training Defendants' staff.   Defendants will maintain

electronic records of all such proceedings.  The Claims Administrator will be empowered to

award damages to tenants for noncompliance with the protocols by Pinnacle based on claims submitted by tenants.

Finally, the Settlement authorizes the entry of an injunction upon the Court's approval of the Settlement that will remain in force for two years. This injunction provides an important means of enforcing the terms of this Settlement.

The Settlement is the result of arm's-length negotiations spanning more than a year. Prior to reaching the Settlement, the parties exchanged thousands of pages of documents, deposed witnesses, conducted third-party discovery, and briefed numerous issues in this hard-fought case. As a result, the parties assessed the strengths and weaknesses of their positions and negotiated the Settlement based on their educated assessment of the case. The terms of the Settlement are fair, reasonable, and adequate, and clearly fall within the range of possible approval. Accordingly, Plaintiffs request that the Court grant the Motion and enter an Order preliminarily approving the Settlement.

## BACKGROUND

### THE LITIGATION

Four years ago, Plaintiffs brought suit pursuant to the federal civil racketeering statute, 18 U.S.C. § 1962(c) ("RICO"), and New York's Consumer Protection Act, N.Y. Gen. Bus. L. § 349 ("NYCPA"), alleging that Defendants Pinnacle Group NY LLC ("Pinnacle") and its CEO Joel Wiener, acting in concert with others (collectively, the "Pinnacle Enterprise"), acquired hundreds of rent-regulated buildings containing more than 22,000 individual apartments during the real estate boom between 1999 and 2006, and then engaged in fraud and harassment to drive tenants out of their apartments. Plaintiffs alleged that the Pinnacle Enterprise thereby sought to (1) circumvent New York law by deregulating the apartments and obtaining rents in excess of those

legally permitted, and (2) sell the illegally deregulated apartments in the then-booming condominium market.

Pinnacle allegedly carried out these predatory activities by (1) misrepresenting the legally chargeable rent and the status and cost of renovations; (2) misrepresenting and refusing to acknowledge tenants' succession rights; (3) filing meritless eviction proceedings (more than 5,000 during a 29-month period); (4) engaging in other harassing conduct; and (5) providing false information to government agencies.

Plaintiffs commenced this Action on July 11, 2007.  Since that time, there have been several intense legal battles between the two sides, as Defendants have vigorously contested this Action.

*First*, Defendants moved to dismiss the Second Amended Complaint ("SAC"), arguing, among other things, that Defendants' conduct, even if proven, would not establish a RICO or NYCPA violation, and that the claims in the SAC were not appropriate for federal court jurisdiction.  On September 5, 2008, Judge McMahon denied defendants' Motion to Dismiss, and in a 24-page opinion rejected Defendants' arguments, finding that the factual allegations of the SAC stated a cause of action under RICO and the NYCPA.  *Buyers & Renters United to Save Harlem v. Pinnacle Group NY LLC*, 575 F. Supp. 2d 499 (S.D.N.Y., 2008).  (An organizational plaintiff was dismissed on standing grounds.)

*Second*, Plaintiffs and Defendants took substantial discovery (including the production of tens of thousands of pages of documents and 13 depositions), and Plaintiffs moved for class certification.  Defendants forcefully contended that the allegations in the Action were not susceptible to class treatment, and urged that the Court refuse to certify the two broad tenant classes sought by Plaintiffs.  On April 27, 2010, the Court certified two classes (both of which

were narrower than originally sought by Plaintiffs).  Judge McMahon ordered the certification of (1) an injunctive class comprised of current rent-regulated tenants, and (2) a liability class comprised of all rent-regulated tenants in Defendants' New York City buildings between July 11, 2004 and April 27, 2010.

*Third*, after the order certifying the two classes, Defendants petitioned for leave pursuant to Fed. R. Civ. P. 23(f) to immediately challenge the class certification ruling in the Second Circuit.  After extensive briefing by both sides to the Second Circuit, the Second Circuit denied the petition.

## SETTLEMENT DISCUSSIONS

Following the Second Circuit's ruling, the parties began to discuss an overall settlement. As noted, those negotiations occurred after substantial discovery and extended briefing and motion practice on issues in the Action.  After numerous discussions, the parties submitted confidential settlement proposals for the consideration of Magistrate Judge Ronald Ellis, who had been designated by the Court to mediate and supervise the progress of settlement.  The Class Representatives attended two mediation conferences with Judge Ellis, and lead counsel attended two additional mediation conferences with Judge Ellis (including a six-hour continuous session) in which the parties' differences were narrowed.  In addition, since the Class Certification ruling, (1) Class Representatives and Class Counsel met in person at least nine times, for extended discussions, as settlement negotiations progressed,[2] and (2) Class Counsel had innumerable telephone conferences with several individual Class Representatives.

