# Charrons, et al. v. Pinnacle Group
# Case No. 07 Civ. 6316 (CM)

# EXHIBIT A

## to
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**EXHIBIT A: Formal Settlement Agreement (with Exhibits A – G)**

A.     Long Form Notice

B.     Short Form Notice

C.     Settlement Protocols (with Exhibits A – D)

      A.     Format for Memo to Legal Dept. Setting Forth Basis for Non-Payment

      B.     Format for General Letter of Concern – Holdover

      C.     Format for Non-Attendance Letter

      D.     Task Form

D.     Notice of Claim

E.     Notice of Approval

F.     Letter of Settlement Protocols

G.     Stipulation

# FORMAL SETTLEMENT AGREEMENT

FORMAL SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

I.      RECITALS................................................................................1

II.     DEFINITIONS.........................................................................5

III.    PRELIMINARY APPROVAL AND NOTICE ORDER ..........................8

IV.     FAIRNESS HEARING AND FINAL ORDER AND JUDGEMENT...............10

V.      CLASS NOTICE...................................................................12

VI.     APPOINTMENT OF CLAIMS ADMINISTRATOR................................13

VII.    DEVELOPMENT OF INTERNAL PROTOCOLS...................................15

VIII.   MONITORING AND IMPLEMENTATION OF PROTOCOLS...................17

IX.     PROVISION OF TENANT ASSISTANCE AND SUPPORT......................19

X.      CLAIMS PROCESS.................................................................22

XI.     INJUNCTION.................................................................... 29

XII.    WAIVER AND RELEASE OF CLAIMS.............................................30

XIII.   MISCELLANEOUS..................................................................31

EXHIBITS TO FORMAL SETTLEMENT AGREEMENT.........................................36

THIS DOCUMENT IS NOT BINDING ON ANY PARTY UNTIL SIGNED BY LEAD
COUNSEL AND COUNSEL FOR THE DEFENDANTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

MARJORIE CHARRON, et al.,                 :

                   Plaintiffs,     :

     v.                          :      07 Civ. 6316 (CM)

                              :

PINNACLE GROUP NY LLC, et al.,      :

                   Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FORMAL SETTLEMENT AGREEMENT

       Lead Counsel for Lead Plaintiffs, and counsel of record for Defendants, in consideration

for and subject to the terms and conditions of this Formal Settlement Agreement (the

"Agreement"), as entered into this ⁹ day of August, 2011, and subject to Court approval pursuant

to Rule 23 of the Federal Rules of Civil Procedure, hereby agree as follows:

### I.      RECITALS

       WHEREAS, on or about July 11, 2007, Plaintiffs Marjorie Charron, Theodore Charron,

Anthony Casasnovas, Buyers and Renters United to Save Harlem ("BRUSH"), Karen Flannagan,

Andres Mares-Muro, Tracey Moore, Raymond Andrew Stahl-David, Russell Taylor and Diane

Trummer filed a complaint with this Court seeking class-wide relief, on their own behalf and on

behalf of a class of similarly situated tenants of Pinnacle Group NY LLC and Joel Wiener

(together, "Defendants"), against Defendants for violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the New York Consumer

Protection Act ("NYCPA"), New York General Business Law § 349 (the "Action").

WHEREAS, on or about October 24, 2007, Plaintiffs filed their Second Amended

Complaint with this Court.

WHEREAS, on or about September 5, 2008, this Court denied Defendants' motion to

dismiss Plaintiffs' Second Amended Complaint and dismissed BRUSH as a Plaintiff for lack of

standing.

WHEREAS, on or about September 30, 2009, Plaintiff Tracey Moore withdrew as a

Plaintiff after reaching an agreement to release Defendants from the claims at issue in the Second

Amended Complaint.

WHEREAS, on or about December 4, 2009, Plaintiffs Anthony Casasnovas, Karen

Flannagan, Russell Taylor and Diane Trummer withdrew as Plaintiffs after reaching individual

agreements that released Defendants from the claims at issue in the Second Amended Complaint.

WHEREAS, on or about April 27, 2010, this Court certified two separate classes (the

"Plaintiff Classes"):  (1) a Rule 23(b)(2) Injunctive Class comprised of all persons who, as of

April 27, 2010, were tenants in rent-controlled or rent-stabilized apartments in New York City

directly or indirectly owned in whole or in part by Pinnacle (the "Injunctive Class"), and (2) a

Rule 23(b)(3) Liability Class comprised of all persons who, at any time between July 11, 2004,

and April 27, 2010, were tenants in rent-controlled or rent-stabilized apartments in New York

City directly or indirectly owned in whole or in part by Pinnacle, limited under Rule 23(b)(4) to

only resolving issues related to Defendants' alleged violations of RICO and the NYCPA (the

"Liability Class").

WHEREAS, on or about April 27, 2010, this Court designated Andres Mares-Muro, Kim Powell, Marjorie Charron, Ted Charron and Raymond Andrew-Stahl David as Lead Plaintiffs and Jenner and Block LLC as Lead Counsel.

WHEREAS, Defendants have vigorously denied and continue to vigorously deny all allegations of fault, wrongdoing or liability in this Action, and further believe that this Action has no merit.

WHEREAS, Plaintiffs have vigorously claimed, and continue to vigorously claim, that each and all of the allegations made by them in this Action have merit.

WHEREAS, Defendants and Lead Counsel for Plaintiff Classes consider it desirable and in their best interests, and in the interests of the Plaintiffs and Plaintiff Classes to reach an equitable, appropriate, class-wide resolution of the issues raised in the Action, on the terms set forth herein, taking into account the risks, uncertainties, delay and expense involved in this Action, as well as the time and expense of pursuing a costly and protracted litigation on appeal and in the trial court, and to fully and finally settle all claims asserted in the Action.

WHEREAS, counsel for the Parties have conducted extensive settlement negotiations in an effort to accomplish a compromise and settlement of the claims asserted in the Action; such negotiations having lasted a period of months and having included the Parties exchanging and responding to numerous draft settlement proposals and engaging in numerous face to face and telephonic conferences between and among counsel for the Parties to resolve significant and substantial areas of disagreement.  Counsel for the parties arranged and attended several conferences with the Honorable Magistrate Judge Ronald L. Ellis of the United States District Court for the Southern District of New York to overcome roadblocks to settlement, and only managed to reach this final Agreement with the influential guidance and insight of Judge Ellis.

3

WHEREAS, counsel for Plaintiff Classes have considered that, if the claims asserted in this Action are not settled now by voluntary agreement among the parties, future proceedings (including appeals) would be protracted and expensive, would involve highly complex legal and factual issues related to liability and damages or other relief, and would involve substantial uncertainties, delays, and other risks inherent in litigation, with the possibility of limited to no recovery for Plaintiff Classes in the end. In light of these factors, counsel for Plaintiff Classes have concluded that it is desirable and in the best interests of the members of the Plaintiff Classes to settle the claims asserted in this Action upon the terms set forth in this Agreement, and that the terms of this Agreement confer significant benefits upon the members of the Plaintiff Classes. Based on their experienced evaluation, and after extended mediation sessions with Magistrate Judge Ellis, Lead Counsel for Plaintiff Classes have determined that the terms and conditions of this Agreement are fair, reasonable, and in the best interests of Plaintiffs and all members of the Plaintiff Classes, and provide a remedy for class members superior to the remedy likely to be available after litigation.

WHEREAS, while Defendants continue to vigorously deny all allegations of fault, wrongdoing or liability in this Action, Defendants have considered and evaluated the risks and potential costs of continued litigation on the one hand, and the benefits of the proposed settlement, on the other hand, and desire to settle this Action upon the terms and conditions set forth in this Agreement.

WHEREAS, this Agreement is made on behalf of and is intended to cover Plaintiffs as well as all members of the Plaintiff Classes.

WHEREAS, nothing in this Agreement nor any of the documents referred to herein or attached hereto, shall be construed as or used as evidence of an admission by or against any party

4

with regard to any claim or cause of action in order to assert the contention that any such claim or cause of action does or does not have merit.

