UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

| | |
|---|---|
| MARJORIE CHARRON et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 1:07-cv-6316-CM |
| -against- ) | (CM)(RLE) |
| ) | |
| PINNACLE GROUP NY LLC and ) | |
| JOEL WIENER, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Diogenes Abreu, Nilda Abreu, Dinorah Ali, Maritza Baez, ) | |
| Ramona Blackwell, Rosa Carrasco, Fausto Corniel, Laura ) | |
| Echevarria, Marcia Garcia, Magaly A. Johnson, Andrea ) | |
| Lebron, Ruth Liriano, Gladys Maldonado, Maria Manzueta, ) | |
| Eloisa Medina, Ulkira Medina, Claudia Mejia, Wilson ) | |
| Mendoza, Antonia Moreno, Eucina Peguero, Mariano Perez, ) | |
| Berta Robledo, Bancroft Rose, Juan Silva, Belgica A. Valdez, ) | |
| Rosa Valerio ) | |
| ) | |
| Proposed Intervenors. ) | |
| ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/11

-------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE
PERMITTING ADDITIONAL REPRESENTATIVE PLAINTIFFS TO INTERVENE,
CONDUCT FURTHER DISCOVERY, EXTEND
THE OPT-OUT DATE AND ADJOURN THE FAIRNESS HEARING**

*Order to Show Cause Denied, without prejudice as to intervention and discovery*

**SO ORDERED**
/s/ Ronald L. Ellis 10-7-11
**MAGISTRATE JUDGE RONALD L. ELLIS**

*Of counsel:*

Kenneth Rosenfeld, Esq.
NORTHERN MANHATTAN IMPROVEMENT
CORP. LEGAL SERVICES
76 Wadsworth Avenue,
New York, New York 10033-7000
(212) 822-8300

URBAN JUSTICE CENTER
123 William Street
New York, New York 10038
(646) 602-5600

*Attorneys for Proposed Intervenors*

Harold F. McGuire, Jr., Esq.
YANKWITT & McGUIRE, LLP
140 Grand Street
White Plains, New York 10601
(914) 686-1500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
Preliminary Statement............................................................................................................... 1
Relief Sought ............................................................................................................................ 2
DISCUSSION ........................................................................................................................... 4
CONCLUSION....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Charron v. Pinnacle Group N.Y. LLC,*
   269 F.R.D. 221 (2010) .................................................................................................. 13

*Dow Jones & Co. v. United States Department of Justice,*
   161 F.R.D. 247 (1995) .................................................................................................. 11

*Farmland Dairies v. Commissioner of New York State Dep't of Agric. and Mkts.,*
   847 F.2d 1038 (2d Cir. 1988) ....................................................................................... 11

*In Re NASDAQ Market-Makers Antitrust Litig.,*
   182 F.R.D. 69 (SDNY 1998) ........................................................................................ 12

*Marisol A. v. Giuliani,*
   95 Civ. 10533(RJW), 1998 WL 265123 *3-5 (S.D.N.Y. 1998) ................................... 12

*Matter of Grimm v. New York State Division of Housing and Community Renewal,*
   15 N.Y.3d 358 (2010) ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 24(a) ........................................................................................................ 10

Fed. R. Civ. P. Rule 23(d)(1)(B) ........................................................................................ 8

## Preliminary Statement

This class action, based upon RICO and the New York Consumer Protection Act, seeks relief for two certified classes composed of more than 20,000 New York City rent-controlled or rent-stabilized tenants of apartment buildings owned by the defendants. According to the complaint, the defendants systematically subjected these tenants to rent overcharges, meritless eviction proceedings and various forms of fraud and harassment over a period of years. By order of April 27, 2010, this Court certified two classes – an injunctive class (current tenants) and a damages class (all tenants since July 11, 2004). After some discovery related to class certification issues, whose exact extent is not presently known to the proponents of this motion, settlement discussions ensued.