---

[2]  1.  5/16/10 Meeting with community residents
  2.  9/28/10 Group dinner meeting with Class Representatives
  3.  9/30/10 Follow up meeting with Class Representatives
  4.  10/6/10 Pre-mediation group conference call with Class Representatives
  5.  10/7/10 Mediation before Judge Ellis with Class Representatives
  6.  3/16/11 Group dinner meeting with Class Representatives

After lengthy negotiations involving numerous meetings in person and by phone and the exchange of dozens of drafts over a period of months, a Settlement Agreement was reached.

## THE SETTLEMENT AGREEMENT

The Settlement Agreement, which is attached as Exhibit A, establishes the following:

**1.    Satisfaction by Defendants of Class Member Claims.**

The Defendants have agreed to satisfy claims approved by the Claims Administrator -- *with no overall cap on  Defendants' aggregate liability and no cap on their liability to individual Class members* -- for (1) past rent overcharges, (2) harassment and meritless evictions, (3) meritless billings and eviction proceedings related to alleged nonpayment of rent, (4) interference with occupancy rights through meritless and unduly burdensome queries regarding matters such as succession rights, primary residence, roommates and subletting, and (5) future violations, should they occur, of agreed-upon protocols that will govern Defendants' relations with their tenants for two years.

Claims will be submitted to the Claims Administrator on a simplified "Notice of Claim" form.   The Claims Administrator will not be required to apply the Rules of Evidence and her decisions will be final and non-appealable.  Defendants will pay double the overcharge plus interest if overcharge is deemed "willful," and *willfulness will be presumed with the burden on Defendants to overcome that presumption*.  Defendants will not be responsible for rent overcharges for rents that were set before beginning of class period (July 11, 2004) or by a prior owner.

---

7. 5/3/11 Group afternoon meeting with Class Representatives
8. 5/17/11 Group afternoon meeting with Class Representatives
9. 6/7/11 Group afternoon meeting with Class Representatives

Claims for harassment will be awarded the higher of actual damages (with no limit) or $500 if the Defendants' conduct was minimal, $1000 if the Defendants' conduct was moderate, and $1500 if the Defendants' conduct was serious. These damages are available whether or not there is provable economic loss.

**2.      Agreement by Defendants to Pay Legal All Costs in the Claims Process.**

Defendants will pay all costs incurred in the claims process for the Claims Administrator and administration, as well as all costs associated with a review by an independent Lease Auditor (described further *infra*) of certain leases to determine whether rent overcharges occurred.

**3.      Agreement by Defendants to Pay For Tenant Assistance.**

In addition, **t**he Defendants will pay $2.5 million for tenant assistance. Up to $2,250,000 will be paid to the Legal Aid Society and Legal Services NYC (to be administered by the New York Bar Foundation) for legal and related assistance in implementing the terms of the Settlement Agreement; $250,000 will be paid to five community organization for tenant assistance including but not limited to outreach and education of Pinnacle tenants regarding the terms of the Settlement Agreement, and in the event that funds remain after the two-year injunction period, the remainder will be distributed to nonprofit groups in New York City to assist tenants.

**4.      Agreement by Defendants to Pay and Staff a Tenant Hotline.**

Defendants will pay costs necessary to staff a helpline, establish modern communication systems with tenants and maintain electronic records of compliance with protocols that are required by the Settlement Agreement.

**5.      Agreement by Defendants to Conduct Lease Audit.**

An independent Certified Public Accountant will determine whether rents set by Defendants between January 1, 2008 and April 27, 2010 are in compliance with applicable rent

stabilization and rent control laws.  The lease auditor will review a random sample of 25% all

new leases during this period.  If the lease auditor determines that 15% or more of the selected

sample shows an overcharge of $10 or more per month, the auditor will review 100% of such

leases.  Defendants will pay the entire cost of this audit.  If the lease audit shows violations of

applicable law resulting in overcharges, Defendants will (in addition to any damages that may be

awarded by the Claims Administrator) adjust rents to legally permissible levels.