NOW THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, it is hereby STIPULATED AND AGREED, by and between the Parties, through their respective counsel, that:  (a) this Action, including all claims, rights and causes of action, both state and federal, that have been or could have been asserted, be fully and finally compromised, settled, and released upon final settlement approval by this Court after the hearings as provided in this Agreement; and (b) upon such approval by the Court, a Final Order and Judgment be entered, dismissing this Action with prejudice, upon the following terms and conditions.

## II.  **DEFINITIONS**

1.      "Action" shall mean the case captioned *Marjorie Charron et al. v. Pinnacle Group NY LLC, et al.*, Case No. 07-CV-06316-CM-RLE (S.D.N.Y).

2.      "Agreement" shall mean this Settlement Agreement.

3.      "Claims Administrator" shall mean the qualified third party selected by Magistrate Judge Ellis and approved by the Court in the Preliminary Approval Order to administer the Settlement, as described in Section VI herein.

4.      The "Class," "Class Members," and "Plaintiff Class(es)" shall mean and include both:

"Injunctive Class Members:"  All persons who, as of April 27, 2010, were tenants in rent-controlled or rent-stabilized apartments in New York City directly or indirectly owned in whole or in part by Pinnacle.

"Liability Class Members:"  All persons who, at any time between July 11, 2004, and April 27, 2010, were tenants in rent-controlled or rent-stabilized apartments in New York City directly or indirectly owned in whole or in part by Pinnacle and who may have individual damages claims against Defendants' related to

Defendants' RICO and NYCPA violations as alleged by Plaintiffs in the underlying Action.

5.      "Class Counsel" or "Counsel for Plaintiff Classes" or "Lead Counsel" shall mean

the law firm of Jenner and Block, LLP.

6.      "Class Period" shall mean the time period, as defined by this Court's April 27,

2010 class certification Order, from July 11, 2004 to April 27, 2010.

7.      "Class Representatives" or "Plaintiffs" or "Lead Plaintiffs" shall mean Marjorie

and Theodore Charron, Andres Mares-Muro, Raymond Andrew Stahl-David, and Kim Powell,

either collectively or as individuals.

8.      "Court" shall mean the United States District Court for the Southern District of

New York and the Judge assigned to the Action.

9.      "Defense Counsel" shall mean the law firms of Gibson, Dunn & Crutcher LLP

and Cozen O'Connor LLP.

10.      "Effective Date" shall mean the date on which this Agreement is approved and

becomes final, which shall mean the entry of the Final Order and Judgment on the docket, and

the expiration of the time for judicial reconsideration or appellate review or the dismissal of any

motion for reconsideration or appellate review.

11.      "Fairness Hearing" shall mean the hearing to be held by this Court, after entry of

the Preliminary Approval Order and after Notice has been given to Plaintiff Classes, for the

purposes of (1) entering the Final Order and Judgment and dismissing the underlying Action

with prejudice; (b) determining the Agreement should be approved as fair, reasonable, adequate

and in the best interests of the Plaintiff Class Members; and (c) ruling upon Counsel for Plaintiff

Classes application for attorney's fees.

12.     "Final Order and Judgment" shall mean an order from this Court fully and finally approving this Agreement, dismissing the Action with prejudice, releasing the claims described herein and enjoining Class Members from raising or proceeding upon such Released Claims (defined below).

13.     "Notice" shall mean both the long-form Notice of Proposed Settlement, to be mailed to members of Plaintiff Classes, and the short-form Summary Notice, to be published, substantially in the forms attached hereto as Exhibits A and B.

14.     "Notice Date" shall mean the date upon which the Notice is initially mailed and published to members of Plaintiff Classes, and shall occur no later than ten (10) days following the entry of the Preliminary Approval Order.

15.     "Notice of Claim" shall mean the Notice of Claim form substantially in the form attached hereto as Exhibit D submitted to the Claims Administrator pursuant to this Agreement:

a.      for members of the Liability Class who wish to seek damages for rent overcharges, harassment and meritless eviction proceedings by Pinnacle during the Class Period, in which case the Notice of Claim must be submitted within 180 days of the Effective Date or as otherwise set forth in this agreement; and

b.      for members of the Injunctive Class who wish to seek damages for violation of the Protocols in the two year period following sixty days after the Effective Date, in which case the Notice of Claim must be filed within sixty (60) days of the occurrence as set forth in Paragraph 46 below.

16.     "Pinnacle" shall mean Pinnacle Group NY LLC, its subsidiaries, affiliates, parents, divisions, and such other companies and entities that are owned or operated, in whole or in part, by Joel Wiener.

17.     "Preliminary Approval Order" shall mean the order as entered in this Action by this Court and described in Section III below.

18.     "Protocols" shall mean the protocols and procedures described in Section VII below and attached as Exhibit C, which shall go into effect sixty (60) days after the Effective Date.

19.     "Released Claims" shall be defined according to the definition in Paragraph 72 of this Agreement.

20.     "Released Parties" shall be defined according to the definition in Paragraph 72 of this Agreement.

21.     "Releasing Parties" shall be defined according to the definition in Paragraph 72 of this Agreement.

22.     "Settlement" shall mean the settlement of this Action as set forth in this Agreement and attachments.

III.    **PRELIMINARY APPROVAL AND NOTICE ORDER**

23.     The Parties shall, as soon as practicable but no later than forty-five(45) days following the signing of this Agreement, apply to the Court for entry of the Preliminary Approval Order, for the purpose of, among other things:

(a)     Approving the form of Notice, substantially as attached hereto as Exhibits A and B and as described more fully in Section V below, to provide notice to Members of Plaintiff Classes of the terms of the Agreement, the Fairness Hearing, the procedures for persons wishing to be heard thereon; and the procedures for persons wishing to opt out of the Agreement;

(b)     Preliminarily approving the Agreement, subject to the rights of Plaintiff Class Members to be heard on the reasonableness of the Agreement at the Fairness Hearing;

(c)     Scheduling the Fairness Hearing not later than one hundred (100) days following the Notice Date to determine whether the Agreement should be approved as fair, reasonable, adequate and in the best interests of the Members of Plaintiff Classes and to determine whether a Final Order and Judgment should be entered dismissing the Action with prejudice;

(d)     Directing that Notice of the Settlement and of the Fairness Hearing be given to the Members of Plaintiff Classes, at the cost and expense of Counsel for Plaintiff Classes, in the manner described in Section V of this Agreement;

(e)     Finding that the Notice to Members of Plaintiff Classes as described in Section V and attached as Exhibits A and B constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto and that such notice fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure;

(f)     Providing that any Member of the Liability Class wishing to be excluded from the portion of the Settlement applicable to that Class will have until the date specified in the long and short-form Notices and in the Preliminary Approval Order to submit a valid written request for exclusion or opt out to Counsel for Plaintiff Classes, with such submission being received or post-marked by that date.  Counsel for Plaintiff Classes shall submit such list of excluded or opted out Class Members to the Court, and copy counsel for Defendants, by no later than seven (7) days prior to the date of the Fairness Hearing;

(g)     Providing that no person shall be entitled to contest the approval of the Agreement or the judgment to be entered thereon except by filing and serving written objections or by appearing in person at the Fairness Hearing in accordance with the provisions herein.  Any

member of the Liability Class who fails to opt out of the portion of the Settlement applicable to that Class or who fails to object in the manner prescribed shall be deemed to have waived and released, and shall be foreclosed forever from raising, objecting or asserting, any of the Released Claims;

(h)     Pending the Fairness Hearing, staying all proceedings in the Action other than proceedings necessary to carry out or enforce the Agreement and the Preliminary Approval Order, and enjoining the initiation of any new litigation related to this case by any member of Plaintiff Classes, except those members who file timely elections to opt out of the Liability Class in any Court or proceeding that involves any of the Released Claims;

(i)     Assigning all issues raised by the implementation and enforcement of the Preliminary Approval Order, including but not limited to the provision of Notice, to the United States Magistrate Judge.

24.     The Parties agree that the notice plan contemplated by this Agreement, as described in Section V, is valid and effective, that it provides reasonable notice to the Members of Plaintiff Classes, and that it represents the best practicable notice under the circumstances.