By order dated August 31, 2011, after minimally informative substantive presentations by the parties and a short hearing, Magistrate Judge Ellis preliminarily approved a proposed damages class settlement **over the unanimous opposition of the five named representative plaintiffs.**[1] That order established an unusually short deadline of October 7, 2011 for objections to the proposed settlement and required class members to make a weighty and irrevocable decision by that same date – whether or not to "opt out" of the damages class. At the preliminary approval hearing, counsel for the class and defendants jointly submitted a woefully deficient "long form" class notice (in the English language only) to be mailed to class members.[2] The form of that notice was *not discussed at all* in the submissions of the parties and drew only scant

---

[1] Judge Ellis did not require elaborate factual exposition of the settlement since he had supervised and participated extensively in the settlement negotiations in his role as mediator. He expressed the preliminary view that the settlement was the best that could be achieved, *but he never received from either side a presentation of the problems addressed by this motion, other than via an oral presentation by two representative plaintiffs at the hearing.*

[2] The settlement agreement also provided for a "short form" class notice in Spanish to be posted in appropriate buildings. There is reason to believe it was not posted as required.

attention during the preliminary approval hearing when a class representative criticized it. Therefore, the glaring deficiencies in the proposed notice were not subjected to rigorous (or any) scrutiny and Magistrate Judge Ellis approved it, without material change, in his August 31 order. The inadequate notice (Exhibit A to the accompanying affidavit of Kenneth Rosenfeld), was distributed shortly thereafter, and a much shorter notice in Spanish was sent to those who requested it.

By this motion 26 previously absent class members – all represented by the undersigned new counsel (public interest law firms and *pro bono* volunteers who have not previously appeared in the case) – seek leave to intervene as additional representative plaintiffs, join in the existing complaint,[3] and seek the relief described below. Some of these individuals have filed formal objections to the proposed damages class settlement. Other intervenors have not objected because they lack sufficient information as to what decision they should make: to object, to opt out, or to do nothing. In any event, the objections are supported by an extensive and detailed memorandum of law that is being submitted concurrently to Judge Ellis. For the Court's convenience, a copy of the objectors' memorandum of law ("Objectors' Memo") is attached as Exhibit B to the accompanying Rosenfeld declaration. (The movants do not object or seek to intervene at this time with respect to the accompanying proposed settlement addressed to the injunctive class.)

### Relief Sought

The proposed intervenors seek five forms of relief:

- A ninety-day extension of the opt-out date from October 7, 2011 until January 7, 2012.

- Immediate access to all discovery taken to date in the case.

---
[3] The Second Amended Class Action Complaint was filed October 14, 2007.

2

- Leave to take additional discovery, primarily related to the extent and merits of the damage claims held by two large and highly disadvantaged *de facto* subclasses **that were created by provisions of the settlement agreement over the opposition of the five named class representatives. That agreement carves out these *de facto* subclasses from any participation in the damages class, provides no possibility of compensation for members of these subclasses, and severely prejudices them by requiring them (without proper notice) to abandon available existing procedures for vindicating their substantial rights unless they choose to opt out of the class.** The numerosity and composition of those *de facto* disfavored subclasses (anticipated to be more than half of the defined class), and the substantial nature of their claims, will be the principal subjects of the proposed discovery.

- An adjournment of the fairness hearing on the settlement agreement (now scheduled for October 20, 2011) for a minimum of ninety days, which will allow time for the possible reformation of the settlement agreement or the possible certification of additional subclasses and (in any event) the distribution of entirely new and fully descriptive notices to the class.

- Reformulation of the class notice and the distribution of a replacement notice or notices with appropriate content in the appropriate languages. These notices (at the very least in English and Spanish to reflect the composition of the class) should accurately describe the proposed settlement. If the proposed settlement does not change, the notice should include a warning that **numerous class members, including those in the disfavored subclasses, will be barred from exercising substantial existing rights under New York law unless they opt**

3

**out. That subject is not discussed at all in the present class notice,** so no class member could possibly be expected to know about – much less divine the significance of – the extremely important bar created by the settlement agreement. A reasonable exposition of the pros and cons of this bar is critical to enable class members to make the vitally important decision of whether or not to opt out.

This motion is being made by order to show cause because of the immediately impending deadlines. Class counsel have declined to consent to any postponement of the opt-out date.

## DISCUSSION

If the settlement were to be finally approved as submitted, two large groups of class members, described herein as *de facto* subclasses that have up to now not been adequately represented in these proceedings, would be entirely eliminated as participants in the certified damage class and would be barred from pursuing any other remedies in any other form unless they opted out. Those two *de facto* subclasses are discussed sequentially below and in the Objectors' Memo.