> **6.     Agreement by Defendants to Eliminate Blacklisting.**

To eliminate and prevent blacklisting of class members by other landlords, if the Claims

Administrator finds that a claimant was subject to a meritless eviction proceeding, Defendants

will sign a stipulation, agreeing to dismiss the underlying eviction proceeding, and will provide

the tenant with a letter authorizing the tenant to deliver a copy of the stipulation to any tenant

screening bureau or tenant reporting agency that has a record of the proceeding in its database

and to any prospective landlord of an apartment that tenant proposes to rent.

> **7.     Agreement by Defendants to Protocols Governing Future Relations With Tenants.**

Defendants agree to detailed protocols and procedures regarding (a) setting and

implementing initial rents and rent increases, (b) evaluating potential nonpayment and holdover

proceedings, (c) recording and responding to requests for repairs and services, (d) providing a

tenant helpline and (e) training Defendants' staff.  Defendants will maintain electronic records of

all such proceedings.  The Claims Administrator will monitor Pinnacle's compliance with the

protocols and procedures and will be empowered to award damages to tenants for

noncompliance with the protocols by Pinnacle based on claims submitted by tenants.

8.      **Agreement by Defendants to Pay Judicially Approved Legal Fees.**

Defendants will provide up to $1.25 million for legal fees to Class Counsel if and to the

extent awarded by the Court, and will also provide up to $200,000 to reimburse Class Counsel

for documented out of pocket expenses directly related to this case.  The amount of Fees and

expenses awarded to Class Counsel will not reduce the benefits to the class members under the

Settlement.

9.      **Agreement by Defendants to Two-Year Injunction.**

An injunction will be entered upon the Court's approval of the class Settlement, and will

remain in force for two years.  If Class Counsel believes that Defendants have demonstrated a

pattern of conduct that fails to comply materially with the Protocols or other terms of the

Settlement Agreement, Class Counsel may apply to the Claims Administrator to require

defendants to remedy the violations.  Non-compliance shall be presumed willful.  If the Claims

Administrator certifies that the remedies set are ineffective at enforcing compliance with the

injunction, Class Counsel may then apply to the United States District Court to enforce the

injunction and for such other remedies as the Court may deem appropriate.

## ARGUMENT

**Preliminary Approval Is Appropriate Because the Settlement Agreement is Fair, Reasonable, and Adequate.**

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships*

*Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also* Alba Conte

& Herbert Newberg, 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of

complex litigation is encouraged by the courts and favored by public policy.").  Under Rule

23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action

settlement if the court determines that the settlement is "fair, reasonable, and adequate."  Fed. R.

Civ. P. 23(e)(2).  "Preliminary approval of a proposed settlement is the first in a two-step process

required before a class action may be settled."  *In re NASDAQ Market-Makers Antitrust Litig.*,

176 F.R.D. 99, 102 (S.D.N.Y. 1997).  First, the Court considers whether the fairness and

adequacy of the settlement warrants preliminary approval, before the second step of providing

notice to the proposed class and the scheduling of a formal settlement hearing.  *Id.*; *see also*

*Johnson v. Brennan*, No. 10-CV-4712, 2011 U.S. Dist. LEXIS 52713, at *3-4 (S.D.N.Y. May 17,

2011) (McMahon, J.) (granting preliminary approval where settlement "is within the range of

possible settlement approval," and was the "result of extensive, arm's length negotiations by

counsel"); Conte & Newberg, *supra*, § 11.25 ("If the preliminary evaluation of the proposed

settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range

of possible approval," the court should permit notice of the settlement to be sent to class

members) (*quoting Manual for Complex Litigation* § 30.41 (3d ed. 1995)).

Plaintiffs ask the Court to conduct the initial review of the Settlement and find that it is

within the range of fairness sufficient to justify notice and a fairness hearing.  Preliminary

approval of a settlement is *not* a decision about the merits of the settlement or the case itself.

Rather, the Court limits itself to determining whether the settlement agreement is sufficient to

justify public notice and a hearing, at which time the class members and others may present

arguments and evidence for or against the proposed agreement.  Because preliminary approval is

a provisional step that merely begins the settlement approval process, any doubts are resolved in

favor of preliminary approval.  *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir.

1980) (preliminary approval "is at most a determination that there is what might be termed

10

'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness").