## IV.     FAIRNESS HEARING AND FINAL ORDER AND JUDGMENT

25.     The parties shall seek from the Court and shall jointly request at the Fairness Hearing the entry of an order of Final Judgment that shall:

(a)     Determine that the mailing, publishing and posting of the Notice in the manner provided in Section V of this Agreement constitutes the best method of notice practicable under the circumstances, constitutes due and sufficient notice to all persons entitled thereto, and satisfies the requirements of the Federal Rules of Civil Procedure and due process;

(b)      Approve the Agreement as fair, reasonable and adequate and direct the consummation of the Settlement in accordance with the terms and conditions of this Agreement;

(c)      Approve the elections to opt out that have been filed timely and completely;

(d)      Provide that each member of the Injunctive Class and each member of the Liability Class (except those who file timely elections to opt out pursuant to the process set forth below), as well as all Releasing Parties, shall be bound by this Agreement, thereby waiving, releasing and discharging all Released Claims against the Released Parties;

(e)      Dismiss all claims in this Action against Defendants, on the merits and with prejudice, and permanently enjoin all Members of Plaintiff Classes (except those who have filed timely elections to opt out), and all persons purporting to act in the name or on behalf of such members (the Releasing Parties), from commencing, prosecuting or continuing any and all of the Released Claims;

(f)      Find that the Agreement is entered into in good faith, and is not a result of collusion, fraud or tortious conduct by any party;

(g)      Determine attorney's fees as provided in Paragraph 74 below;

(h)      Reserve jurisdiction for the enforcement of the injunction as described in Section XI below, and reserve and delegate authority to resolve all other issues related to the administration of the Agreement and the Final Order and Judgment to the United States Magistrate Judge.

## V.    CLASS NOTICE

26.    Following entry of the Preliminary Approval Order, but no later than 30 days after entry of the Preliminary Approval Order, the Defendants shall provide Counsel for Plaintiff Classes with the names and last-known addresses for all Members of Plaintiff Classes, to the extent such address information exists and is in the control of and can be reasonably acquired by Defendants, and Counsel for Plaintiff Classes shall ensure that Notice is mailed, published and posted in the manner directed and approved by the Court, substantially as follows:

(a)    by mailing, on or before the Notice Date, the long-form Notice, in substantially the form attached hereto as Exhibit A, to the last-known address of all Members of Plaintiff Classes, to the extent such address information has been provided by Defendants;

(b)    by publishing, on or before the Notice Date, the short-form Notice, in substantially the form attached hereto as Exhibit B, in the following print publications:  the New York Post and in Spanish in El Diario.

(c)    by providing Defendants with sufficient copies of the short-form Notice, in substantially the form attached hereto as Exhibit B, which Pinnacle shall cause to be posted in the mailbox area of all buildings owned or controlled by Pinnacle as of the Notice Date, and to the extent Pinnacle no longer owns or controls buildings relevant to this Agreement, Defendants agree to use reasonable efforts to gain access to such buildings for the purpose of posting Notice. A version of the short-form notice shall also be posted in the language or languages Plaintiffs believe is most likely to be understood by tenants in addition to posting in English.

27.    The long form Notice shall state that members of the Classes may receive copies of all documents relating to the settlement, including Plaintiffs' Counsel's fee and expense application, by directing such request to a website or phone number to be provided in the long

form Notice.   Individuals will be required to verify their identity as a Class Member either on the website or by phone prior to being granted access to any of the documents.  Individual Class Members requesting documents on the website or by phone will be asked to provide their name and address, or former address if the Class Member is no longer a Pinnacle tenant.  Plaintiffs' Counsel will forward all requests to Defendants to confirm the Class status of the individual, and upon confirmation, will provide the requested documents to the individual Class Member.  The website and any and all documents and materials made available therein will only be accessible to Class Members for two years after the Effective Date .

28.     All costs of providing Notice to Members of Plaintiff Classes of the Fairness Hearing, as described substantially in this Section will be borne by Counsel for Plaintiff Classes, including but not limited to the costs of publication.  Defendants will be responsible for and bear the costs associated with sending a notice by mail to all Class Members, with a certificate of mailing, of the Court's approval of this Agreement and of the deadlines for filing Notices of Claim, with  Notice of Claim form attached, within four (4) days after the Effective Date, as attached hereto at Exhibit E, and shall also be responsible for bearing the costs of any subsequent notices under this Agreement or that may be deemed necessary by the Claims Administrator or required by the Court, unless the Claims Administrator determines that Plaintiffs are at fault for causing a need for such notice, in which case Plaintiffs will bear the costs.

## VI.     APPOINTMENT OF CLAIMS ADMINISTRATOR

29.     Responsibilities.  An independent Claims Administrator shall be appointed who will be responsible for:  (1) administering claims as set forth in Section X of this Agreement, (2) determining compliance by Pinnacle with its obligations as set forth in the protocols and procedures described in Section VII of this Agreement, and (3) reporting on compliance by

Pinnacle with the terms of the injunction as set forth in Section XI below. The office of the Claims Administrator will not be located on premises associated with Plaintiffs or Defendants or their respective counsel, nor will meetings, interviews, hearings or other interactions with tenants be conducted on premises associated with Plaintiffs or Defendants or their respective counsel, unless requested by a tenant.

30.    Qualifications.  The Claims Administrator is an attorney licensed to practice law and a former Judge in the state of New York, with at least ten years of landlord-tenant experience. The Claims Administrator is not a current or former employee of Pinnacle or any of its affiliates, or any current or former Pinnacle tenant, or any current or former member of any tenant or landlord advocacy group or association, or any other person otherwise affiliated with Pinnacle, any current or former Pinnacle tenant, or Plaintiffs' or Defendants' counsel in this matter.

31.    Selection.  Magistrate Judge Ellis has selected the Honorable Marilyn Shafer as the Claims Administrator under this Agreement and the parties have accepted that selection.

32.    Staff.  Subject to the approval of the Magistrate Judge, the Claims Administrator may appoint such staff as the Claims Administrator reasonably deems necessary to ensure effective monitoring and prompt and fair resolution of all claims as set forth below with the express goal of resolving all claims within two years from the date of appointment.

33.    Duration.  The Claims Administrator shall serve for two years from the Effective Date or until the claims filed under this agreement have been resolved, whichever is later. The Claims Administrator shall make a good faith effort to resolve all claims filed under this agreement within the two years, and may only extend the period of service if, after a good faith effort, any pending claims remain unresolved.

34.     <u>Reports by Pinnacle.</u>  Pinnacle shall provide semi-annual reports to the Claims Administrator of such content and with such documentation as the Claims Administrator reasonably requires.  Pinnacle shall provide more frequent reports if the Claims Administrator so requests.

35.     <u>Reports by Claims Administrator.</u>  The Claims Administrator shall submit a report to the Magistrate Judge and the parties semi-annually or more frequently if the Magistrate Judge so requests.

36.     <u>Procedures.</u>  The Claims Administrator will decide all issues that arise under those provisions of the Agreement that correspond to Sections VIII and X of this Agreement.  In connection with performing his or her responsibilities as outlined in this Agreement, and subject to the provisions herein, the Claims Administrator shall develop procedures, hold hearings and receive such evidence as the Claims Administrator determines appropriate.

37.     <u>Determinations Final.</u>  All determinations by the Claims Administrator pursuant to Sections VIII and X of this Agreement shall be final, binding and non-appealable.  To qualify for relief, a class member must sign a waiver agreeing that a determination by the Claims Administrator with respect to the relief sought cannot be subject to relitigation.

38.     <u>Compensation.</u>  Reasonable compensation for the Claims Administrator and staff shall be paid by Pinnacle and the Defendants.  In the event of a dispute as to what amount of compensation is "reasonable," counsel for the parties will present the question to the Magistrate Judge for resolution.

VII.     <u>**DEVELOPMENT OF INTERNAL PROTOCOLS**</u>

To improve landlord-tenant relationships and communication, preserve tenants' rights, and ensure adequate record keeping for effective monitoring, the parties agree to the following:

39.     Written Protocols.  The Parties have agreed to a set of written protocols, attached hereto as Exhibit C, that addresses:  (1) the setting of initial rents and the implementation of rent increases for rent stabilized and rent controlled units; (2) the pre-litigation evaluation of the merits of legal proceedings; (3) the provision of repairs and services; and (4) the establishment and maintenance of a Helpline to ensure that Pinnacle promptly addresses tenant inquiries and complaints.

40.     Effective Date.  The Defendants will establish the Helpline and take all other necessary steps to implement the protocols no later than sixty (60) days after the Effective Date.