**Subclass A (Carryover Tenants):** *Tenants who first rented their apartments from predecessor landlords that sold the buildings in question to the defendants.*

Virtually all if not all of the proposed intervenors meet this description. Many of them were (and may still continue to be) the victims of illegal rent overcharges *collected by the defendants* during the class period – overcharges that would be compensable under New York statutes that would also give them the right to adjudicate their ongoing rent levels. However, the "fine print" of the settlement agreement expressly provides that these tenants may not make claims for rent overcharges through the claims administration mechanism that is specified as the *exclusive* remedy for the damages class – presumably because the defendants convinced class counsel that they could not (or likely would not) be held liable for rent overcharges that they

4

merely perpetuated, but that were *initiated* by predecessor landlords.[4] In any event, whatever the reason, class counsel represented to the Court that the defendants simply refused to pay any such claims.

The defendants' rationale is utterly wrong as a matter of well-established New York law. **State case and statutory law establishes that a landlord that purchases a rent-regulated building cannot escape liability for rent overcharges just because those overcharges were established by a predecessor landlord.** *See* **Objectors' Memo at pp. 6-13.** Therefore, the rent overcharge claims of this putative subclass have substantial merit, and the *de facto* exclusion of Carryover Tenants from the damages class is so monumentally unfair as to render the proposed settlement inadequate.[5] It is believed that the size of this subclass may be as much as *half* of the damages class, or even more – if only because since 2004 the defendants have purchased many of the buildings they operate. Some of these were bought from Baruch Singer, a landlord with a long history of collecting illegal rent increases.

The memorandum which class counsel submitted to Judge Ellis in connection with the preliminary approval hearing barely pays lip service to this issue. While noting almost in passing that all the class representatives oppose the settlement, counsel expended only two sentences on the Carryover Tenant problem. In full, class counsel expressed themselves thus:

> Some of the Class Representatives have also objected to the failure to include in the Settlement Pinnacle tenants whose rents were set by a prior landlord before Pinnacle acquired the buildings in which they reside. Defendants have been unwilling to include in the Settlement damages resulting from ... a prior Landlord's action. (Plaintiffs' Memorandum of Law at 14).

---

[4] We say "presumably" because neither the settlement agreement itself nor the memorandum submitted by class counsel in support of the proposed settlement provides *any* rationale for the exclusion of this group from the claims process except that the defendants were "unwilling" to pay compensation to Carryover Tenants.

[5] Indeed, the settlement agreement does *not* exempt a Carryover Tenant's harassment claims against Pinnacle.

At the preliminary approval hearing one of the class representatives informed the Court that this feature of the proposed settlement had led him to disapprove it, estimating that "as many as 18,000 tenants ... will receive a notice, but can't file any kind of claim," and also pointing out that the notice was deficient because it would "unduly influence class members to do nothing, and, therefore, not to opt out." (Tr. 18-19, attached as Exhibit B to the Rosenfeld declaration) Neither class counsel nor defendants' counsel responded in any meaningful way. Class counsel contented himself with remarking, without further elaboration, that "the notion that three quarters of the people are being excluded is, in our view, and in Mr. Scherer's view [Plaintiffs' expert], just simply wrong." (Tr. 24). Thereupon the Court observed that the settlement was perhaps not perfect, but "I don't think ... that were I to send the parties back to the mat, that we would get any different result." (Tr. 27)

The movants seek access to the discovery already conducted in the case and ask leave to conduct additional discovery – among other things, to establish with greater certainty the size of this subclass and to estimate the magnitude of its potential claims. This could result in an eventual motion to certify a Carryover Tenant subclass, or in efforts to modify the proposed settlement to accommodate the interests of Carryover Tenants, or in recommendations to such tenants (through a proper notice) that they might well be better served by opting out and preserving their rights to pursue existing remedies for rent overcharges through administrative action or litigation under New York law – or, for that matter, in a motion to decertify the class.