In the Second Circuit, courts look to a non-exhaustive list of factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and more recently applied in *Wal-Mart Stores, Inc. v.Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005), to consider in reviewing a settlement proposal.  The *Grinnell* factors are helpful in evaluating this motion.  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to summary judgment proceedings or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This present case is no exception.  While no precise number of affected class members can be determined at this point, it should be noted that Defendants own or owned 22,000 apartment units and the certified class period is approximately five years so the turnover

11

in rental tenants would increase the potential size of the class – but that number would then be reduced because not all of Pinnacle's tenants could demonstrate harm.

Thus, trial on the merits would likely be protracted and expensive, would involve highly complex legal and factual issues related to liability and damages or other relief, and would involve substantial uncertainties, delays, and other risks inherent in litigation, with the possibility of limited to no recovery for Plaintiff Classes in the end.

If the Settlement Agreement is not approved, additional costly and time-consuming litigation would ensue. Although there has been significant discovery to date, additional discovery would be required to establish liability and damages, including depositions of class members, Defendants, and Defendants' employees, managers and partners. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Individual trials on damages would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This Settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner and provides for essentially the same type of relief that Plaintiffs would obtain if they succeeded after lengthy and costly litigation.

Further, if the Settlement is not approved, additional litigation and delay would result from anticipated summary judgment motions, anticipated expert testimony, and trial. Any such decision reached on these issues would probably lead to an appeal. The continuation of the litigation in this matter would not likely result in an increased benefit to the class members, because the claims administration process is designed to provide a more timely and less costly mechanism of redress than individual federal damages trials. More litigation instead would lead

to a substantial expenditure in costs by both Parties.  Should this matter proceed and Plaintiffs prevail at a trial, Defendants will no doubt appeal to the Second Circuit resulting in further burden, expense, and delay to the parties.

Perhaps most importantly, Plaintiffs' action was intended not only to obtain redress for injuries but to restrain and prevent Defendants from engaging in the practices that adversely affect the class members.  The Settlement Agreement achieves this significant goal.  The Settlement requires that Defendants adhere to a set of protocols and implement a monitoring system, and their compliance will be insured by an injunction.  Plaintiffs' action has resulted in Defendants agreeing to a lease audit and to a two-year injunction.

### 2.      The Reaction of the Class (*Grinnell* Factor 2).

The reaction of the more than 20,000 class members will be judged at the fairness hearing.  At this time, and despite their continuous input into the crafting of the Settlement Agreement, the five Class Representatives have not been willing to support the Settlement.

The principal reason given for the Class Representatives' failure to support the Settlement is the omission of a "fund" from which tenant awards would be paid.  As opposed to the Settlement Agreement's provision for uncapped liability by Defendants, the Class Representatives would prefer that the Settlement direct that awards be paid from a pre-arranged fund in the amount of approximately $15 million dollars, and that any remaining balance in the fund be then given to community organizations, including those in which they participate.

In its judgment, Class Counsel believes that the Settlement Agreement as drafted meets the needs of the class members through the damages mechanism set forth therein.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995) (noting that class counsel cannot "allow decisions on behalf of the class to rest exclusively with the named plaintiffs") (citation and quotation omitted); *cf. Saylor v. Lindsley*, 456 F.2d 896, 899-900 (2d

Cir. 1972) ("[A]ssent of the plaintiff (or plaintiffs) who brought a derivative stockholder's action is not essential to a settlement; a contrary view would put too much power . . . to thwart a result that is in the best interests of the corporation and its stockholders.").  The absence of a pre-arranged fund (which would not be obtainable following a successful jury verdict, in any event) is not reason to scuttle a Settlement Agreement that will bring dramatic monetary and systemic relief to thousands of tenants.

Following the class certification ruling, Class Representatives and Class Counsel met at least nine times for extended discussions about different settlement options.  Class Counsel has adopted numerous recommendations made by the Class Representatives in the settlement discussions with Defendants, and many such recommendations are reflected in the Settlement Agreement.  However, a principal issue for the Class Representatives is the absence of a settlement fund – as large as $15 million in the view of certain Class Representatives.  Some of the Class Representatives have also objected to the failure to include in the Settlement Pinnacle tenants whose rents were set by a prior Landlord before Pinnacle acquired the buildings in which they reside.   Defendants have been unwilling to include in the Settlement damages resulting from outside the class period and/or a prior Landlord's action.

Class Counsel has requested that Defendants agree to a pre-arranged fund, but Defendants have not yielded on this point, as there is little question that Defendants will be able to satisfy all judgments awarded by the Claims Administrator (making the existence of a pre-arranged fund unnecessary).  Defendants will, during the hearing on the Motion for Preliminary Approval, present information to the Magistrate Judge for *in camera* review, and to Class Counsel on an attorneys' eyes only basis, sufficient to demonstrate that Defendants have an annual

14

income and net worth sufficient to meet their potential liabilities under this Agreement.