41.     Notice.  Pinnacle shall notify current and new tenants of the protocols in the form and manner outlined below, and, commencing no later than sixty (60) days after the Effective Date, shall print the address, email address and dedicated Helpline phone number on all rent bills/rent invoices:

(a)     Form.  All current tenants who are members of the Injunctive Class will receive by regular mail, with a certificate of mailing, the Long Form Notice issued under this Agreement by Counsel for Plaintiff Classes with instructions for obtaining a copy of the protocols and filing a claim.

(b)     All current and new tenants who are not members of the Injunctive Class will be sent a letter from Pinnacle describing the protocols in the form attached hereto as Exhibit F.

(c)     Manner.  Pinnacle shall cause to be mailed or delivered a copy of the letter, attached at Exhibit F, within twenty (20) days of (1) the Effective Date for

16

current tenants who are not members of the Injunctive Class, and (2) the date a rental

lease is signed for new tenants,

      42.     Training. Pinnacle shall provide training for all relevant Pinnacle staff on

these protocols prior to the date the protocols go into effect (sixty (60) days after the

Effective Date).

      43.     Costs. Pinnacle and the Defendants shall bear the costs incurred in

implementing these protocols.

## VIII.   MONITORING AND IMPLEMENTATION OF PROTOCOLS

      To monitor Pinnacle's implementation of the protocols, the parties agree to the

following:

      44.     Claims Administrator Responsibility. The Claims Administrator shall be

responsible for monitoring compliance with the protocols attached as Exhibit C using

such means of observation and inquiry as the Claims Administrator shall, in his or her

reasonable discretion, determine.

      45.     Right to Contact. Injunctive Class Members shall have the right to contact

the Claims Administrator to complain about violations of the protocols and will be

notified of this right as set forth in paragraph 41 above.

      46.     Process for Asserting Claim. Any Class Member seeking damages from

the Defendants for failure to comply with protocol requirements must first file a claim

with the Claims Administrator within sixty (60) days after the occurrence of the alleged

protocol violation unless the Class Member can demonstrate to the satisfaction of the

Claims Administrator good cause for filing the claim more than sixty (60) days after the

alleged protocol violation. The Claims Administrator shall award damages to individual

Injunctive Class Members against the Defendants after a hearing at which the Defendants shall have an opportunity to appear and be heard, upon a finding that Pinnacle or the Defendants failed to comply with protocol requirements.

      (a)     Willful Noncompliance. If the Claims Administrator finds that Pinnacle willfully failed to comply with protocol requirements, damages shall be awarded as follows:

          (i)     Individual damages for failure to comply with the protocols shall be 1.5 times actual damages, but in no event shall the damages for willful noncompliance be less than $500 per occurrence.

      (b)     Nonwillful Noncompliance. If the Claims Administrator finds that Pinnacle's failure to comply with protocol requirements was not willful, only actual damages shall be awarded. No presumption of willfulness or of lack of willfulness will be applied to claims against Pinnacle or the Defendants for Pinnacle's failure to comply with the protocol requirements.

      (c)     Evidence and Procedures. Damages determinations by the Claims Administrator pursuant to this Section shall be based on such evidence and pursuant to such procedures as the Claims Administrator shall require.

      (d)     Set-off. Any damages award shall be subject to the following:

          (i)     The Claims Administrator will reduce any damages award by any amount owed to Pinnacle pursuant to a judgment, a court-approved settlement, an administrative order, or that is uncontested by the class member.

          (ii)     If, at the time prior to the resolution of a claim by the Claims Administrator, there is another pending action or proceeding brought by Pinnacle

in which the class member has already contested or states that he or she plans to contest the amount owed, any payment of any damages award as a result of the claims hearing will be held in abeyance until resolution of the pending action or proceeding and will be available to the class member in the pending action or proceeding as an offset to any monetary claim by Pinnacle.

47.     Compensation.  As outlined in Section VII, Pinnacle and the Defendants will pay reasonable compensation for the Claims Administrator and staff.

## IX.     PROVISION OF TENANT ASSISTANCE AND SUPPORT

48.     The New York Bar Foundation, the Legal Aid Society, and Legal Services NYC have agreed to implement this portion of the settlement agreement as set forth below.

49.     Payment.  Pinnacle and the Defendants shall pay $2.35 million in two equal installments to the New York Bar Foundation.  The first such payment shall be made no later than sixty (60) days after the Effective Date.  The second payment shall be made no later than one year after the first payment.

50.     Purposes.  The NY Bar Foundation shall distribute funds to the specific nonprofit organizations listed in 51(a) below that have the requisite legal, educational, and social work expertise and staff to assist tenants in Pinnacle Buildings.  Assistance to be provided shall be limited to:

(a)     Advising Pinnacle tenants of their rights under the terms of the Agreement,

(b)     Assisting members of the Injunctive Class with asserting a breach of the internal protocols and asserting claims for damages before the Claims Administrator for failure to comply with the internal protocols pursuant to the provisions of Section VIII above,

19

(c)     Assisting members of the Liability Class with asserting claims before the Claims Administrator under Section X below for damages that may have occurred during the Class Period, and

(d)     Providing social work assistance to tenants related to understanding and asserting their rights under the Agreement.

51.     <u>Organizations.</u>  The nonprofit organizations to be funded under the Formal Settlement Agreement shall be,

(a)     for legal and related assistance in implementing this agreement, the $2.35 million fund shall be paid to the Legal Aid Society and Legal Services NYC.  In the event that the NY Bar Foundation determines, in its sole discretion, that either of these organizations is unable to satisfactorily perform services it has contracted for pursuant to this Agreement, the NY Bar Foundation, shall contract for such services with another nonprofit organization in the City of New York that the NY Bar Foundation determines is able to perform the services, subject to the approval of counsel for the Parties; and

(b)     for tenant assistance, including but not limited to outreach and education of Pinnacle tenants regarding the terms of this agreement, $50,000 each to Brooklyn Housing and Family Services, Bushwick Housing and Legal Assistance Program and Metropolitan Council on Jewish Poverty, which shall be paid by Pinnacle and the Defendants directly to the organizations either (a) within one business day after the Effective Date if the Effective Date is thirty (30) days after the Court enters the Final Order and Judgment on the Docket, or (b) within fifteen (15) days after the Effective Date if the Effective Date occurs any time thereafter.

52.     <u>Oversight.</u>  The NY Bar Foundation shall be responsible for contracting for, distribution of, accounting for and oversight of the use of the funds in Paragraph 51(a) to ensure

20

that the funds are used solely for the purposes set forth in this agreement.  Pinnacle and the Defendants shall pay reasonable administrative fees (currently estimated at $15,000 per year) to the NY Bar Foundation.

53.     <u>Limitation.</u>  As a condition of funding the organizations listed in Paragraph 51(a) above, these organizations will be asked to sign an agreement stipulating that none of the funds provided herein will be used to hire or otherwise pay any members of Plaintiff Classes or will be used for any purposes not specified in Paragraph 50 above.  All of the work contracted for by the funded organizations in Paragraph 51(a) is to be performed by the organizations themselves and their staffs and cannot be subcontracted out to any organization or person not listed in Paragraph 51 without the approval of the NY Bar Foundation and the parties.  Violation of this Section by any funded organization shall be considered just cause for the NY Bar Foundation to deny continued funding pursuant to this Agreement to that organization.

54.     <u>Remaining Funds.</u>  In the event that funds remain after the purposes set forth in Paragraph 50 above are fulfilled, eighty five percent (85%) of the remaining funds shall be distributed evenly to the organizations listed in Paragraph 51(a) to be used for the general provision of legal services to tenants in the City of New York, and none of these funds will be used to hire or otherwise pay any Members of Plaintiff Classes, and fifteen percent (15%) of the remaining funds shall be distributed to non-profit organizations selected by the NY Bar Foundation for social services to tenants in the City of New York.

55.     <u>Reports.</u>  Until the $2.35 million fund under Paragraph 49 above has been fully distributed by the NY Bar Foundation and expended by the grantees, the NY Bar Foundation shall provide semi-annual reports to the Court and Counsel for the Parties detailing the amounts that have been distributed and the manner in which the above-allocated funds are spent,

including numbers of clients served and nature of services performed.  However, nothing in this agreement shall be construed in such a manner as to interfere with any privileged or confidential communication or relationship between a nonprofit grantee and its clients.