In any event, the existing class notice is wholly inadequate to advise Carryover Tenants (or, indeed, their counsel) about why they cannot make rent overcharge claims under the settlement, and of the consequent fact that they would be giving up substantial rights by doing nothing and remaining in the class. Thus, the notice simply does not inform Carryover Tenants in any way about the nature and importance of the decision they need to make about whether or

not to opt out. For that reason alone, the "opt-out" deadline should be extended and the fairness hearing postponed.

The class notice correctly (but misleadingly) defines "Liability Class Members" as follows:

> *All persons* who, at any time between July 11, 2004 and April 27, 2010 (the "Class Period"), were tenants in rent-controlled or rent-stabilized apartments in New York City directly or indirectly owned in whole or in part by Pinnacle and who may have individual claims against Pinnacle for its behavior during the Class Period. This class seeks money damages. (Emphasis supplied).

This description is entirely misleading as applied to the proposed settlement **because the notice completely fails to explain the fact that the settlement agreement, far from covering "*all persons* ... who were tenants," clearly *excludes* all Carryover Tenants from the settlement class**, thereby in effect *amending* the class definition embodied in this Court's class certification order, without appropriate notice. This exclusion is in the "fine print" of the agreement, in paragraph 61(b) beginning on page 23 of that cumbersome formal legal document:

> Pinnacle and the Defendants *shall not be liable* for any alleged rent overcharge for any rent set by a prior owner of the building in question. It shall be a defense to any allegation of overcharges before the Claims Administrator that Pinnacle or the Defendants relied on a rent registered by a prior owner ... or contained in documentation from a prior owner of the building in question. (Emphasis supplied).

Clearly no class member could be expected, even upon the most careful perusal of the class notice, to divine the significance of this important but undisclosed "fine print," much less guide his actions thereby. Indeed, this paragraph of the settlement agreement sets forth a governing principle for the settlement that is directly contrary to long-established New York law. Under the settlement agreement, the present landlord *"shall not be liable"* for the wrongful actions of a predecessor landlord which have benefited the present landlord – but established law holds otherwise, as noted above and in the Objectors' Memo at pp. 6-13. The adoption of this totally wrongheaded settlement principle would have a dramatic and prejudicial impact on class

7

members – *but this entire subject is simply not referred to* anywhere in the notice, expressly or by implication.

In addition, Fed. R. Civ. P. Rule 23(d)(1)(B) provides that the Court may

> require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class member of:
> ...
> (iii) the members' opportunity ... to intervene and present claims or defenses, or to otherwise come into the action.

Judge Ellis's order of August 31, 2011, authorizing the class notice that was distributed here, contravened that statute. It should have required that the suddenly and unexpectedly disadvantaged class members be given proper notice and the opportunity to "intervene and present claims."

**Subclass B (Long-Term Tenants):** *Tenants whose rents were set on or before July 11, 2004.*

The agreement similarly excludes tenants meeting this description from the proposed settlement, although (like the Carryover Tenants) they clearly fall within the definition of the damages class certified by the Court. As with the Carryover Tenants, these Long-Term Tenants – *whose rents were unlawfully set by Pinnacle itself* – are deprived of *any* ability to challenge those rents by a paragraph buried in the fine print on page 23 of the settlement agreement – **and this is nowhere explained in the class notice**. That paragraph 61(a) reads as follows:

> Determination of Legal Rent. Any rent set on or before July 11, 2004 shall not be subject to challenge.

The class notice simply states, without further explanation, that "Pinnacle is not responsible for rent overcharges through this lawsuit ... if that rent was set before beginning of class period (July 11, 2004) ... ." To put it plainly, this means that if Pinnacle established an unlawful rent before July 11, 2004 and has continued to collect that unlawful rent *even up to the present*, the tenant will have no recourse under the claims procedure set up by the proposed

8

settlement nor will any other forum be available to that tenant. This is entirely the result of an unexplained agreement between Pinnacle's counsel and class counsel. The only excuse class counsel offer for this is contained at page 14 of their memorandum in support of the settlement. That "explanation," quoted in full below, reads as follows:

> Defendants have been unwilling to include in the Settlement damages resulting from outside the class period.