Defendants will also make representations and warranties in a form similar to the form accepted

by Defendants' federally insured banks for representations with respect to the accuracy and

completeness of financial statements submitted for the purpose of obtaining credit.  Class

Counsel expects to be able to conclude that the information submitted to the Magistrate Judge

and counsel will demonstrate that Defendants have the resources to satisfy their full liability to

the class members  to pay the costs of the claims administration process, and to provide the

additional $2.5 million from Defendants for legal assistance and tenant outreach.

Nevertheless, the Class Representatives to date have said that they will withhold their

approval at this time so long as the fund is not included in the Settlement Agreement.  This is

despite the fact that if the case were to proceed to trial and Plaintiffs were to win, each individual

class member would be required to undergo an individual damages assessment. This Court has

already noted that

> Rule 23 allows district courts to devise-imaginative solutions to problems created
> by the presence in a class action litigation of individual damages issues. The
> Second Circuit has endorsed several such solutions, including: appointing a
> magistrate judge or special master to preside over individual damages
> proceedings, decertifying the class after the liability trial and providing notice to
> class members concerning how they may proceed to prove damages, creating
> subclasses, or altering or amending the class.

*Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 243 (S.D.N.Y. 2010) (citations and

quotations omitted).  In other words, there is no legal authority for recovering post-verdict a

lump-sum "fund" amount from which are deducted class member awards and (later) community

organization payments.

The parties' negotiations have arrived at a comprehensive damages mechanism

(described more fully *supra*) that provides for actual damages and meaningful systematic relief

for tenants, as well as millions of dollars for community organizations.  In its professional

15

judgment, Class Counsel believes this to be an overwhelmingly positive settlement, and that the Class Representatives' objections are best resolved at the Fairness Hearing that will follow notice to class members. *See Banyai v. Mazur*, No. 00 Civ. 9806, 2004 U.S. Dist. LEXIS 17572 at *3 (S.D.N.Y. Sept. 1, 2004) ("Insofar as the representative plaintiffs are concerned with the adequacy or fairness of the proposed partial settlement in this action . . . they are welcome to voice those concerns directly or through their counsel at any hearing pertaining to the merits of that proposed partial settlement held pursuant to Fed. R. Civ. P. 23.").

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The Parties have completed enough discovery to recommend settlement. "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *See In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alteration and internal quotation marks omitted). The parties' discovery here meets this standard. Plaintiffs obtained tens of thousands of pages from Defendants, including rental histories, leases, invoices to tenants, internal emails regarding Defendants' compliance with a government audit of their records, and many other documents. This was in addition to the voluminous information Plaintiffs gathered from class members (through town-hall meetings and interviews) about the claims and potential damages.

This litigation began over four years ago and settlement only began to move forward after several hard-fought legal battles in the District Court and in the Second Circuit, followed by magistrate-supervised mediation and negotiation. The parties met for day-long sessions in which

they engaged in a vigorous exchange regarding their respective claims and defenses.  The parties

are fully informed of their own positions, and of those held by their adversary.

> ### 4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 And 5).

Plaintiffs' case is strong, but is not without risk.  While Plaintiffs contend that they could

ultimately establish Defendants' liability, that is not guaranteed, because "[l]itigation inherently

involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  In

considering the possibility of establishing liability and damages through a trial on the merits (and

mini-trials on individual damages), the Court "must only weigh the likelihood of success by the

plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank

Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164

(S.D.N.Y. 1999)) (internal quotation marks omitted).

Trying a class-action NYCPA and civil RICO case on the merits would require

significant factual development and favorable outcomes (at trial and on appeal), both of which

are inherently uncertain and lengthy.  The Settlement eliminates this uncertainty and provides for

much the same relief as plaintiffs could obtain after successful litigation.  This factor therefore

weighs in favor of preliminary approval.

As to damages, the Court has already in its class-certification decision made clear that

damages are to be determined on an individualized basis (i.e. through mini-trials).  This

multiplies the potential difficulties Plaintiffs may have in marshalling evidence necessary to

recover for overcharges and harassment of class members.  The claims process incorporated in

the settlement agreement provides individual relief without the strictures of the Federal Rules of

Evidence, without lengthy appeals, and without requiring individual tenants to appear in federal

court.  The claims process also sets forth that certain presumptions regarding Defendants'

willfulness in overcharges are to be presumed (and are for the Defendants to rebut).  All of these factors indicate that this Settlement approximates the benefits of a trial on the merits while avoiding the downside risks of full-blown class-action litigation.