<strong>X.       CLAIMS PROCESS</strong>

To compensate Liability Class members for damages that may have occurred during the Class Period, the parties agree to the following:

56.       <u>Claims Administrator.</u>  The claims process shall be managed by the Claims Administrator, the Honorable Marilyn Shafer.  The Claims Administrator will not have the power to, and will not, adjudicate any issue that previously, to the Effective Date, has been the subject of administrative or judicial proceeding(s) involving the class member and the Defendants, Pinnacle or any of its affiliates.

57.       <u>Damages in General.</u>  The Claims Administrator shall determine damages for the members of the Liability Class for rent overcharges, harassment and meritless eviction proceedings according to the guidelines set forth below and under such other processes, forms and procedures as she in her sole discretion deems appropriate.  The Claims Administrator shall deduct from any damages award to any class member amounts that have been paid or credited by the Defendants or Pinnacle to the class member or are owed by the class member to the Defendants or Pinnacle, subject to the provisions in Paragraph 46(d) above.  Damages shall be limited to out-of-pocket costs, lost time or wages, or other actual pecuniary losses except as otherwise set forth in this Agreement.

58.       <u>Submission and Resolution of Claims by Class Members.</u>  Any Class Member may submit to the Claims Administrator, Pinnacle, and Counsel for the Defendants a Notice of Claim, as attached hereto at Exhibit D.  Each Notice of Claim will include, at a minimum, the

Class Member's current address, the address of the Pinnacle apartment at issue, the dates on which the Class Member occupied the apartment, and, for overcharge claims, the rent(s) paid during that period. The Notice of Claim will also set forth briefly the reasons why the Class Member believes in good faith that he or she has a valid claim.

59. <u>Time to file claim</u>  Except as otherwise set forth herein, all Liability Class Notices of Claim shall be presented within one-hundred and eighty (180) days after the Effective Date, and shall be resolved by the Claims Administrator within six months or as soon as feasible after the date presented. All rulings by the Claims Administrator shall be final, binding and not subject to relitigation.

60. <u>Credits.</u>  Any damages award will be reduced by all sums that the Claims Administrator finds that the Class Member owes the Defendants or Pinnacle, subject to the provisions in Paragraph 46(d) above, or any sum that has previously been paid or credited to the Class Member by the Defendants or Pinnacle in satisfaction of that claim, and any sum recovered by the Class Member in any administrative or judicial proceeding in satisfaction of that claim.

61. <u>Damages for Rent Overcharge.</u>

(a) <u>Determination of Legal Rent.</u>  Any rent set on or before July 11, 2004 shall not be subject to challenge.

(b) <u>Rents Based on Rents of Former Owners.</u>  Pinnacle and the Defendants shall not be liable for any alleged rent overcharge for any rent set by a prior owner of the building in question. It shall be a defense to any allegation of overcharge before the Claims Administrator that Pinnacle or the Defendants relied on a rent registered by a prior owner with the New York State Division of Housing and Community Renewal, now consolidated under the

New York State Homes and Community Renewal (collectively "HCR"), or contained in documentation from a prior owner of the building in question.

(c)    <u>Willfulness.</u>  Willfulness shall be presumed and the Claims Administrator shall award double damages plus interest if the Claims Administrator finds that Pinnacle or the Defendants have failed to demonstrate that the overcharge was not willful as defined under applicable law. The Claims Administrator cannot award double damages if Pinnacle or the Defendants adjust the rent, and refund or credit to the Class Member any potential overcharge along with interest, before answering the Class Member's complaint before the Claims Administrator.  If Pinnacle or the Defendants demonstrate to the satisfaction of the Claims Administrator that an overcharge was not willful, the Class Member shall only be awarded actual damages plus interest.

(d)    <u>Readjustments and Registration of Rents.</u>  If the Claims Administrator determines that the Class Member is or was in a unit that is subject to rent-stabilization and is or was being overcharged, then, in addition to any award of damages for prior overcharges, the legal rent on the apartment in question will be adjusted to the appropriate level and the new legal rent will be registered with the HCR as required by law.  Awards to class members who are current tenants will be granted in the form of credits against existing or future rent obligations or by a refund, at the choice of the Class Member.  In the case of rent paid by third party government payers, requested refunds will be paid proportionately to the payer(s) up to the amount that was paid by that third party.

62.    <u>Hearing for Rent Overcharge.</u>  Except as set forth in Paragraph 56 and subject to Paragraph 59 above, all Members of the Liability Class shall have an opportunity to present an overcharge claim to the Claims Administrator.

63.    <u>Lease Audit[1] for Rent Overcharge</u>.  There shall be a Lease Audit, in the form of an Agreed Upon Procedure relating to rents set by Pinnacle for Members of the Liability Class between January 1, 2008, and April 27, 2010.  The Lease Audit will be a contract compliance engagement pursuant to which an independent accountant will determine whether selected rents set by Pinnacle are in compliance with applicable law, and in accordance with the parameters agreed to under Paragraph 61(a) and (b) above.

(a)    The independent accountant is a New York State licensed certified public accountant or certified public accountant firm with a minimum of ten (10) years of accounting experience, and familiarity with the New York Rent Stabilization and Rent Control laws.

(b)    Magistrate Judge Ellis has selected Seth D. Molod, CPA, to be the independent accountant under this Section of the Agreement and the parties have accepted this selection.

(c)    The Lease Audit shall require:

(i)    The independent accountant to select and review a random sampling of 25% of all new Pinnacle leases between January 1, 2008 and April 27, 2010, to determine if any of the rents contained in such leases constitute overcharges.  If, after conducting the initial review, the independent accountant finds that 15% or more of the selected sample set shows an overcharge of ten dollars ($10.00) or more per month, the independent accountant will be required to expand the Lease Audit in order to conduct a full review of 100% of all new leases between January 1, 2008 and April 27, 2010.

---

[1]    The term "audit" as used herein is not and should not in any way be construed to be synonymous with the terms "audit," "audit procedures," "compilation," or "review" as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants.

(ii)    The independent accountant to review new rents and special (non-Rent Guidelines Board-based) rent increases, including but not limited to individual apartment increases, high rent/high income deregulation, Major Capital Improvement rent increases, and vacancy increases.

(iii)    Pinnacle to provide information and documents requested by the independent accountant within twenty (20) business days of the request.

(d)    Members of the Liability Class whose rents are subject to this Lease Audit shall be provided with an opportunity to review and respond to Pinnacle's documentation of rent levels and the independent accountant's determination.  Such Members of the Liability Class shall have sixty (60) days from the date the documentation and independent accountant's determination are mailed to them, or until the deadline set forth in Paragraph 59 above, whichever is later, to file any claims, pursuant to Paragraph 61 above, that are in response to these documents, with the Claims Administrator.

(e)    Reasonable compensation for the independent accountant shall be paid by Pinnacle and the Defendants.  In the event of a dispute between counsel for the parties as to what amount of compensation is "reasonable," counsel will present the question to the Magistrate Judge for resolution.

64.    Damages for meritless eviction proceedings and other harassment.  Damages shall be awarded to Class Members who have been subject to the following categories of harm:

(a)    Harassment, intimidation, meritless billing and/or eviction proceedings related to alleged nonpayment of rent.

(b)      Interference with occupancy rights through meritless and unduly burdensome queries or legal proceedings regarding matters such as succession rights, primary residence, roommates and subletting.

(c)      Subject to Paragraph 57 above, the Claims Administrator shall determine, based on evidence presented at a hearing of which Pinnacle and the Defendants shall receive reasonable notice, and with Pinnacle and the Defendants given an opportunity to contest the merits, whether an individual Class Member was subjected to any of the conduct listed in sub-sections (a) or (b) above, and, if the Claims Administrator finds that a Class Member was subjected to such conduct, whether Pinnacle's or the Defendants' conduct was minimal, moderate or serious, and shall assess damages as follows:

Category 1 – minimal – If the Claims Administrator finds that Pinnacle's or the Defendants' conduct with respect to a damages claim was minimal, the claimant shall be awarded $500 or actual damages, whichever is higher.