Notwithstanding that "unwillingness," the claims of such tenants are perfectly viable under applicable New York law, and no justification exists for their abandonment. The Objectors' Memo (pp.13-18) sets forth chapter and verse as to how the New York courts have adopted in such instances the salutary principle that "no man may take advantage of his own wrong, " and have for that reason rejected landlords' attempted reliance on statutes of limitation to shield their continuing unlawful conduct. As Judge Smith of the New York Court of Appeals put it, "The landlord charged an illegal rent, and the illegality went undetected for more than four years. … But the majority holds that a challenge [to that rent] is allowed." *Matter of Grimm v. New York State Division of Housing and Community Renewal*, 15 N.Y.3d 358, 368 (2010) (Smith, J., dissenting).

The proposed intervenors seek on behalf of the Long-Term Tenants the same relief as that sought by the potential Carryover Tenant subclass, *i.e.*, access to the discovery taken to date, together with leave to conduct additional discovery, primarily to establish with greater certainty the size of this putative subclass and to estimate the magnitude of its potential claims. As a corollary, of course, the intervenors also seek reformulation of the class notice (which is entirely silent about the reasons for, or the consequences of, the exclusion of this disadvantaged group of class members) and postponement of the opt-out date and the fairness hearing to accommodate their concerns, which may ultimately result in a motion for certification of a Long-Term Tenant

subclass, revisions to the settlement agreement, or at least an opportunity to opt out based upon an adequate and informative class notice.

### Standards Governing Intervention:

#### (a) Intervention as of right:

The proposed intervenors do not quarrel with the contents of the current Second Amended Class Action Complaint, which they fully adopt at this juncture. That complaint adequately sets forth their claims. But the proposed settlement backs away from that complaint – and, indeed, has the effect of amending the damage class definition adopted by this Court. That class is defined as "all" rent-regulated tenants in the Pinnacle buildings, not just those whose rents were (1) originally set by Pinnacle, (2) after the commencement of the class period.

The proposed intervention is as of right. As the Court well knows, intervention as of right is governed by Fed. R. Civ. P. 24(a), which provides for intervention on motion by anyone who

> (2) claims an interest relating to the ... transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately protect that interest.

This case fits that standard like a glove. The proposed intervenors are tenants and class members, representing themselves and others similarly situated, who will be disadvantaged "as a practical matter" by the disposition of this class action through the proposed settlement because – unless they opt out – the settlement will treat their substantial rights to obtain adjudications of rent overcharges under state law as nonexistent and completely take away their statutory remedies. Class counsel and the defendants have created this situation over the objection of the existing representative plaintiffs, who have thus far been powerless to adequately protect the movants' interests.

10

The Second Circuit case law under Rule 24(a) requires that the proposed intervenor must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." *Farmland Dairies v. Commissioner of New York State Dep't of Agric. and Mkts.,* 847 F.2d 1038, 1043 (2d Cir. 1988). Factors 2, 3 and 4 cannot be disputed here, but Factor 1 (timeliness) may require brief discussion since this is a 2007 case. As Judge (now Justice) Sotomayor opined in *Dow Jones & Co. v. United States Department of Justice,* 161 F.R.D. 247, 250 (1995), that factor

> is committed to the discretion of the trial court and must be based on the circumstances of the case. *Farmland Dairies,* 847 F.2d at 1043-44. Among the factors a court may take into account ... are "(1) the length of time the applicant knew or should have known of his [or her] interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to applicant if the motion is denied: and (4) presence of unusual circumstances militating for or against a finding of timeliness.

All those factors militate in favor of intervention here. The proposed intervenors had no reason until after the class notice was distributed to know that the proposed disposition of the case would adversely affect their interests, and they have arranged for legal representation and made this motion just a few weeks later. No legally cognizable prejudice to the defendants or the class can result if intervention is granted, but members of the two disadvantaged putative subclasses will be severely prejudiced and may suffer the loss of very substantial rights if it is not. And, finally, the unpublicized nature of the important "fine print" in the settlement agreement, the concealment of the significance of that "fine print" in the class notice, and the unusually short opt-out period all have the effect (surely intended at least by the defendants) of cramming a disadvantageous settlement down the throats of a large, diffuse, ill-informed, hitherto unrepresented and unwary subset of the damages class.