### 5.      Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6).

Plaintiffs obtained class certification for two classes on April 27, 2010.  Given Defendants' vigorous motion practice in this case, it is possible that a motion to decertify might well be forthcoming.[3]  While Plaintiffs are confident that any such motion would not succeed, it would add considerable delay to the final resolution of this matter.

### 6.      Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted).  The Settlement provides class members with greater and more prompt relief that they would receive at the conclusion – whenever that might occur – of a litigation process, and so the Defendants' ability to withstand a greater judgment does not weigh against the fairness of the Settlement.

### 7.      The Settlement is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The Settlement Agreement provides relief for thousands of tenants who now will be able to obtain redress for past injuries and receive the systemic benefits provided by the protocols, monitoring, lease audit, and injunctive relief.

---

[3]  Defendants have filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the Action, strong opposition to Plaintiffs' motion for class certification, and a Rule 23(f) motion to the Court of Appeals for the Second Circuit following class certification.  All of these motions were unsuccessful, but delayed this matter for more than three years.

This relief is uncapped in the aggregate and for individual class members and designed to provide the relief individual tenants would receive in individual damages hearings, without the costs, formalities, and potential delays inherent in federal court proceedings.  The Settlement Agreement also institutes first-of-its kind monitoring of Defendants and injunctive relief.  While theoretically recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal, there is no guarantee of that.  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is more than reasonable.

> "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*Grinnell Corp.*, 495 F.2d at 455 n.2; *see also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Center Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. March 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).  Here, the claims process

provides for reliable relief, as opposed to the prospect of a speculative payment years down the road.

In addition, the Settlement Agreement's injunctive relief and monitoring mechanisms will ensure that Defendants change the way they operate their business so that unlawful actions toward tenants do not continue in the future.  Defendants have agreed to make significant programmatic changes to improve treatment of tenants going forward.  Given the substantial benefits afforded to class members, there are no "obvious defects" – or any genuine deficiencies at all – in the Settlement Agreement that would justify denying preliminary approval.  *See Danieli v. IBM Corp.*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

Finally, the Settlement Agreement provides for the payment to Class Counsel of reasonable attorneys' fees if awarded by the Court and costs.  The parties have agreed that Class Counsel may request an amount of up to $1.25 million in legal costs, an amount that represents approximately 25% of the regular rate value of the attorney time spent on the case over four years.  Plaintiffs' counsel has voluntarily agreed to request an amount significantly less than it could have sought under New York law so as to ensure the most immediate economic benefits are directed to the class members and legal assistance organizations for tenants.  In addition, Class Counsel will be entitled to up to $200,000 of out of pocket expense reimbursement.

As will be shown in a fee petition to be filed prior to the giving of notice, Class Counsel's fee request is eminently reasonable and serves the aims of New York's consumer protection statute.  *See Wilson v. Car Land Diagnostics Ctr., Inc*., No. 99 Civ. 9570, 2001 U.S. Dist. LEXIS

19760, at *8 (S.D.N.Y. 2001) (Lynch, J.) ("New York has specifically provided for attorney's fees in this consumer protection statute [§349], in order to encourage and enable consumers to bring lawsuits to vindicate their rights."); *id.* at *5 (awarding fees amounting to five times the damages awarded).  Here, Defendants have agreed to (among others) uncapped aggregate and individual liability in the claims-administration process, a panoply of programmatic and systemic changes (subject to monitoring and enforcement by the magistrate judge), and $2.5 million in payments legal aid and community groups for tenant assistance and outreach.  Given the length of this litigation, the significant efforts expended by counsel, and the favorable results they obtained for their clients in securing both monetary and equitable relief, counsel's request for 25% of fees does not provide excessive compensation to Class Counsel.

The Settlement Agreement does not grant preferential treatment to the Class Representatives or any segment of the Settlement Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion for Preliminary Approval.

Dated: August 11, 2011
       New York, New York

Respectfully submitted,

By: _Richard Levy_

Richard F. Levy
Kenyanna M. Scott
Brian J. Fischer
John J. Molenda
Luke P. McLoughlin
Eddie A. Jauregui
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY  10022-3908
(212) 891-1600
(212) 891-1699 facsimile

*Counsel for Plaintiffs*

21