Category 2 – moderate – If the Claims Administrator finds that Pinnacle's or the Defendants' conduct with respect to a damages claim was moderate, the claimant shall be awarded $1,000 or actual damages, whichever is higher.

Category 3 – serious – If the Claims Administrator finds that Pinnacle's or the Defendants' conduct with respect to a damages claim was serious, the claimant shall be awarded $1,500 or actual damages, whichever is higher.

(d)  If the Claims Administrator finds that a claimant was subject to a meritless eviction proceeding Pinnacle agrees to sign and promptly provide to the claimant a stipulation in substantially the same form as Exhibit G, together with a letter authorizing the tenant to deliver a copy of the Stipulation to any tenant screening bureau or tenant reporting agency that has a

record of the proceeding in its database and to any prospective new leasor of an apartment that tenant proposes to rent.

65.     Potential class membership status.  Pinnacle shall provide the Claims Administrator with a list of units in Pinnacle buildings that were deregulated by Pinnacle during the Class Period pursuant to the High-Income/High-Rent Decontrol or the High Rent Vacancy Decontrol provisions of the Rent Stabilization Law.  If the Claims Administrator determines that it would be useful or necessary to provide notice and an opportunity to be heard to any or all affected current and former residents of such units Pinnacle shall provide such notice within fifteen (15) days of a request from the Claims Administrator, in a form to be agreed to by counsel for the parties, of the fact that such current and former residents are potential members of the Plaintiff Classes in this matter.  The Claims Administrator shall determine whether any such units should be considered rent-stabilized.  Such a determination will be based on documentation submitted by Pinnacle, with an opportunity for the affected current and former residents to review the submission, respond and submit additional documentation should the Claims Administrator determine such review and response is useful or necessary.  Upon notification by the Claims Administrator that a unit should be considered rent-stabilized, Pinnacle shall send the applicable tenant(s) such notices as are required to be sent pursuant to this Agreement and otherwise treat such tenant as a Class Member.  Determinations by the Claims Administrator under this Paragraph are subject to the provisions of Paragraph 61(a) and (b).

66.     Security.  Defendants have presented information to the Magistrate Judge for in camera review, and to Counsel for Plaintiff Classes on an attorneys eyes only basis, sufficient to demonstrate that Defendants have an annual income and net worth sufficient to meet their

28

potential liabilities under this Agreement.  Defendants have made representations and warranties

in a form similar to the form accepted by Defendants' federally insured banks for representations

with respect to the accuracy and completeness of financial statements submitted for the purpose

of obtaining credit.

67.    No Cap on Liability.  Defendants agree that there will be no individual or overall

cap on Pinnacle's and the Defendants' liability to Class Members, except as specifically set forth

in other provisions of this Proposal.

68.    Costs.  Pinnacle and the Defendants shall bear all costs incurred in this claims

process, excluding any fees and costs incurred by Class Members in pursuing their claims under

the claims process except as allocated for that purpose pursuant to Section IX above.

## XI.    INJUNCTION

69.    Duration.  The Court shall enter an injunction requiring that Pinnacle and the

Defendants comply with the terms of this Agreement, which injunction shall remain in force for

two years.

70.    Remedy.  No Class Member may seek to enforce the injunction other than

through Counsel for Plaintiff Classes, who may only seek enforcement through the procedures

stated herein.

71.    Enforcement.  If Counsel for Plaintiff Classes believes that Pinnacle and the

Defendants have demonstrated a pattern of conduct that fails to comply materially with the terms

of this Agreement (the "noncompliance"), Counsel for Plaintiff Classes shall give written notice

by certified mail, or other form of delivery generating a receipt, to Pinnacle and the Defendants

and Counsel for Defendants setting forth in detail the facts constituting the alleged pattern of

material noncompliance.  Pinnacle and the Defendants shall then have reasonable time within

which to demonstrate that they are in compliance or to cure the alleged noncompliance.

Thereafter, if Counsel for Plaintiff Classes believes in good faith that the noncompliance is

continuing, Counsel for Plaintiff Classes may apply to have the Claims Administrator fashion

such remedies as she deems appropriate to ensure that Pinnacle and the Defendants comply with

the injunction.  Upon application to the Claims Administrator for remedies for noncompliance,

allegations of noncompliance will be presumed to be willful.  Pinnacle and the Defendants shall

be given reasonable notice and an opportunity to be heard by the Claims Administrator on such

application to demonstrate that it is in compliance, that the alleged noncompliance is not willful,

or that the time provided within which to cure was unreasonable.  If, upon consideration of these

matters, the Claims Administrator finds that Pinnacle and the Defendants have demonstrated a

pattern of conduct that fails to comply materially with the terms of this Agreement, the Claims

Administrator will have authority to fashion such remedies as she deems appropriate to ensure

that Pinnacle and the Defendants comply with the injunction.  Counsel for Plaintiff Classes may

only apply to the Court to enforce the injunction and for such other relief as the Court may deem

appropriate if the Claims Administrator certifies that her remedies are ineffective at enforcing the

injunction.

### XII.   WAIVER AND RELEASE OF CLAIMS

72.     Subject to the Court's approval of this Agreement and entry of the Final Order

and Judgment, each Injunctive Class Member and Liability Class Member who has not timely

and properly opted out of the Liability Class and his or her heirs, successors, trustees, executors,

administrators, principals, beneficiaries and assigns (collectively, the "Releasing Parties") agree

forever to release Defendants and any and all current and former officers and directors, or any

assignee, successor, predecessor, direct or indirect subsidiary, direct or indirect parent company,

divisions, affiliates, attorneys, employees and agents, (collectively, the "Released Parties"), from any and all claims, suits, judgments, demands, rights, liabilities, damages, losses, attorneys' fees, interest, expenses, costs and causes of action, known or unknown, accrued or unaccrued, arising that are, were, or could have been asserted in the underlying Action or under the provisions of this Agreement (the "Released Claims").

73.     Upon the Effective Date, each of the Releasing Parties shall thereafter be permanently enjoined from commencing, prosecuting or continuing any and all of the Released Claims against any and all of the Released Parties.

### XIII.   MISCELLANEOUS

74.     <u>Fees and Costs for Counsel for the Plaintiff Classes.</u>  Pinnacle and the Defendants shall pay to Plaintiffs' Counsel actual out of pocket costs incurred through the Effective Date, up to a maximum of $200,000, in addition to any prior reimbursement of costs from previous settlements in this Action, provided Counsel for Plaintiff Classes produces adequate backup documentation to support its additional costs.  Defendants acknowledge that Counsel for Plaintiff Classes will move before the Court for an award of attorneys' fees and Defendants will have the right to oppose the award of attorneys' fees to Counsel for Plaintiff classes.  The parties agree that in no event shall counsel seek to be awarded, or shall Pinnacle and the Defendants be required to pay, in excess of $1.25 million in respect of attorney's fees for counsel for Plaintiff Classes, and that such amount, if any, shall be paid within thirty (30) days of the Effective Date.

75.     <u>Class Counsel.</u>  It is understood that the payments by Pinnacle and the Defendants set forth in Section IX above are for the purposes of educating Class Members about the terms of this Agreement and assisting them with asserting their rights to relief under the Agreement and

that Jenner & Block LLP, as Counsel for the Plaintiff Classes, shall not be responsible for these tasks.

76.     <u>Pinnacle's Obligations.</u>  Pinnacle's and the Defendants' obligations under this Agreement will continue for no more than two years from the Effective Date, except that Pinnacle and the Defendants will:

(a)     compensate or continue to compensate Class Members as required by any determinations of the Claims Administrator pursuant to Paragraph 33,

(b)     continue to make payments under Section IX above, and

(c)     continue to compensate the Claims administrator in the event the term of the Claims Administrator is extended because claims filed under this agreement have not been resolved within two years, as addressed in Paragraph 33 above.

77.     <u>No Admission.</u>  Defendants have denied and continue to deny the claims and contentions alleged by Plaintiffs in this action and any wrongdoing or legal liability arising out of any of the conduct alleged in the complaint.  There have been no findings of any wrongful conduct on the part of Defendants and Defendants have consistently asserted that they have been in compliance with their legal obligations.  This Agreement, the negotiations to reach this Agreement and any proposals exchanged in support thereof or any action taken to implement the Agreements, may not be construed or used as an admission by or against Defendants of any fault, wrongdoing or liability whatsoever, and may not be used, offered or received in evidence in any action or proceeding in any court, administrative agency or other tribunal for any purpose whatsoever other than to enforce the provisions of the Agreements and/or any related agreement, release or waiver.