In *Dow Jones,* Judge Sotomayor granted intervention *after a grant of summary judgment,*

11

when it was the summary judgment ruling itself that created an understanding on the part of the proposed intervenor that the government (an existing party in the case) would not adequately protect her separate interests. This case has not proceeded nearly that far. Despite this case's longevity, discovery has not ended – indeed, merits discovery has not commenced – and there have been no dispositive motions. And, until the proposed settlement was announced, the movants had every reason to believe that this class action might afford them some relief, but would at least not cause them any harm.

### (b) Permissive intervention.

Alternatively, movants seek permissive intervention under Rule 24(b). This should be granted for essentially the same reasons set forth by Judge Sotomayor in *Dow Jones*, since the movants meet the statutory criteria (common question of law or fact; applicant's interests will be finally determined by the action). These criteria are routinely applied in class actions to permit intervention, *see, e.g., Marisol A. v. Giuliani*, 95 Civ. 10533(RJW), 1998 WL 265123 *3-5 (S.D.N.Y. 1998).

### The Significance of the Requested Discovery:

It appears that class counsel have taken no merits discovery relating to the nature and extent of defendants' liability for rent overcharges, baseless eviction proceedings and other forms of harassment.[6] The proposed intervenors should plainly be permitted access to that discovery, which may aid them in their difficult decisions as to whether or not to opt out of the class. *In Re NASDAQ Market-Makers Antitrust Litig.*, 182 F.R.D. 69, 71 (SDNY 1998).

To the extent such discovery has not occurred, it should. The defendants should be

---

[6] Class counsel represented in their memorandum in support of the settlement that they had obtained "rental histories, leases, invoices to tenants, internal emails regarding Defendants' compliance with a government audit of their records, and many other documents." *Id.* at 16. Those documents should be made available to the intervenors.

required at minimum to produce at least the following for examination by the proposed intervenors: records showing when the defendants purchased each of the apartment buildings in which class members have resided and from whom; the rental records the defendants acquired from predecessor landlords; and at least one rent roll for each building in question for each year since the purchase occurred. Depositions should be permitted so that these records can be authenticated and explained prior to any settlement fairness hearing.

These records are undoubtedly computerized and in the defendants' possession. Assuming that to be so, discovery will not be burdensome and should be extremely instructive. It should enable the parties and the Court to determine the size of the Carryover Tenant and Long-Term Tenant populations, and make informed estimates as to the nature and extent of rent overcharges suffered by each. That will enable the intervenors to make rational decisions about whether to opt out of the existing litigation. If they do not opt out, discovery will assist the intervenors in any potential future motion for the possible certification of subclasses to litigate the liability issues surrounding their discrete problems, or enable them to seek to modify the proposed settlement to accommodate their concerns. Further, such discovery will inform all the parties about how most efficiently and effectively to conduct any further proceedings with respect to measuring and assessing damages. Indeed, this Court anticipated these very kinds of issues in rendering its class certification decision some eighteen months ago, when it identified the following possibilities:

> "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages," "creating subclasses," or "altering or amending the class." ... Here, should the Liability Class succeed in proving that Pinnacle's alleged scheme violated RICO or the NYCPA, the Court will consider all such management tools for addressing individualized issues of causation and damages. *Charron v. Pinnacle Group N.Y. LLC,* 269 F.R.D. 221, 243 (2010)

## CONCLUSION

For the reasons stated, the motion to intervene should be granted and this Court should (1) extend the class opt-out date until January 7, 2012; (2) postpone the hearing as to whether the currently proposed settlement is fair and adequate for a minimum of 90 days; (3) grant the intervenors immediate access to all discovery heretofore taken in this action; (4) permit the intervenors to take additional discovery as outlined herein; and (5) require that any further class notice to be distributed herein be reformulated to address the concerns reflected in this memorandum.

Dated: New York, New York
October 6, 2011

Respectfully submitted,

_____
Kenneth Rosenfeld, Esq.
NORTHERN MANHATTAN IMPROVEMENT
CORP. LEGAL SERVICES
76 Wadsworth Avenue
New York, New York 10033-7000
(212) 822-8300

URBAN JUSTICE CENTER
123 William Street
New York, New York 10038
(646) 602-5600

*Of counsel:*

*Attorneys for Proposed Intervenors*
Harold F. McGuire, Jr.
YANKWITT & McGUIRE, LLP
140 Grand Street
White Plains, New York 10601
(914) 686-1500

14