78.     The service of papers and notices under this Agreement shall be made upon the Plaintiff, Class Counsel, and the Class by mailing such papers on:

> Jenner and Block LLP
> Richard F. Levy
> 353 N. Clark Street
> Chicago, IL 60654

and upon Defendants by mailing such papers on:

> Gibson, Dunn & Crutcher LLP
> Mitchell A. Karlan
> 200 Park Avenue, 48th Floor
> New York, NY 10166-0193

79.     This Agreement represents an integrated document negotiated and agreed to between the Parties and shall not be amended, modified or supplemented, nor shall any of its provisions be deemed to be waived, unless by written agreement signed by the respective attorneys for the Parties.  This document has been drafted jointly and is not to be construed against any party.

80.     This Agreement represents the entire and sole agreement negotiated and agreed to between the Parties to this Agreement.

81.     Each and every term of this Agreement shall be binding upon and inure to the benefit of the Class Representative, the Class Members, and any and all of their successors, assigns, and personal representatives, and shall bind and inure to the benefit of Defendants, all of which are intended to be the beneficiaries of this Agreement.

82.     Counsel for Plaintiff Classes and Counsel for Defendants each represent that they are authorized to execute this Agreement [to be determined], to take all steps contemplated by this Agreement, and to effect this Agreement on the terms and conditions stated herein, and

33

further that they will take all steps on their respective clients' behalf contemplated by this Agreement.

83.     Counsel for Plaintiff Classes and Defendants agree to cooperate with each other and to take all actions reasonably necessary to obtain Court approval of this Agreement and entry of the orders of the Court that are required to implement its provisions.  The Parties and their counsel also agree to support this Agreement in accordance with and subject to the provisions of this Agreement.

84.     Class Counsel, Class Members and Defendants shall not be liable for any delay or non-performance of their obligations under this Agreement arising from any act of God, governmental act, act of terrorism, war (declared and undeclared), quarantine, fire, flood, explosion, strike or civil commotion or similar event which is beyond the non-performing parties reasonable control, including any mechanical, electronic, communications' or third party supplier failure.

85.     Except to the extent that the Federal Rules of Civil Procedure govern, New York law shall govern this Agreement and any documents prepared or executed pursuant to this Agreement.

86.     In the event that the provisions of New York City's rent regulation laws are amended, the practices and procedures under the protocols shall be deemed amended to conform to the same.

IN WITNESS WHEREOF, Lead Counsel for Plaintiffs and Counsel for Defendants have duly executed this Agreement as of the date set forth below.

Dated:     New York, New York
           August , 2011

                                              JENNER & BLOCK, LLP

                                              By:

                                              Richard F. Levy

                                              353 N. Clark Street
                                              Chicago, IL 60654
                                              Telephone: (212) 891-1600
                                              Facsimile: (212) 891-1699

                                              Attorneys for Plaintiff Classes


Dated:     New York, New York
           August , 2011

                                              GIBSON, DUNN & CRUTCHER LLP

                                              By:

                                              Mitchell A. Karlan

                                              200 Park Avenue, 48th Floor
                                              New York, NY 10166-0193
                                              Telephone: (212) 351-4000
                                              Facsimile: (212) 351-4035

                                              Attorneys for Defendants

## EXHIBITS TO FORMAL SETTLEMENT AGREEMENT

EXHIBIT A-  LONG-FORM NOTICE OF PROPOSED SETTLEMENT

EXHIBIT B-  SHORT-FORM NOTICE OF PROPOSED SETTLEMENT

EXHIBIT C-  PROTOCOLS
     Ex. A – Format for memo to Legal Department setting forth basis for nonpayment
       Proceeding
     Ex. B – Format for general Letter of Concern – holdover
     Ex. C – Format for Nonattendance Letter
     Ex. D – Task Form

EXHIBIT D-  NOTICE OF CLAIM

EXHIBIT E-  NOTICE OF APPROVAL AND DEADLINE FOR FILING A CLAIM

EXHIBIT F-  LETTER OF SETTLEMENT PROTOCOLS

EXHIBIT G-  STIPULATION VACATING JUDGMENT

EXHIBIT A
TO FORMAL SETTLEMENT
AGREEMENT

# LONG-FORM NOTICE OF PROPOSED SETTLEMENT

# NOTICE OF PROPOSED SETTLEMENT

## In the Matter of CHARRON, ET AL., V. PINNACLE GROUP NY LLC, ET AL, CASE NO.: 07-CIV-6316 (CM)
## United States District Court for the Southern District of New York

## IF YOU LIVE OR ONCE LIVED IN A RENT-CONTROLLED OR RENT-STABILIZED APARTMENT OWNED BY PINNACLE GROUP NY LLC OR ONE OF ITS AFFILIATES, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.

*(A federal court authorized this notice.  This is not a solicitation from a lawyer.)*
This notice may affect your rights.  PLEASE READ THIS NOTICE CAREFULLY.

| 1. Why should I read this notice? |
| --- |

This notice is to inform you that you may be affected by a proposed settlement reached by the parties in a federal class action lawsuit, *Charron, et al., v. Pinnacle Group NY LLC, et al.*, United States District Court for the Southern District of New York, Case No. 07 Civ. 6316 (CM) (the "Lawsuit") against the Pinnacle Group NY LLC, et al. ("Defendants").

This notice explains the nature of the Lawsuit and the general terms of a proposed settlement, and it informs you of the benefits of the settlement and your legal rights and obligations – and the deadlines to exercise them.  Please read this notice carefully.

| 2. What is the lawsuit about? |
| --- |

In 2007, a group of tenants (the "Plaintiffs") filed a class action lawsuit against the Defendants claiming that the Defendants harassed and intimidated tenants in rent-regulated apartments, meaning apartments that are either rent-controlled or rent-stabilized.  The Plaintiffs claimed that the Defendants illegally increased regulated rents and evicted, attempted to evict and otherwise harassed tenants whose apartments were rent-regulated.

The Plaintiffs claim that Defendants' alleged conduct violated the federal Racketeering Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. § 1961 et seq., and the New York Consumer Protection Act (NYCPA), New York General Business Law § 349.  The Plaintiffs seek damages and an injunction (court order) requiring Defendants to stop violating New York laws. The Defendants dispute all of these allegations and the requested remedies.

## A Summary of Your Rights and Choices

| You may: | Summary: | Due Date: |
|---|---|---|
| **Submit a Claim** | **Liability Class Members --** This is the only way to receive a payment.  You may be eligible for money compensation if approved.  You will be bound by the terms of the settlement and give up your right to sue on your own regarding any claims that are part of the settlement or the lawsuit. | 180 days from date the settlement becomes final. |
|  | **Injunctive Class Members --** You will automatically receive the benefit of protocols that Pinnacle has agreed to follow for rent setting, eviction proceedings and repairs and services if the Court approves the settlement.  If you believe that Pinnacle violates these protocols during the 2 years that they are in effect, you may submit a claim as described below. | 60 days from the violation |
| **Do Nothing** | Remain a member of one or both classes, receive the benefit of the protocols if the Court approves a settlement, and be bound by the settlement (meaning that you give up your right to sue on your own).  *If you do not file a claim for money damages for Pinnacle's past behavior by the deadline, you will not be able to receive money damages from this settlement.* | _____, 2011 |
| **Exclude Yourself from the Liability Class (Opt Out)** | Receive no Liability Class benefits from the settlement. Pursue claims alleged in the lawsuit against the Defendants by filing your own lawsuit at your own expense.  **You cannot exclude yourself from the Injunctive Class.** | _____, 2011 |
| **Object to the Settlement** | Write to the Court about why you do, or do not, like the proposed settlement. | _____, 2011 |
| **Attend a Hearing** | If you wish to speak to the Court about the fairness of the settlement, you must notify Counsel for the Plaintiff classes. | _____, 2011 |

- The Court in charge of this case still has to decide whether to approve the Settlement Agreement.

## 3.  Why is the case being settled?

The Court has not decided in favor of either side in the case.  Defendants deny all allegations of wrongdoing or liability and contend that its conduct was lawful.  Both sides have concluded, after

2

careful consideration, that it would be in the best interests of Defendants and class members to enter into a Settlement Agreement to avoid the uncertainties and costs of litigation and to assure that the benefits reflected in the Settlement Agreement, as summarized in this notice, are obtained promptly.  The proposed settlement is the result of extensive negotiation by both sides.

## 4.   Who is included in the settlement?

In this Lawsuit, the Court has created two plaintiff classes defined as follows:

- **Injunctive Class Members:**  All persons who, as of April 27, 2010, were tenants in rent-controlled or rent-stabilized apartments in New York City directly or indirectly owned in whole or in part by Pinnacle.  This class seeks injunctive relief (not money damages) for Pinnacle's behavior.

  If Pinnacle does not comply with certain obligations going forward, members of this class can submit a claim for money damages.

- **Liability Class Members:**  All persons who, at any time between July 11, 2004, and April 27, 2010 (the "Class Period"), were tenants in rent-controlled or rent-stabilized apartments in New York City directly or indirectly owned in whole or in part by Pinnacle and who may have individual damages claims against Pinnacle for its behavior during the Class Period.  This class seeks money damages.

For the purposes of class membership and as used in this notice, "Pinnacle" means Pinnacle Group NY LLC, its subsidiaries, affiliates, parents, divisions, and other companies and entities that are owned in whole or in part by principals of Pinnacle.

## 5.   What are the benefits under the settlement?

A. **Pinnacle's financial obligations -** If the Court finally approves the settlement, the Defendants have agreed to undertake the following financial obligations:

- to satisfy claims approved by the Claims Administrator with no overall cap on Defendants' liability to Class members, for:

  - o  past rent overcharges; harassment, intimidation and meritless billings and/or eviction proceedings related to alleged nonpayment of rent; interference with occupancy rights through meritless and unduly burdensome queries regarding matters such as succession rights, primary residence, roommates and subletting; and

  - o  violations, should they occur in the future, of agreed upon protocols that will govern Pinnacle's relations with its tenants for two years.

- $2.5 million for tenant assistance, to be paid as follows:

  - o  Up to $2,350,000 to the Legal Aid Society and Legal Services NYC for legal and related assistance in implementing the terms of the Settlement Agreement;

3

- o $150,000 to three community organizations for tenant assistance, including outreach and education about this settlement; and

- o In the event that funds remain after the two year injunction period, the remainder to be distributed to nonprofit tenant assistance groups in New York City.

- Defendants will pay to staff a helpline, establish modern communication systems with tenants, and maintain electronic records of compliance with the protocols described below;

- Defendants will pay all costs incurred in the claims process for the Claims Administrator and administration, as well as all costs associated with a Lease Audit (described below).

B. In addition, the proposed settlement provides the following **Additional Benefits** to the class:

- **Lease Audit** - An independent Certified Public Accountant will determine whether certain rents set by Pinnacle between January 1, 2008 and April 27, 2010 are in compliance with applicable rent stabilization and rent control laws, using an agreed-upon procedure to review a random sample of new leases.  Liability Class members found to have been overcharged as a result of the Lease Audit will have their rents adjusted to the legal rent, will be reimbursed any overcharges they have paid, and may submit a claim to the Claims Administrator for additional money damages.

- **Protocols:  Agreement Concerning Future Relations Between Pinnacle and its Tenants** - The Proposed Settlement Agreement sets forth detailed protocols and procedures regarding (a) setting and implementing initial rents and rent increases, (b) evaluating potential nonpayment and holdover proceedings that could result in eviction, (c) recording and responding to requests for repairs and services, (d) providing a tenant helpline and (e) training Pinnacle staff.  Pinnacle will maintain electronic records of all such proceedings.  The Claims Administrator will monitor Pinnacle's compliance with the protocols and procedures and will be able to award damages to tenants for Pinnacle's noncompliance based on claims submitted by tenants.

- **Injunction** - An injunction will be entered upon the Court's approval of the class settlement, and will remain in force for two years.  If counsel for plaintiff classes believes that Pinnacle has failed to materially comply with the Protocols or other terms of the Settlement Agreement, counsel may apply to the Claims Administrator to require defendants to remedy the violations, and seek further relief from the Court if necessary.

| 6. How will I submit a claim and what kinds of compensation will be available? |
| --- |

A. **Members of the Injunctive Class**

- You do not need to do anything to receive the benefits of the protocols and practices that Pinnacle will implement regarding rent setting, eviction proceedings and repairs and services referred to above and set forth in the full Settlement Agreement.  These protocols will go into effect 60 days after the settlement becomes final, and will remain in effect for two years.

- If you believe that Pinnacle is violating those protocols during the two years in which they are in effect, you will be able to file a claim with the Claims Administrator for money damages.  The Claims Administrator will decide whether a hearing is necessary to decide your claim, and if it is, will schedule a hearing where both you and Pinnacle will be able to appear and be heard on the claims.

- The <u>deadline to submit claims</u> is 60 days from the date of the violation.  Extensions are not available so please be certain to file your claim on time.

- The following damages (compensation) will be available:

    o If the Claims Administrator finds that Pinnacle willfully failed to comply with protocol requirements, damages will be at least $500 per occurrence up to a maximum of 1.5 times actual damages.

    o If the Claims Administrator finds that Pinnacle's failure to comply with protocol requirements was not willful, only actual damages will be awarded.

## B. Members of the Liability Class

- If the Court approves the settlement, members of the liability class may submit a "Notice of Claim" to the Claims Administrator for the following conduct:

    o Rent Overcharges

    o Harassment, intimidation, meritless billings and/or eviction proceedings related to alleged nonpayment of rent, and

    o Interference with occupancy rights through meritless and unduly burdensome queries or legal proceedings regarding matters such as succession rights, primary residence, roommates and subletting.

- Notice of Claim for Liability Class members –

    o Your claim notice must include, at a minimum, (1) your current address, (2) the address of the Pinnacle apartment at issue, (3) the dates on which you occupied the apartment, (4) for claims of rent overcharge, the rent(s) paid during that period, and (5) a brief description of the reasons why you believe that you have a valid claim.

    o The Claims Administrator will decide, based on your claim, if you are entitled to money damages from Pinnacle as a result of past conduct.

    o The <u>deadline to submit claims</u> is 180 days from the date the settlement becomes final.  Extensions are not available so please be certain to file your claim on time.  If the Court approves this settlement you will be sent an

additional notice by Pinnacle, along with a claim form, letting you know that the settlement has been approved and giving you the deadline date by which you have to file a claim so long as you have not opted out of the settlement.

o   The Claims Administrator will resolve your claim within six months or as soon as feasible after the date presented.  The Claims Administrator's rulings will be final.

- The following damages (compensation) will be available:

  o   Damages for **Rent Overcharges**

    ▪   Double the overcharge plus interest if overcharge is "willful" and Pinnacle will have to prove that its conduct was <u>not</u> willful.

    ▪   Pinnacle is not responsible for rent overcharges through this lawsuit in two cases: (1) if rent was set before beginning of class period (July 11, 2004) or (2) if rent was set by a prior owner.

  o   Damages for **Harassment** and **Other Categories of Claims**

    ▪   Claimant will be awarded the higher of actual damages (with no limit) or:

      - $500 if Pinnacle's conduct was minimal

      - $1000 if Pinnacle's conduct was moderate

      - $1500 if Pinnacle's conduct was serious

    ▪   These damages will be available whether or not there is provable economic loss.

  o   Remedies for **Blacklisting**

    ▪   To eliminate blacklisting by other landlords, if the Claims Administrator finds that a claimant was subject to a meritless eviction proceeding, Pinnacle will do the following:

      - sign a stipulation, agreeing to dismiss the underlying eviction proceeding, and

      - provide the tenant with a letter that can be given along with the stipulation to any tenant screening bureau or tenant reporting agency that has a record of the proceeding in its database and to any prospective new landlord indicating that the proceeding was found by independent determination to have been brought without merit and has been dismissed and requesting that the information be removed from all records.

- Pinnacle's responsibilities under the settlement will expire after two years, unless there are unresolved claims pending before the Claims Administrator, and absent Court intervention.